UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN L. CRUISE, JR., BRIAN CONRAD,　　　　　:
KENNETH J. DIBBLE, MATTHEW A. EIRICH,　　 :
MICHAEL KOLOGY, PETER J. KROL,　　　　　　:
EDGAR VELLOTTI,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiffs,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:　　07-CV-3940
　　　　　　　- against -　　　　　　　　　　　 :　　(Pauley, J)
　　　　　　　　　　　　　　　　　　　　　　　　:　　(Pitman, MJ)
MICHAEL J. DOYLE, as General Chairman, LOCAL　:
DIVISION 9, LOCOMOTIVE ENGINEERS,　　　　　:
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,　:
LOCAL DIVISION 9, LOCOMOTIVE ENGINEER　　 :
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,　:
and MTA METRO-NORTH RAILROAD,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants.　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' JOINT MEMORANDUM OF LAW IN
## SUPPORT OF DEFENDANTS' JOINT MOTION TO
## DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

HOLM & O'HARA LLP
*Attorneys for Defendants*
*Michael F. Doyle, sued herein as*
*Michael J. Doyle, as General Chairman,*
*Local Division 9, Locomotive Engineers,*
*and Association of Commuter Rail Employees*
3 West 35th Street, 9th Floor
New York, New York 10001
(212) 682-2280

RICHARD K. BERNARD,
Vice President and General Counsel
*Attorneys for Defendant MTA Metro-North*
347 Madison Avenue
New York, New York 10017
(212) 340-2027

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       THE LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT
       TO FED. R. CIV. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    PLAINTIFF'S COMPLAINT IS BARRED BY THE STATUTE
       OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . 5

II.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR
       FAILURE TO ALLEGE UNION'S BREACH OF THE DUTY
       OF FAIR REPRESENTATION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

        A.    ACRE's Actions Do Not Constitute Bad Faith . . . . . . . . . . . . . .10

        B.    ACRE's Actions Were Not Discriminatory . . . . . . . . . . . . . . . .11

        C.    ACRE's Actions Were Not Arbitrary . . . . . . . . . . . . . . . . . . . . 12

III.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR
       FAILURE TO ALLEGE EMPLOYER'S BREACH OF
       COLLECTIVE BARGAINING AGREEMENT . . . . . . . . . . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**Pages**

**U.S. SUPREME COURT CASES**

Air Line Pilots Ass'n Int'l. v. O'Neill,
499 U.S. 65 (1991)…………………………………………………………….…........13

Bell Atl. Corp. v. Twombly,
___ U.S. ___, 127 S. Ct 1955 (2007)…………………………………………………5, 12

Conley v. Gibson,
335 U.S. 41 (1957)…………………………………………………………………….....5

Del Costello v. Int'l Bhd. of Teamsters,
462 U.S. 151 (1983)……………………………………………………………….5, 6, 8

Ford Motor Co. v. Huffman,
345 U.S. 330 (1953)……………………………………………………………….12, 13

Marquez v. Screen Actors Guild, Inc.,
525 U.S. 33 (1998)…………………………………………………………………..…8

Vaca v. Sipes,
386 U.S. 171 (1967)…………………………………………………………………...8, 14

**U.S. CIRCUIT COURT OF APPEALS CASES**

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002)………………………………………………………….2, 5

Cohen v. Flushing Hosp. & Med. Ctr.,
68 F.3d 64 (2d Cir. 1995)……………………………………………….………………7

Demchik v. General Motors Corp.,
821 F.2d 102 (2d Cir. 1987)……………………………………………………...….6

Flanigan v. Int'l Bhd. of Teamsters,
942 F.2d 824 (2d Cir. 1991)………………………………………………………….....6

Gvozdenovic v. United Air Lines, Inc.,
933 F.2d 1100 (2d Cir. 1991)…………………………………………………….…13

Haerum v. Air Line Pilots Ass'n,
892 F.2d 216 (2d Cir. 1989)………………………………………………….…11, 12

King v. New York Telephone Co., Inc.,
785 F.2d 31 (2d Cir.1986)…………………………………………………………..…..7

Lewis v. Tuscan Dairy Farms, Inc.,
25 F.3d 1138 (2d Cir. 1994)…………………………………………………………....11

McKee v. Transco Products, Inc.,
874 F.2d 83 (2d Cir. 1989)…………………………………………………………….6

Sanozky v. Int'l Ass'n of Machinists & Aero. Workers,
415 F.3d 279 (2d Cir. 2005)………………………………………………………..…..8

Santos v. District Council of New York City,
619 F.2d 963 (2d Cir. 1980)………………………………………………………….7

Spellacy v. Airline Pilots Ass'n Int'l,
156 F.3d 120 (2d Cir. 1998)…………………………………………………… 8, 10, 13, 14

Welyczko v. U.S. Air, Inc.,
733 F.2d 239 (2d Cir. 1984)……………………………………………………….6

## U.S. DISTRICT COURT CASES

Abdelmesih v. Waldorf-Astoria,
1995 U.S. Dist LEXIS 6407 (S.D.N.Y. 1995)…………………………………………..6, 14

Antongorgi v. Bovena,
2007 U.S. Dist. LEXIS 53571 (E.D.N.Y. 2007)……………………………………….…..5

Harrison v. Harlem Hospital,
2007 U.S. Dist. LEXIS 71908 (S.D.N.Y. 2007)…………………………………………..2, 5

Wallace v. Seacrest Linen,
2006 U.S. Dist. LEXIS 53683 (S.D.N.Y. 2006)…………………………………………7

## FEDERAL STATUTES

28 U.S.C. § 1337…………………………………………………………………..1

45 U.S.C. § 151 et seq.…………………………………………………………………..1

Labor Management Reporting Act § 301……………………………………………….5, 6

National Relations Act § 10(b)……………………………………………………..5, 6

FED. R. CIV. P. 12(b)(6) ……………………………………………………………1, 2, 5, 15

## PRELIMINARY STATEMENT

Defendants Michael F. Doyle (sued herein as Michael J. Doyle), as General Chairman of the Local Division 9, Locomotive Engineers, Association of Commuter Rail Employees ("DOYLE") and Local Division 9, Locomotive Engineer Association of Commuter Rail Employees ("ACRE") (collectively "ACRE") and the MTA Metro-North Railroad ("METRO-NORTH"), jointly and respectfully submit this joint memorandum of law in support of their joint motion to dismiss the Complaint against them for failure to state a claim upon which relief may be granted pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6). See FED. R. CIV. P. 12(b)(6).

Plaintiffs John L. Cruise, Jr., Brian Conrad, Kenneth J. Dibble, Matthew A. Eirich, Michael Kology, Peter J. Krol, and Edgar Vellotti (collectively "PLAINTIFFS") brought this action against ACRE and METRO-NORTH pursuant to the Railway Labor Act ("R.L.A."), 45 U.S.C. § 151 et seq. The PLAINTIFFS allege a hybrid breach of the duty of fair representation by ACRE and METRO-NORTH entitling them to the jurisdiction of this Court pursuant to the R.L.A., 45 U.S.C. § 151 et seq. and 28 U.S.C. § 1337.

Defendants ACRE and METRO-NORTH are entitled to a dismissal of the Complaint against them for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6) because: (1) PLAINTIFFS' claim is barred by the applicable statute limitations; (2) PLAINTIFFS failed to plead facts sufficient to show that ACRE breached its duty of fair representation; and (3) PLAINTIFFS failed to allege METRO-NORTH's violation of a specific provision of the collective bargaining agreement between ACRE and METRO-NORTH ("CBA"). Therefore, defendants ACRE and METRO-NORTH now jointly and

respectfully move this Court for an order dismissing the PLAINTIFFS' Complaint in its entirety

for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6).

## STATEMENT OF FACTS

Each of the PLAINTIFFS is a member of ACRE, Local Division 9, and an

employee of METRO-NORTH. See "O'Hara Declaration" and "Rinaldi Declaration"

(hereinafter collectively "Defs. Decl."), Exhibit A, Complaint ¶¶ 2 – 8. ACRE is a

representative organization authorized to act on behalf of its members. Id. at ¶ 10. METRO-

NORTH is an agency of the Metropolitan Transportation Authority and provides commuter rail

service. Id. at ¶ 11. PLAINTIFFS' employment is governed by the CBA between ACRE and

METRO-NORTH. See Defs. Decl. Exhibit B, CBA. (The CBA is amended by Memorandum of

Understanding for the period 1/1/99 through 12/31/02, Defs. Decl. Exhibit C, as amended by

Memorandum of Understanding for the period 1/1/03 through 12/31/06, Defs. Decl. Exhibit D,

as amended by Memorandum of Understanding for the period 1/1/07 through 6/15/10, Defs.

Decl. Exhibit E) (The Complaint refers to the CBA in ¶ 12. Therefore, the CBA is proper for

consideration by this Court on defendants' joint motion to dismiss. See Chambers v. Time

Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see Harrison v. Harlem Hospital, 2007 U.S.

Dist. LEXIS 71908, at *4 (S.D.N.Y. 2007)).

Pursuant to the CBA, METRO-NORTH engineers received wages in a step rate

progression for the first six (6) years of service. See Defs. Decl. Ex. A, Complaint ¶ 17; see

Defs. Decl. Ex. B, CBA, Rule 3, pp. 3 – 4. Rule 3 provides that the step rate progression begins

at seventy percent (70%) of the hourly rate of pay in year one (1) and reaches one hundred

percent (100%) of the hourly rate in year six (6), receiving a five-percent (5%) increase (5% of

the applicable hourly rate of pay), every twelve (12) calendar months, for the first five (5) years,

2

with a final increase of ten percent (10%) in the sixth (6th) year (from 90% to 100%). <u>See</u> Defs. Decl. Ex. B, CBA, Rule 3, pp. 3 – 4.

When employees transfer into locomotive engine service from another craft, the employee's hourly rate of pay in engine service would be changed to the hourly step rate of pay that most closely approximates the hourly rate of pay they received in their former craft. <u>See</u> Defs. Decl. Ex. A, Complaint ¶ 18. Where the former craft's hourly rate of pay falls between two step rates in the step rate progression, the employee receives the next highest step rate above their former craft's hourly rate. <u>Id</u>. at 18.

There are no rules in the CBA that govern how the step rate progression applies to craft transferees, nor which date will be used to begin the twelve (12) month period between each step rate wage increase. <u>See</u> Defs. Decl. Ex. B, CBA. ACRE and METRO-NORTH's custom and practice was to use the transferee's date of transfer into engine service for step rate increases under Rule 3 of the CBA. <u>Id</u>. at Rule 3, pp. 3 – 4. For example, an employee hired on June 1, 2001 would receive a wage increase every twelve (12) months on June 1 of every calendar year (e.g. June 1, 2002). If the employee transfers into engine service on April 20, 2003, the date used to begin the twelve (12) month step rate period changes from their date of hire (June 1) to their date of transfer into engine service (April 20). If the employee did not transfer crafts, he would have received a wage increase on June 1, 2003. However, after transferring into engine service, the employee would no longer be eligible for the increase on June 1, 2003, and would not receive an increase until his new date of transfer in engine service arrives on April 20, 2004 pursuant to Rule 3 of the CBA. <u>Id</u>. at Rule 3, pp. 3 – 4. Consequently, "[t]his frequently would have the effect of delaying the annual wage increase for workers who changed job classifications for many months." Defs. Decl. Ex. A, Complaint at ¶ 18.

3

Beginning in 2004, ACRE and METRO-NORTH changed this practice. Id. at 20. Using the prior example, after the change, the employee receives a wage increase on the anniversary of his date of hire (June 1), rather than his date of transfer into engine service (April 20) for purposes of the step rate wage progression. This change encouraged skilled workers to enter locomotive engine service and ensured that no employee would work longer than twelve (12) months without a step rate increase. This new change in practice applied prospectively to avoid the problems and costs associated with retroactive adjustments. The change began with the class of 2004 because that class had not received their first step rate increase at the time of the change in practice. See id. at 20.

Any METRO-NORTH engineer pursuing a "claim for compensation alleged to be due" must file a claim in accordance with Rule 22 of the CBA. See Defs. Decl. Ex. B, CBA, Rule 22, pp. 25 – 28. Rule 22 requires that a "claimant, or his representative" file a claim with a METRO-NORTH officer within sixty (60) days from the date of the alleged underpayment. Id. PLAINTIFFS allege that in September 2006, they learned that junior engineers received a higher rate of pay than PLAINTIFFS. See Defs. Decl. Ex. A, Complaint ¶¶ 22 & 23. However, PLAINTIFFS' Complaint does not allege that they filed a claim for compensation pursuant to Rule 22 of the CBA. See id. at ¶¶ 1 – 39. Rather, "throughout the fall of 2006" and continuing until their written appeal was filed on April 11, 2007, PLAINTIFFS allege mere verbal conversations with ACRE regarding their "grievance," despite the fact that they knew of the alleged discriminatory conduct in September 2006. Id. at ¶¶ 24 – 29.

## ARGUMENT

## STANDARD FOR MOTION TO DISMISS

Upon motion, a complaint may be dismissed where it fails to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). For a plaintiff to prevail on a 12(b)(6) motion to dismiss, the complaint must plead sufficient facts to state a claim with "plausible grounds" for relief. Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct 1955 at 1965 (2007) (overruling the long held "no set of facts" standard announced in Conley v. Gibson, 335 U.S. 41, 47 (1957), and holding that the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Bell Atl. Corp., 127 S. Ct. at 1965). See also Antongorgi v. Bovena, 2007 U.S. Dist. LEXIS 53571 at * 4 (E.D.N.Y. 2007) (applying the *Bell Atlantic* standard to a complaint alleging a hybrid claim under Section 301 of the L.M.R.A. and granting the union and employer's motion to dismiss). Accepting all material facts in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor, the Court may consider any documents attached to the complaint, any documents alleged or referenced in the complaint, and any matters of judicial notice. See Chambers, 282 F.3d at 152-53; see also Harrison, 2007 U.S. Dist. LEXIS 71908, at *4.

## POINT I

## PLAINTIFFS' COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS

PLAINTIFFS allege they learned of a benefit afforded only to employees with less seniority than PLAINTIFFS in September 2006. See Defs. Decl. Ex. A, Complaint ¶¶ 20 – 23. An employee bringing a hybrid/duty of fair representation claim against the employer and union must file suit within the six (6) month statute of limitations pursuant to N.L.R.A. § 10(b). See Del Costello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 171 (1983). Since L.M.R.A. § 301

5

does not prescribe a statute of limitations period for hybrid actions, courts must "'borrow' the most suitable statute or other rule of timeliness from some other source." Del Costello, 462 U.S. at 161 – 62. Finding that unfair labor practice claims under the N.L.R.A. § 10(b) were analogous to hybrid § 301 claims, the Del Costello Court ruled that the six (6) month statute of limitations applied to hybrid § 301 claims. Id., 462 U.S. at 169 – 171. See Welyczko v. U.S. Air, Inc., 733 F.2d 239, 240 (2d Cir. 1984) (analogizing L.M.R.A. hybrid § 301 claims to hybrid claims arising under the R.L.A.).

PLAINTIFFS filed this action against ACRE and METRO-NORTH characterizing it as "a hybrid breach of the duty of fair representation case." See Defs. Decl. Ex. A, Complaint, Introduction. The PLAINTIFFS' claim against METRO-NORTH is "inextricably linked" to the alleged breach of the duty of fair representation by ACRE. See McKee v. Transco Products, Inc., 874 F.2d 83 at 86 (2d Cir. 1989) (defining a hybrid claim as an inextricably interdependent cause of action against both the union and employer where the same elements must be proved against both); see also Abdelmesih v. Waldorf-Astoria, 1995 U.S. Dist. LEXIS 6407, at *11 – *12 (S.D.N.Y. 1995). Therefore, the six (6) month statute of limitations applicable to L.M.R.A. hybrid § 301 claims is applicable to the PLAINTIFFS' hybrid action brought pursuant to the R.L.A.

The statute of limitations period for a hybrid claim begins when "plaintiff knows or reasonably should know that the union has breached its duty of fair representation." Flanigan v. Int'l Bhd. of Teamsters, 942 F.2d 824 at 827 (2d Cir. 1991). In a hybrid action, actual or constructive knowledge of the breach is sufficient to trigger the limitations period. See id., 942 F.2d at 828 – 829; see also Demchik v. General Motors Corp., 821 F.2d 102, 105 (2d Cir. 1987) (holding that the statute of limitations does not begin to accrue when the employee is notified of

final adverse determination with respect to a grievance, but rather begins when there is actual or imputed knowledge that the union breached its duty of fair representation), citing King v. New York Telephone Co., Inc., 785 F.2d 31 at 34 (2d Cir. 1986).

The basis of PLAINTIFFS' claim against ACRE and METRO-NORTH is that locomotive engineers in junior classes "were frequently earning more money than Plaintiffs" because they were permitted to retain their date of hire for purposes of step rate progression, while PLAINTIFFS were not. See Defs. Decl. Ex. A, Complaint ¶¶ 22 & 20. PLAINTIFFS allege that they "did not learn of this change in seniority dates until September 2006." See id. at ¶¶ 20 & 23. Thereafter, "[t]hroughout the fall of 2006," they complained verbally to ACRE's officers. See id. at ¶ 24. Although PLAINTIFFS allege that ACRE "repeatedly reassured" and "promised" PLAINTIFFS relief during the fall of 2006, these representations do not operate to toll the statue of limitations. See Santos v. District Council of New York City, 619 F.2d 963 at 969 (2d Cir. 1980) (ruling that the statute beings to run when plaintiff "knew or reasonably should have known" that a breach occurred, "even if some possibility of nonjudicial enforcement remained"); see also Wallace v. Seacrest Linen, 2006 U.S. Dist. LEXIS 53683 at *24 (S.D.N.Y. 2006) ("Suits filed after this six-month limit are time-barred, even if the union has been unresponsive to the plaintiff or the plaintiff holds out hopes for future representation," citing Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 68 (2d Cir. 1995)). Taking the PLAINTIFFS' factual allegations as true on this motion to dismiss, PLAINTIFFS are charged with knowledge, actual and constructive, of the union's alleged breach of its duty of fair representation in September 2006. PLAINTIFFS' hybrid cause of action accrued in September 2006. Construing all facts in favor of PLAINTIFFS, assuming they acquired knowledge of their cause of action on

September 30, 2006, the statute of limitations expired on March 30, 2007. The Complaint should be dismissed because PLAINTIFFS filed an untimely action on May 21, 2007.

## POINT II

### PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE UNION'S BREACH OF THE DUTY OF FAIR REPRESENTATION

To prevail on a hybrid duty of fair representation claim, PLAINTIFFS must demonstrate that (1) METRO-NORTH breached its CBA, and (2) ACRE breached its duty of fair representation. See Del Costello, 462 U.S at 164-65 (recognizing that a hybrid suit comprises two causes of action which are "inextricably interdependent" and to prevail against the employer or the union, the employee must show the employer's breach of contract and the union's breach of duty). PLAINTIFFS must also show a causal connection between the union's wrongful conduct and their resultant injury. See Spellacy v. Airline Pilots Ass'n Int'l, 156 F.3d 120, 126 (2d Cir. 1998) (granting union's motion for judgment as a matter of law and reasoning that even if evidence supported a breach of union's duty of fair representation, plaintiffs failed to demonstrate that union's breach caused their injury). PLAINTIFFS fail to allege any facts showing that ACRE's actions were plausibly a breach of its duty of fair representation or that METRO-NORTH breached its CBA.

A union breaches its duty of fair representation only when its conduct is "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967); see also Sanozky v. Int'l Ass'n of Machinists & Aero. Workers, 415 F.3d 279 at 282 (2d Cir. 2005) ("[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith," quoting Marquez v. Screen Actors Guild, Inc., 525 U.S. 33 at 44 (1998)).

PLAINTIFFS claim that ACRE and METRO-NORTH treated them in a discriminatory manner based on the allegation that employees with less seniority than PLAINTIFFS received higher wages than the PLAINTIFFS. Defs. Decl. Ex. A, Complaint ¶¶ 20 – 22. However, the CBA does not contain a provision entitling employees to receive wages based on their seniority status. See Defs. Decl. Ex. B, CBA. The absence of uniform linear correlation between an employee's seniority and their rate of pay is due to the language of the CBA and the inherent nature of the craft transfer process. See id. at Rules 3 & 43, pp. 3 & 56. METRO-NORTH employees may change job classifications pursuant to the applicable collective bargaining agreements. See e.g., Defs. Decl. Ex. B, CBA, Rules 6 & 7, pp. 5 – 11. When a METRO-NORTH employee changes crafts (e.g. a conductor becomes an engineer), the employee is often subject to corresponding changes in the scope and terms of employment because most job classifications compensate their employees at different hourly rates. Id. At Rules 6 & 7, pp. 5 – 11.

Under the current practice, an employee working in a highly paid craft, such as a conductor, would enter the step rate wage progression based on their hourly rate of pay. A senior conductor transferring into engine service will have his hourly rate of pay changed depending on where his former rate of pay fits into the step rate percentages of the hourly rate for locomotive engineers. Defs. Decl. Ex. A, Complaint ¶ 18. For example, if a senior conductor's hourly rate of pay falls between the eighty percent (80%) and eighty-five percent (85%) step rates for locomotive engineers, then the senior conductor becomes a first (1st) year locomotive engineer earning eighty-five percent (85%) of the hourly rate for engineers. Id. at 18. The step rate progression system is structured in this manner to encourage craft transfers and to protect transferring employees from suffering a wage loss upon craft transfer.

9

As highlighted by the preceding paragraph, it is possible for a senior conductor to transfer into engine service and earn more money as a first (1st) year engineer (with no prior engineer experience) than an engineer in a prior class, who worked in engine service for a longer period of time. Therefore, the PLAINTIFFS' allegations of earning less money than new transferee employees whom they "had trained" (Id. at ¶ 22) and new transferee employees "having less experience" (Id. at ¶ 20) is because of, and in full accordance with the terms of the CBA, and not a result of discriminatory treatment by ACRE and/or METRO-NORTH. See Defs. Decl. Ex. B, CBA, Rules 3 & 43, pp. 3 & 56.

## A. ACRE's Actions Do Not Constitute Bad Faith

For a union's actions to constitute "bad faith," the actions must be carried out with "improper intent, purpose or motive." See Spellacy, 156 F.3d at 126. There were inequitable results under the step rate wage progression system prior to 2004 which motivated ACRE to engage in discussions with METRO-NORTH regarding implementing changes to the system that would eliminate delayed step rate increases. With the purpose and intent to benefit all employees by ensuring they receive not only the appropriate step rate of pay to which they are entitled, but also to secure each employee a step rate increase within twelve (12) months, ACRE enhanced the step rate progression system in 2004. METRO-NORTH and ACRE believed this change would eliminate the inequities and anomalies arising under the pre-2004 practice and allow engineers to earn more money within a shorter period of time.

PLAINTIFFS have not and cannot allege any facts to prove "fraud, dishonesty, [or] other intentionally misleading conduct." See Spellacy, 156 F.3d at 126. Despite PLAINTIFFS' simple assertions that ACRE and METRO-NORTH's actions were "surreptitious," (Complaint ¶¶ 21 & 22), PLAINTIFFS do not allege any facts creating a valid

10

claim that ACRE and METRO-NORTH engaged in secret agreements and/or misrepresentation. The change in practice did not violate any contractual entitlement of METRO-NORTH engineers and PLAINTIFFS' discovery of the change in September 2006 did not prejudice their rights. The statute of limitations period to challenge ACRE's actions began in September 2006 and thereafter, they hired an attorney to pursue their alleged claims against ACRE and METRO-NORTH. See "POINT I," supra, for discussion regarding statute of limitations. PLAINTIFFS do not allege new facts which they discovered after September 2006, showing any fraud, dishonesty or misleading conduct by ACRE or METRO-NORTH. Cf. Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138, 1143 – 1144 (2d Cir. 1994) (holding union breached its duty of fair representation and acted in bad faith where the union entered a secret side agreement with employer that violated employee's contractual rights and where employees were misled to believe their rights were preserved until the time to exercise their rights expired). ACRE acted honestly in the interest of its members and bargained in good faith with METRO-NORTH to ensure they received the quickest acceleration through their step rate progression to which they were entitled.

## B.  ACRE's Actions Were Not Discriminatory

All employees in the classes prior to 2004 did not benefit from the change in the practice because at the time of the change, in 2004, they completed or passed the first stage of the step rate wage progression. By necessity, a union must differentiate among members in different contexts and "a showing that a union's action has disadvantaged a group of members, without more, does not establish a breach of the duty of fair representation." Haerum v. Air Line Pilots Ass'n, 892 F.2d 216 at 221 (2d Cir. 1989). ACRE and METRO-NORTH's conscious decision to apply the change to the class of 2004 was based on the rationale that the members of

the class of 2004, the year the change was effected, had not yet entered the step rate progression in their new craft of locomotive engineer. Therefore, the change could be applied to them without having to give them retroactive relief for previous years.

This prudent decision was not a result of animus against PLAINTIFFS, but rather because PLAINTIFFS, and all classes prior to 2004, were not similarly situated to the class of 2004 with respect to the step rate progression. In fact, PLAINTIFFS' Complaint affirms ACRE and METRO-NORTH's consistent treatment of similarly situated employees by alleging that "[n]o other Locomotive Engineers who were still in the step rate process were permitted to keep their original anniversary dates." See Defs. Decl. Ex. A, Complaint ¶ 21. Moreover, "[t]he duty of fair representation does *not* require that a union achieve absolute equality among members." Haerum, 892 F.2d at 221 (emphasis added), citing Ford Motor Co. v. Huffman, 345 U.S. 330 at 338 (1953). Rather than alleging any facts, PLAINTIFFS merely describe ACRE's actions as "arbitrary" and "discriminatory" in the Complaint. However, a "formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 127 S.Ct. at 1964-65 (ruling that actual factual allegations must be alleged to state a plausible ground for relief). PLAINTIFFS cannot and do not allege that any ACRE members similarly situated to PLAINTIFFS were treated differently. Therefore, ACRE's actions do not rise to the level of discrimination.

## C. ACRE's Actions Were Not Arbitrary

ACRE's action regarding the change in practice was not arbitrary, but rather a reasoned decision given the facts and circumstances at the time the decision was made. A union's actions will be considered arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of

12

reasonableness' as to be irrational." <u>Air Line Pilots Ass'n Int'l. v. O'Neill</u>, 499 U.S. 65 at 67 (1991), <u>quoting</u> <u>Ford</u>, 345 U.S. at 338.

The decision not to give retroactive adjustments for classes prior to 2004, which were still in their step rate progression, was based on cost and administrative efficiency. Given the burden of retroactively adjusting step rate increases for all classes prior to 2004, which were still in the step rate progression, it was reasonable to make the change effective for 2004 and prospectively. Since "a union's reasoned decision to support the interest of one group of employees over the competing interests of another group does not constitute arbitrary conduct," ACRE did not breach its duty of fair representation to its members. <u>Spellacy</u>, 156 F.3d at 129.

Given the facts and circumstances surrounding ACRE and METRO-NORTH's discussions and decision to improve the step rate progression system, ACRE's actions were well within a "wide range of reasonableness" and the result of circumspect, purposeful and supported rationales. <u>O'Neill</u>, 499 U.S. at 67, <u>quoting</u> <u>Ford</u>, 345 U.S. at 338. The Second Circuit recognizes that "[j]udicial review of union action [ ] 'must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities.'" <u>Spellacy</u>, 156 F.3d. at 126, <u>quoting</u> <u>Gvozdenovic v. United Air Lines, Inc.</u>, 933 F.2d 1100, 1106 (2d Cir. 1991) (citations omitted). Accordingly, neither ACRE nor METRO-NORTH's actions were neither "arbitrary, discriminatory, or in bad faith" and the PLAINTIFFS' Complaint should be dismissed for failure to allege ACRE's breach of the duty of fair representation.

## POINT III

## PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE EMPLOYER'S BREACH OF COLLECTIVE BARGAINING AGREEMENT

For PLAINTIFFS to maintain an action against the employer, the PLAINTIFFS must allege that METRO-NORTH breached the CBA. See Abdelmesih, 1995 U.S. Dist. LEXIS 6407 at *12 – *13. To successfully state such a claim, a plaintiff must identify a specific provision of the collective bargaining agreement that the employer breached. Id. at *13- *14. The PLAINTIFFS' Complaint fails to identify any provision of the CBA which was allegedly breached. In short, the PLAINTIFFS fail to allege any wrongdoing whatsoever with respect to METRO-NORTH. They make reference only to "surreptitious" dealings between METRO-NORTH and ACRE. These types of dealings, which are clearly not established here, do not amount to a breach of the CBA on the part of METRO-NORTH or ACRE. During all of the discussions between ACRE and METRO-NORTH concerning the change in policy, METRO-NORTH and ACRE acted in compliance with the CBA. The mere fact that some members of PLAINTIFFS' union did not benefit from the change in policy does not in any way amount to a breach of the CBA on the part of METRO-NORTH as the PLAINTIFFS seem to allege in the Complaint. As set forth herein, unions are generally given great latitude in how they choose to represent their members fairly. See Spellacy, 156 F.3d at 126. However, the unions must not engage in activities that are arbitrary, discriminatory or in bad faith. See Vaca, 386 U.S. at 190.

Here, PLAINTIFF has failed to show any of the elements necessary to call ACRE's and certainly, METRO-NORTH's actions into question. METRO-NORTH and ACRE's agreement to modify the step wage scale actually greatly benefited the PLAINTIFFS' union as a whole and did not breach any provision of the CBA. Therefore, PLAINTIFFS have not established or even alleged that METRO-NORTH violated any provision of the CBA with ACRE.

14

## CONCLUSION

For all of the foregoing reasons, Defendants ACRE and METRO-NORTH jointly and respectfully request that this motion for an order dismissing the Complaint against them for failure to state a claim upon which relief may be granted under FED. R. CIV. P. 12(b)(6) be granted in its entirety, together with such other and further relief as the Court seems just and proper.

Dated: New York, New York
       October 26, 2007

Respectfully submitted,

HOLM & O'HARA LLP
*Attorneys for Defendants*
*Michael F. Doyle, sued herein as Michael J.*
*Doyle, as General Chairman, Local*
*Division 9, Locomotive Engineers, and*
*Association of Commuter Rail Employees*

By:  /s/ Vincent F. O'Hara
     Vincent F. O'Hara
     Marion M. Lim
     3 West 35th Street, 9th Floor
     New York, New York 10001
     (212) 682-2280

     RICHARD K. BERNARD,
     Vice President and General Counsel
     *Attorneys for Defendant MTA Metro-North*

By:  /s/ Frank Rinaldi
     Frank Rinaldi
     347 Madison Avenue
     New York, New York 10017
     (212) 340-2027

TO:   Ira Cure, Esq.
BROACH & STULBERG, LLP
*Attorneys for Plaintiffs*
*John L. Cruise, Jr., Brian Conrad,*
*Kenneth J. Dibble, Matthew A. Eirich,*
*Michael Kology, Peter J. Krol,*
*and Edgar Vellotti*
One Penn Plaza, Suite 2016
New York, New York 10119
(212) 268-1000

L:\VFO\ACRE\4422\4422.001\Motion to Dismiss\Memorandum of Law - MTD.FINAL.doc