### RULE 45 – WAGES

a. 1. Effective January 1, 1995, all rates of pay irrespective of the method of payment (hourly, daily, etc.), in effect on December 31, 1994 shall be increased by two (2%) percent.

2. Effective January 1, 1996, all rates of pay irrespective of the method of payment (hourly, daily, etc.) in effect on December 31, 1995, shall be increased by two and one-half (2½%) percent.

3. Effective January 1, 1997, all rates of pay irrespective of the method of payment (hourly, daily, etc.) in effect on December 31, 1996, shall be increased by three and one-half (3½%) percent.

4. Effective January 1, 1998, all rates of pay irrespective of the method of payment (hourly, daily, etc.) in effect on December 31, 1997, shall be increased by two (2%) percent.

b. Retroactive wage payments shall be granted only to current employees for service performed since January 1, 1995 and on a pro-rated basis for employees who during 1995 either retired, died, flowed to Conrail, or may have been dismissed and subsequently reinstated with seniority restored.

### MORATORIUM

1. The Agreement shall be effective January 1, 1995 and shall remain in effect through December 31, 1998 and thereafter until changed or modified in accordance with the provisions of the Railway Labor Act, as amended.

2. The parties to this Agreement shall not serve nor progress prior to July 1, 1998 (not to become effective before

January 1, 1999) any notice or proposal for the purpose of changing agreements.

Signed at New York, New York, this 27th day of November, 1995.

For:

THE BROTHERHOOD OF
LOCOMOTIVE ENGINEERS


/s/Michael F. Doyle


MTA METRO-NORTH RAILROAD


/s/Raymond Burney, Esq.

METRO-NORTH/BLE CBA

ATTACHMENT "A"

**METRO-NORTH COMMUTER RAILROAD COMPANY
UNION DUES DEDUCTION AUTHORIZATION**

TO:    HRIS UNIT 4th FLOOR
       PRODUCTION SPECIALIST
       347 MADISON AVENUE
       NEW YORK, N.Y.  10017

I hereby authorize Metro-North Commuter Railroad to deduct union dues, assessments and insurance premiums.  I understand that such deductions will be taken one time per month and such sums will be remitted to the Treasurer of my Union Local in accordance with the terms of the applicable Agreement.

_____    _____
Print Name  First  Middle Initial Last    Employee Number

_____    _____
Name of Union Affiliation    Local Number

_____    _____
Employee Signature    Date

Metro-North/BLE CBA

## ATTACHMENT "B"

**Metro-North Commuter Railroad**

EMPLOYEE DEDUCTION SCHEDULE
UNION DUES

| Name of Labor Organization | | Union Local No. |

Mailing Address:

ACTION
A = Add
C = Change
D = Delete

| | EMPLOYEE NO. | EMPLOYEE NAME | | AMOUNT |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |
| 25 | | | | |

You are hereby duly authorized to process the indicated regular monthly payroll deduction(s) on the above listed employee(s) who has(have) consented to said deduction(s).

Effective date of deduction: _____

Please submit completed form to:        Signed: _____
    Metro-North Commuter Railroad
    HRIS Unit - 4th Floor              Secretary/Treasurer        Date
    347 Madison Avenue
    New York, NY  10017                _____
    Attention: Production Specialist

January 1, 1995 – December 31, 1998                              67

EXHIBIT "A"

## MEMORANDUM OF AGREEMENT
## COVERING THE ESTABLISHMENT OF
## A JOINT LABOR/MANAGEMENT
## PRODUCTIVITY COUNCIL

I.  Metro-North and its employees share the mutual objective of improving Metro-North service, and an important factor to be addressed is that of improving the productivity of both management and labor.  The parties recognize that there is a reservoir of untapped employee input to constructive productivity improvement and agree to the following as a means of accomplishing our objective:

II.  The parties will establish a Joint Labor/Management Productivity Council, which will consist of two representatives from the Brotherhood of Locomotive Engineers (BLE) and an equal number of management representatives.  The Council will select a neutral public member who shall serve as Chairman.

III. The Council will examine all aspects of Metro-North train operations for the purpose of identifying those areas which have an impact on the productivity of Metro-North and its employees and make specific recommendations for changes. No recommendation will be made which will infringe on the Collective Bargaining Agreement of the BLE without the approval of the BLE.  Several areas will be examined, including (but not limited to):

| | |
|---|---|
| absenteeism | training |
| employee morale | working environment |
| management practices | work force distribution |
| revenue-to-cost ratio | including the ratio of |
| alcohol abuse | management to union |
| equipment improvement | employees |

IV. The Council will establish such task forces as are necessary to ensure a comprehensive analysis and review of each phase of Metro-North's existing operation.

Productivity Task Forces will consist of an equal number of management and BLE employees and will be responsible directly to the Council.

Task forces will recommend changes and may institute experimental programs embodying such recommendations, if approved by the Council.

V.  The Council will issue the following reports:

1.  One hundred twenty (120) days after formation -- report to the President of the BLE and the President of Metro-North on the organization of the Council, its ground rules and the local task forces established.

2.  Three hundred sixty (360) days after formation -- interim report to the President of BLE and the President of Metro-North on the findings of Council, local experiments, recommendations, etc.

3.  Such additional interim reports to the President of the BLE and the President of Metro-North as the Council deems necessary or desirable.

4.  October, 1984 -- final report of Council submitted to the President of the BLE and the President of Metro-North. The Productivity Council will terminate, unless otherwise agreed to by the parties, thirty (30) days after the date the recommendations have been made.

The final report will:

(a) summarize the activities of the Council and the local task forces;

(b) outline the findings of the Council and the results of any specific experiments conducted;

(c) make recommendations for changes by the parties which will enhance the productivity of the Corporation.

FOR THE BROTHERHOOD OF
LOCOMOTIVE ENGINEERS

/s/J. P. Carberry

FOR METRO-NORTH COMMUTER
RAILROAD COMPANY

/s/Peter E. Stangl

December 21, 1982

Metro-North/BLE CBA

May 24, 1984

Mr. Daniel F. Riley                    Mr. R.W. Godwin
General Chairman                       District "F" Chairman
105 Wolf Road                          97 South Buffalo Road
Albany, NY  12205                      Hamburg, NY  14075

Gentlemen:

As per discussions at our meeting on May 24, in the Application
of BLE Rule 8, an employee whose assignment is annulled for
one day on a holiday will not be given displacement rights.  It is
also understood that in the application of Rule 34(c) and (g) the
employee will not be disqualified for holiday pay because his
assignment is annulled for one day on a holiday.

Very truly yours,

R.B. Hoffman
/s/Vice President Human Resources

September 19, 1984

Mr. Joseph P. Carberry
Vice President
Brotherhood of Locomotive Engineers
455 Empire Boulevard
Rochester, NY 14609

Mr. D.F. Riley
General Chairman
Brotherhood of Locomotive Engineers
105 Wolf Road
Albany, NY 12205

Dear Messrs. Carberry and Riley:

This will confirm our understanding as a result of discussions on September 19, 1984, in which it was mutually agreed that the Collective Bargaining Agreement between Metro-North Commuter Railroad and the Brotherhood of Locomotive Engineers shall be amended, as follows:

1. "Rule 44, Sick Leave", shall contain the same provisions as "Rule 41, Sick Leave" in the Collective Bargaining Agreement between Metro-North and United Transportation Union, (C and T), currently in effect.

   This Rule shall be effective today provided that the Agreement is ratified by October 31, 1984. In the event the Agreement is not ratified by October 31, 1984, the effective date for purposes of this Rule shall be the first day of the month following the ratification of this amended Agreement.

2. Rule 2, paragraph b, shall be amended to include the following language:

"There shall be no swing time assignments on Saturdays, Sundays, or holidays".

3. Rule 9, paragraph a, shall be amended as follows:

a. Extra board assignments shall be for five consecutive days with two consecutive relief days. A Passenger Engineer assigned to an extra board who is available for service during the five day period of his assignment or who does not lay off or miss a call during those five days will be guaranteed a money equivalent of 5 basic days pay. Metro-North will determine the location of and the number of Passenger Engineers assigned to an extra board.

4. "Rule 29 - Vacation", shall be amended to provide:

"An employee who will attain two, eight, seventeen, twenty or twenty-five years of continuous service during a particular calendar year, will be considered as having reached such anniversary date as of January 1 of that year and may schedule and take vacation accordingly, consistent with seniority and the requirements of the service, provided that all other necessary qualifying requirements under this Rule have been met."

5. "Rule 11, Deadheading", shall be amended to provide:

e. Deadheading will be paid to and from the crew base of the extra board to which an employee is assigned to and will be computed by use of next available train service unless Metro-North provides another means of passenger-type vehicle transportation.

6. "Rule 2, Classifications and Basis of Pay", shall be amended to provide:

f. Employees reporting late because of interruption of service on Metro-North shall suffer no loss of pay, provided that the train used is scheduled to arrive at the crew base sufficiently in advance of their regularly scheduled reporting time.

7. "Rule 14, Calls", shall be amended to provide:

c. If an employee does emergency work pursuant to this Rule and by reason of such work is unable to work his regular assignment because of the Hours of Service Law, he will be paid the regular earnings of the missed assignment. However, the Company reserves the right to order the employees to report upon the expiration of his rest.

It was further understood that this Agreement is subject to the ratification of your membership, and in the event these amendments are not ratified, the Collective Bargaining Agreement currently in effect shall continue to govern the rates of pay, hours of service and working conditions of employees represented by the Brotherhood of Locomotive Engineers.

Very truly yours,

/s/J. B. Isenberg
Vice President - Human Resources

/s/Bruce McIver
Director of Labor Relations, MTA

I Concur:

/s/J. Carberry
/s/D. Riley

October 4, 1985

Mr. D. F. Riley
General Chairman - BLE
105 Wolf Road
Albany, NY 12205

Dear Mr. Riley:

Pursuant to our conference on September 19, 1985 the following method of payment in the application of Rule 11 - DEADHEADING - was agreed upon:

1)  Where the authorized mode of transportation used to deadhead is by train, Passenger Engineers deadheading combined with service will be paid actual hours on a continuous time basis, with not less than eight hours for the combined deadheading and service.

2)  Where the authorized mode of transportation used to deadhead is another passenger type vehicle, Passenger Engineers deadheading combined with service will be paid two (2) minutes per agreed upon highway miles, as set forth in Attachment A hereto, between their assigned crew base and the crew base of the assignment for which called on a continuous time basis, with not less than eight hours for the combined deadheading and service.

3)  Where the authorized mode of transportation used to deadhead is by personal automobile, Passenger Engineers deadheading combined with service will be paid in accordance with paragraph 2, above, and will be reimbursed at the prevailing Internal Revenue Service mileage allowance (twenty-three cents (23¢) per mile as of the date of this letter) for the use of their personal automobile. When authorized to deadhead to another crew base by personal automobile, Passenger

Mr. D. F. Riley          - 2 -          October 4, 1985

Engineers will return to their assigned crew base in the same manner.

It was also agreed that Rule 54 - OFF TRACK VEHICLES of the UTU(C&T) Agreement, set forth in Attachment D hereto, will apply to Passenger Engineers represented by the Brotherhood of Locomotive Engineers.

If the above details correctly set forth our Agreement, please indicate your concurrence by signing two copies of this letter in the space provided, and return the original.

Very truly yours,


/s/M. J. Kurtz
Director - Labor Relations


I concur:


/s/D. F. Riley - General Chairman
Brotherhood of Locomotive Engineers

**ATTACHMENT "C"**
AGREED UPON HIGHWAY MILEAGE

| Between | GCT DAN | HM | POK | NWP | PJCT | STAM | N.H. | |
|---------|---------|-----|-----|-----|------|------|------|------|
| GCT  | X  | 40 | 80 | 25 | 60 | 40 | 75 | 75 |
| HM   | 40 | X  | 45 | 16 | 30 | 30 | 70 | 40 |
| POK  | 80 | 45 | X  | 60 | 30 | 75 | 80 | 40 |
| NWP  | 25 | 16 | 60 | X  | 30 | 17 | 55 | 40 |
| PJCT | 60 | 30 | 30 | 30 | X  | 47 | 50 | 10 |
| STAM | 40 | 30 | 75 | 17 | 47 | X  | 40 | 30 |
| N. H. | 75 | 70 | 80 | 55 | 50 | 40 | X  | 40 |
| DAN. | 75 | 40 | 40 | 40 | 10 | 30 | 40 | X  |

Legend:
- GCT = Grand Central Terminal
- HM = Harmon, NY
- POK = Poughkeepsie, NY
- NWP = North White Plains, NY
- P.JCT = Brewster
- Stam = Stamford, CT
- N. H. = New Haven, CT

METRO-NORTH/BLE CBA

ATTACHMENT "D"

**OFF TRACK VEHICLES**

It is agreed by and among Metro-North and train service employees that whenever an employee sustains any injury while riding in any motor vehicle in the course of his employment at the direction of Metro-North, its agents, servants or supervisory personnel, that the motor vehicle shall, only for purposes of this Rule, be considered an instrumentality of Metro-North under the operation and control of Metro-North and, only for purposes of this Rule that the operator of the motor vehicle shall be considered an employee of Metro-North and that, for purposes of this Rule, the employee in such motor vehicle shall be entitled to all rights and benefits accruing to him under the provisions of the Federal Employers' Liability Act; provided, however, that the operator of the vehicle shall obtain no rights hereunder and is not a beneficiary of this Rule, and that he shall have as against Metro-North only such rights, if any, that he would have had were this Rule not in effect.

Metro-North/BLE CBA

APPENDIX NO. 1

METRO-NORTH'S HEALTH AND
INSURANCE PROGRAM

COST CONTAINMENT MEASURES

Pursuant to our discussions held during the recent negotiations, the following constitutes a description of Health and Insurance Program, Cost Containment Measures.

It is understood and agreed by and between the parties that the implementation date shall be ninety (90) days following acceptance of all these measures by all the Organizations covered by the Metro-North Health and Insurance Program, whichever is later. The measurers shall include:

Precertification an Concurrent Review
Case Management Review
Week-end Admissions
Mandatory, Second Opinion Surgery
Outpatient Surgery Program
Direct Mail Prescription Drugs
Health and Maintenance Organizations
Dental Preferred Provider Organizations (PPO)
Alcohol/Substance Abuse Plan

The final definition of the substance of each of these measures shall be subject to agreement by the parties,

January 1, 1995 – December 31, 1998                    79

APPENDIX NO. 2

METRO-NORTHCOMMUTER RAILROAD
DEFINED CONTRIBUTION PENSION
PLAN FOR AGREEMENT EMPLOYEES

Benefits of the plan are as set forth in the Metro-North Agreement Employees Pension Plan Booklet.

Metro-North/BLE CBA

December 1, 1988


Mr. R. W. Godwin
General Chairman - BLE
97 South Buffalo Street
Hamburg, NY 14075

Re:  Release Time at Home Terminal

Dear Mr. Godwin:

This letter confirms our understanding reached during recent
negotiations with respect to Passenger Engineers being
released under Rule 2(b) at a location other than their Home
Terminal.

As agreed, Metro-North will make every effort, consistent with
scheduling requirements, to schedule release time at an
Engineer's Home Terminal.

Very truly yours,


/s/Michael J. Kurtz
Vice President - Human Resources

December 1, 1988

Mr. R. W. Godwin
General Chairman - BLE
97 South Buffalo Street
Hamburg, NY 14075

Re:    Defined Contribution Pension Plan

Dear Mr. Godwin:

This will confirm our understanding reached during the recent negotiations with respect to the Defined Contribution Pension Plan.

As agreed, employees who rendered service with Metro-North or one of its predecessors in the following locations will be credited with full past service starting with their hire date, exclusive of the appropriate breaks in service:

- Cedar Hill
- Oak Point
- 72nd Street
- Penn Station
- Selkirk
- Springfield, MA.

In addition, employees who can verify intermittent periods of service rendered for Metro-North or one of its predecessors at the above-referenced locations will be given past-service credit recognition for that intermittent period of time.

Very truly yours,

/s/Michael J. Kurtz
Vice President - Human Resources

---

Metro-North/BLE CBA

December 1, 1988

Mr. R. W. Godwin
General Chairman - BLE
97 South Buffalo Street
Hamburg, NY 14075

Re: $3.85 Meal Allowance

Dear Mr. Godwin:

This will confirm our understanding reached during recent negotiations with respect to Passenger Engineers being released at other than their designated crew base for more than four hours.

As agreed, engineers released at other than their designated crew base for more than four hours will continue to receive a $3.85 meal allowance.

Very truly yours,

/s/Michael J. Kurtz
Vice President - Human Resources

December 1, 1988


Mr. R. W. Godwin
General Chairman - BLE
97 South Buffalo St.
Hamburg, NY 14075

Re:    Establishment of Grand Central Terminal Bunk Room

Dear Mr. Godwin:

This letter confirms our understanding reached during recent negotiations regarding the establishment of the Grand Central Terminal Bunk Room.

As agreed, a committee made up of Metro-North's Vice President of Operations and the BLE General Chairman, or his designee, will oversee the establishment of the Grand Central Terminal Bunk Room.

Very truly yours,


/s/Michael J. Kurtz
Vice President - Human Resources

Metro-North/BLE CBA

June 21, 1989

Mr. R. W. Godwin
General Chairman - BLE
97 South Buffalo St.
Hamburg, NY 14075

Re:    Return to Duty Medical Certificates/Rule 27

Dear Mr. Godwin:

This letter confirms our understanding reached during recent negotiations with respect to Engineers being required to present a medical certificate demonstrating their fitness to return to duty after being absent due to illness for more than thirty calendar days, or in cases of injury, for one day or more.

As agreed, it was not the intention of the parties to allow an Engineer to be withheld from service while awaiting an appointment with an official of Metro-North's Medical Department. Metro-North will endeavor to have Engineers returning to duty under such circumstances to be examined by Company Medical Officers in a timely manner so as to promptly resume active service.

It is further understood that it is the Passenger Engineer's responsibility to contact the Crew Dispatchers Office sufficiently in advance of his/her return to service to allow for the scheduling of a prompt return to duty examination.


Very truly yours,


/s/Michael J. Kurtz
Vice President-Human Resources

November 14, 1994

Mr. Michael Doyle
General Chairman - BLE
R.R. #3
Skeet Club Road
Durham, CT 06422

Dear Sir:

Please reference our continued discussions on the issue of the application of BLE Rule 7 (Displacement Rights).   In the application of Rule 7 and Rule 13 it is understood that the minimum three (3) hour notification to resume for a regular assignment as contained in Rule 13 also applies to an ordinary displacement.   That is to say, an employee must exercise his displacement rights against a junior employee at least three (3) hours in advance of the reporting time of that assignment.

If the above accurately reflects our understanding, please sign below.

Yours truly,


/s/Andrew J. Paul
Asst. Director - Labor Relations


I concur:


/s/M. F. Doyle
BLE General Chairman

Metro-North/BLE CBA

July 22, 1997

Mr. Michael Doyle
General Chairman - BLE
R.R. #3
Skeet Club Road
Durham, CT  06422

RE:      Resolution of Outstanding Issues

Dear Sir:

Based upon our recent discussions, Metro-North and the BLE
hereby agree to the following resolutions of outstanding
grievances and issues and agree upon these interpretations of
the Collective Bargaining Agreement:

1.  Engineer assignments will be readvertised if there is a
    permanent change to a train or trains in the assignment,
    including the elimination or addition of a train.

2.  Engineer trainees in the Engineer Training Program will be
    eligible for holiday payments consistent with the qualifying
    conditions for engineers under the Collective Bargaining
    Agreement.

3.  For the 48 hour period after notice of abolishment, the
    position to be abolished will be subject to an exercise of
    seniority by an engineer, regardless of whether or not the
    incumbent remains on the position.

**Resolution of Outstanding Issues**
July 22, 1997
Page 2

4.  Union business will be considered as a neutral day for the purpose of bridging a holiday.

5.  The minimum calling time for an extra list engineer will be 2 hours.

6.  Engineers who are on a vacation holddown may, consistent with the needs of service, take a personal day or a single day vacation.

7.  For purposes of relief day payments following vacations or a week during which the engineer took a single day vacation, Metro-North will look back to the work week prior to the vacation week in circumstances where the engineer did not have the opportunity to complete five consecutive days prior to the relief days.

8.  Personal days will count towards the contractual requirements that are necessary in order for an engineer to receive premium pay for work on a relief day.

9.  When a holiday falls on the 5th day of a work week of an engineer's assignment, the engineer will receive his "stutz" payment for the holiday in addition to all other compensation received on that holiday.

To the extent that any of these provisions have a retroactive application, they are retro-active to Friday, March 28, 1997 (Good Friday).

Metro-North/BLE CBA

**Resolution of Outstanding Issues**
July 22, 1997
Page 3


If you are in agreement with the resolutions and interpretations, please indicate by signing below.

Very truly yours,


/s/Raymond Burney
Director - Labor Relations


I Agree:



/s/M. Doyle, General Chairman

METRO-NORTH/BLE CBA

July 23, 1997

Mr. Anthony Bottalico                Mr. Michael Doyle
General Chairman                     General Chairman - BLE
United Transportation Union          R.R. #3
420 Lexington Avenue, Suite 460      Skeet Club Road
New York, NY 10017                   Durham, CT 06422

Re:    Movement of Equipment In and Around Certain Metro-
       North Maintenance Facilities

Dear Sir:

In order to clarify the type and extent of equipment moves that
can be made by Metro-North craft employees in and around
these shops, the parties agree to the following:

NEW HAVEN

M of E craft employees may move a single pair (M2) or a single
triplet (M4/M6) within the confines of Maintenance Facility
Tracks 1, 2 and 3, east and/or west not to foul Tracks 38 or
Front Lead;

STAMFORD

M of E craft employees may move a single pair (M2) or a single
triplet (M4/M6) within the confines of the Maintenance Facility
Tracks, not to foul L - 2 switch/track.

NORTH WHITE PLAINS

M of E craft employees may move a single pair (M-Series) or a
single MU Car within the confines of the Maintenance Facility,
not to foul the de-rails on the south end of Tracks 5 and 6.
They may also move a single pair (M-Series) or a single MU car

between Tracks 5, 6 and 8 Pocket on the north end of the shop, not to go south of the 6/8 switch or Track 8.

PUT. JUNCTION

M of E craft employees may move a single pair or single triplet (M-Series) or a single MU car within the confines of the Maintenance Facility lift and P.T. tracks, not to foul connecting tracks. When the engine house is rebuilt, after Transportation makes initial placement of equipment, Maintenance employees may move equipment on the engine house Track 1 car length at a time for inspection purposes, not to foul connecting tracks, with portable Blue Signal derails erected.

Nothing in this Agreement is intended to affect the various practices or positions of the parties regarding equipment movement at other Metro-North locations.

If you are in agreement with this definition of permissible moves by M of E employees, please indicate by signing below.

Very truly yours,


/s/Raymond Burney
Director - Labor Relations


I Agree:



/s/Anthony Bottalico                  /s/Michael Doyle
General Chairman-UTU                  General Chairman-BLE

METRO-NORTH/BLE CBA

January 30, 1998

Mr. Michael Doyle
General Chairman - BLE
R.R. #3
Skeet Club Road
Durham, CT  06422

Dear Sir:

Any contractual provision not amended in this Agreement or side letter mutually agreed to and accidentally deleted from the printing of this book, is still considered to be in effect.

Yours truly,


/s/Andrew J. Paul
Asst. Director - Labor Relations


I Agree:


/s/M. Doyle, General Chairman

Letter of Understanding/Metro-North and BLE, UTU

In the application of BLE Rule 10(f), and UTU Rule 12(f), it is understood that an employee who voluntarily changes assignments, resulting in a change of rest day(s) which does not allow him to work five (5) consecutive days on their new assignment, must have worked in a qualifying status on their nine (9) previous scheduled work days in order to be entitled to overtime payments for relief day work.    For changes in assignments that are involuntary (displacement or job abolishment), the employee must perform service on five (5) consecutive work days prior to the new rest days.

Qualifying work days, for purposes of this understanding, include all paid for not worked days excluding sick days.

A rest day paid at straight time will count toward the nine (9) day qualification in the subsequent rest day cycle. For example, if an employee with Saturdays and Sundays off comes in at straight time, that day will count towards the nine (9) day calculation for the employee's subsequent set of rest days.

Furthermore, for an employee who does not immediately resume and misses work after a bump, that day will not count towards the nine (9) day calculation or any other pay entitlement.


/s/Raymond Burney              /s/Michael Doyle
MTA Metro-North                BLE General Chairman
Director - Labor Relations


                               /s/Anthony Bottalico
                               UTU General Chairman

Dated February 25, 1998 in Grievance Mediation