Exhibit C

MEMORANDUM OF UNDERSTANDING

BETWEEN

METRO-NORTH COMMUTER RAILROAD

And

BROTHERHOOD OF LOCOMOTIVE ENGINEERS

The parties hereby agree to the following amendments and changes to the Collective Bargaining Agreement for the period January 1, 1999, through December 31, 2002.

This Memorandum of Understanding is subject to ratification by the membership of the Brotherhood of Locomotive Engineers (BLE) and final approval by the Metropolitan Transportation Authority Board of Directors.

THIS AGREEMENT is made this 1st day of January, 1999, by and between the Metro-North Commuter Railroad ("Metro-North") and the employees represented by the Brotherhood of Locomotive Engineers ("BLE").

## ARTICLE I – GENERAL WAGE INCREASES

### SECTION 1 – FIRST GENERAL WAGE INCREASE

Effective January 1, 1999, all rates of pay irrespective of the method of payment (hourly, daily, etc.), in effect on December 31, 1998 shall be increased by two (2) percent.

### SECTION 2 – SECOND GENERAL WAGE INCREASE

Effective January 1, 2000, all rates of pay irrespective of the method of payment (hourly, daily, etc.) in effect on December 31, 1999 shall be increased by three (3) percent.

### SECTION 3 – THIRD GENERAL WAGE INCREASE

Effective January 1, 2001, all rates of pay irrespective of the method of payment (hourly, daily, etc.) in effect on December 31, 2000 shall be increased by three (3) percent.

### SECTION 4 – FOURTH GENERAL WAGE INCREASE

Effective January 1, 2002, all rates of pay irrespective of the method of payment (hourly, daily, etc.) in effect on December 31, 2001 shall be increased by three (3) percent.

### SECTION 5 – ELIGIBILITY FOR WAGE INCREASES

The January 1, 1999 retroactive payment shall be granted only to current employees for service performed in 1999, and on a prorated basis for employees who, during 1999: 1) retired;  2) died;  3) resigned while having a vested right

1

METRO-NORTH/BLE CBA

to a pension under the Metro-North Defined Benefit Pension Plan; 4) were dismissed and subsequently reinstated or rehired with seniority restored.

## ARTICLE II – DEFINED CONTRIBUTION PENSION PLAN

Effective January 1, 1999, Metro-North will increase the contribution made to the Defined Contribution Pension Plan for Agreement Employees for employees who have completed nineteen (19) years of service from four (4) percent to seven (7) percent.

## ARTICLE III – DEFINED CONTRIBUTION PENSION PLAN BOARD OF PENSION MANAGERS

As soon as practicable Metro-North agrees to amend the Defined Contribution Pension Plan for Agreement Employees to provide for the appointment of a designee recommended by a Committee comprised of representatives from each of the certified labor organizations at Metro-North as a voting member of the Board of Pension Managers.

## ARTICLE IV – DOMESTIC PARTNERS

The Metro-North will offer Domestic Partner coverage in accordance with Metro-North's Policy concerning Domestic Partners, as it may be amended.

## ARTICLE V – LIFE INSURANCE

Effective January 1, 2000, the Group Life Insurance for active employees provided by Metro-North will be increased from $28,000.00 to $100,000.00.

### ARTICLE VI– HEALTH INSURANCE OPT-OUT INCENTIVE PROGRAM

Metro-North will offer participation in the Opt-Out Incentive Program, commencing April 1, 1999, to eligible employees on the same terms and conditions as offered to non-represented employees. However, eligible employees will receive seventy-five (75) percent of the current incentive payment.

Thereafter, participation in the Opt-Out Incentive program shall be offered on the same terms and conditions as it is provided to non-represented employees, as it may be amended, to active employees covered by this agreement.

### ARTICLE VII– DENTAL BENEFITS

Effective January 1, 2001, Metro-North shall provide to active members dental benefits at the same level of benefit as provided to non-represented active Metro-North employees.

Should the active non-represented employee benefit levels or coverage for dental benefits substantially change in the future, either Metro-North or the BLE may re-open negotiations on the impact of that change. If the parties cannot mutually agree to resolve the dispute within ninety (90) days, the issue of the mitigation of the impact of the substantial change will be submitted to binding arbitration.

### ARTICLE VII – HEARING AIDS

As soon as practicable Metro-North shall provide to all active members hearing aid coverage.

3

METRO-NORTH/BLE CBA

### **ARTICLE IX – WORK RULES**

The amendments to the current work rules are as contained in the attached letters.

### **ARTICLE X – MORATORIUM**

(1) The Agreement shall be effective January 1, 1999 and shall remain in effect through December 31, 2002 and thereafter until changed or modified in accordance with the provisions of the Railway Labor Act, as amended.

(2) The parties to this agreement shall not serve nor progress prior to July 3, 2002 (not to become effective before January 1, 2003) any notice or proposal for the purpose of changing agreements.

Unless otherwise specified above, all provisions of this agreement shall become effective immediately after ratification of the Brotherhood of Locomotive Engineers membership and the approval of the Metropolitan Transportation Authority Board. The term of the agreement shall be from January 1, 1999 through December 31, 2002.

There shall be a moratorium on the service of notice pursuant to Section 6 of the Railway Labor Act until December 1, 2002, not be effective before January 1, 2003.

4

**IN WITNESS WHEREOF** the parties hereto sign this Agreement at New York, New York the day and year first above written.

| FOR THE BROTHERHOOD LOCOMOTIVE ENGINEERS | FOR METRO-NORTH OF COMMUTER RAILROAD |
|---|---|
| /s/MICHAEL F. DOYLE<br>General Chairman | /s/RAYMOND BURNEY<br>Director, Labor Relations |

5

January 15, 1999

Mr. Michael Doyle
General Chairman – BLE
R.R. #3
Skeet Club Road
Durham, CT  06422

Re:  **Movement of Equipment in Metro-North's Shops and Yards**

Dear Sir:

In order to resolve the multitude of outstanding issues and to clearly define the parameters of permissible equipment moves and equipment moves that may generate a valid time claim or arbitrary payment, the following is hereby agreed to:

1. Intermediate Drop Off and Pick Up of Equipment

    Metro-North may assign Engineers on a deadhead equipment move to pick up and/or drop off additional cars at intermediate locations without any additional payment. These moves will not require switching but will require the coupling or uncoupling of the equipment on the same track.

2. North White Plains, Brewster and Stamford Maintenance Facilities

    At the Stamford Maintenance Facility, the North White Plains Maintenance Facility and the Brewster Maintenance Facility, Metro-North may use Engineers in Passenger Service to bring equipment to the repair facility, move equipment in or out of the repair facility

METRO-NORTH/BLE CBA

**Movement of Equipment.....**
Mr. Michael Doyle
January 15, 1999
Page 2

and to move equipment released by the repair facility workforce for the purpose of adding the equipment to any outbound consist.

Engineers in Passenger Service used in this capacity will receive an arbitrary payment of one (1) hour's pay at the time and one half rate for up to one (1) hour of work.

3. Trackmobiles

Craft employees in the Maintenance of Equipment Department may use a trackmobile to move equipment in and out Metro-North's repair facilities. The movement of equipment with a trackmobile shall be consistent with our

July 23, 1997 Letter of Understanding regarding the limitations on these equipment moves by the craft employees in MofE Department.

Craft employees in the MofE Department may use a trackmobile to move an entire consist through a wheelmill. In New Haven, the movement of the entire consist through the wheelmill will not foul Track 38. On Inspection Track 1 in New Haven, the Trackmobile will be used to move up to four (4) cars through Inspection Track No. 1.

Any claim or grievance currently on file on these issues will be withdrawn by the BLE and Metro-North file will be closed.

2

**Movement of Equipment.....**
Mr. Michael Doyle
January 15, 1999
Page 3

This Agreement regarding the use of Trackmobiles will not be used to reduce the number of regularly assigned switch crews currently working on Metro-North.

For Metro-North:                          For BLE:

/s/Raymond Burney                         /s/Michael Doyle
Director - Labor Relations                General Chairman – BLE

METRO-NORTH/BLE CBA

January 15, 1999

Mr. Michael Doyle
General Chairman – BLE
R.R. #3
Skeet Club Road
Durham, CT 06422

Re:  **Emergency Work and Continuous Time**

Dear Sirs:

The following modifications and interpretations regarding emergency work and continuous time are hereby agreed upon:

1) The use of an engineer in an emergency situation as defined in the "note" in Rule 14(b) will result in an arbitrary payment of two (2) hours at the time and one half rate of pay. This arbitrary will be paid regardless of the duration of the emergency or when during the assignment the emergency occurred. If the service performed by the engineer during the emergency required the engineer to remain in service beyond his regularly scheduled off duty time, the engineer will receive the appropriate payment on a continuous time basis beyond the scheduled off duty time.

2) As a result of our discussions, the following exceptional circumstances will be governed as follows:

   a) An engineer has worked less than eight (8) hours and has completed his assignment and is still on the Property. The engineer is assigned to perform work that is not part of his bulletined

4

      assignment due to a known vacancy. He is entitled to a Rule 14 emergency payment of two (2) hours at time and one half in addition to any continuous time payments he may be eligible for if he works beyond eight (8) hours.

b)    An engineer completes his bulletined assignment and has worked at least eight (8) hours. He is assigned to perform work that is not part of his bulletined assignment due to an unknown vacancy. He is entitled to a Rule 14 emergency payment of two (2) hours at time and one half in addition to any continuous overtime he may earn.

c)    An engineer completes his bulletined assignment and has worked at least eight (8) hours. He is assigned to perform work that is not part of his bulletined assignment due to a known vacancy. He is entitled to be paid for a second tour of duty.

An unknown vacancy is defined as a vacancy that the Carrier has less than three (3) hours notice to fill. For the purposes of this Agreement, the Engineer completes his bulletined assignment when his last train arrives at his final off duty location.

4)    Engineers in non-passenger assignments who are pressed into revenue service because of an emergency are entitled to a 14(b) payment.

These changes do not circumvent the Rules governing extra list calling procedures.

For Metro-North:                For BLE:

/s/Raymond Burney           /s/Michael Doyle
Director - Labor Relations     General Chairman - BLE

METRO-NORTH/BLE CBA

**REVISED 1/14/99**

July 1, 1994

Mr. Michael Doyle
General Chairman - BLE
R.R. #3
Skeet Club Road
Durham, CT 06422

Dear Sir:

In the application of Rule 14(b) it is agreed that the following questions and answers will govern in determining compensation:

Question #1. If my assignment requires me to operate a scheduled train from one location to an outlying point and return, and because of an emergency situation as outlined by the Agreement, the Dispatcher turns me at a point **prior to** my scheduled turning point and requires that I operate back as a train other than one required by my assignment, am I entitled to compensation under Rule 14(b)?

Answer #1.   No.

Question #2. If my assignment requires me to operate a scheduled train from one location to an outlying point and return, and because of an emergency situation as outlined by the Agreement, the Dispatcher turns me at a point **beyond** my scheduled turning point, am I entitled to compensation under Rule 14(b)?

Answer #2.   Yes, as long as the further point is to at least the next recognized turnaround point. i.e. If an engineer scheduled to turn at Mount Vernon West is required to go to Tuckahoe, he is not entitled to additional compensation.

6

REVISED 1/14/99

However, if that engineer is required to go to Crestwood (a recognized turnaround point) he will be entitled to Rule 14(b) compensation.

Question #3.  If I am required to make additional station stops or my assigned train designation is changed enroute, but the scheduled route of my train does not change, am I entitled to compensation under Rule 14(b)?

Answer #3.   No.

Question #4.   If I am required to do yard switching with the cars of my inbound consist in order to yard my train am I entitled to compensation under Rule 14(b)?

Answer #4.   No.

Question #5.   If I am required to do yard switching on other than my inbound consist, in an emergency situation as defined by the Agreement, am I entitled to compensation under Rule 14(b)?

Answer #5.   Yes.  However, it is understood that at the Stamford Maintenance Facility, the North White Plains Maintenance Facility and the Brewster Maintenance Facility, Metro-North may use Passenger Engineers to bring equipment to the repair facility, move equipment in or out of the repair facility and to move equipment released by the repair facility workforce for the purpose of adding the equipment to any outbound consist.

Passenger employees used in this capacity will receive an arbitrary payment of one (1) hour's pay at the time and one half rate for up to one (1) hour of work.

Question #6.   If I am required to operate a train, in an emergency situation as defined by the Agreement, which would return me to my off-duty location prior to my

METRO-NORTH/BLE CBA

**REVISED 1/14/99**

advertised return train, am I entitled to compensation under Rule 14(b)?

Answer #6.  No, however, you are entitled to the advertised earnings of your assignment.

Question #7.  If I am required to operate trains, in an emergency situation as defined by the Agreement, during a period which my assignment advertises me to layover, am I entitled to compensation under Rule 14(b)?

Answer #7.  Yes, however, an individual who works into or during his advertised swing will not be paid for "working swing" in addition to the Rule 14(b) payment.


Very truly yours,


/s/Raymond Burney
Director - Labor Relations


I concur:


---
/s/Mr. Michael F. Doyle
General Chairman
Brotherhood of Locomotive Engineers

8

January 15, 1999

Mr. Michael Doyle
General Chairman - BLE
R.R. #3
Skeet Club Road
Durham, CT 06422

Re: **Operation of Burro Crane by the Maintenance of Way Department**

Dear Sir:

This will confirm Metro-North's long standing practice and your concurrence that the operation of a Burro Crane (or other similar on-track equipment) by an employee in the Maintenance of Way Department with a single car attached is not a violation of any provision of the Metro-North/BLE Collective Bargaining Agreement.

Any claim or grievance currently on file will be withdrawn by the BLE and the Metro-North file will be closed out.

Very truly yours,


/s/Raymond Burney
Director - Labor Relations


I CONCUR:

_____
/s/Michael Doyle, BLE General Chairman