UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
JOHN L. CRUISE, JR., BRIAN CONRAD,            :
KENNETH J. DIBBLE, MATTHEW A. EIRICH,         :
MICHAEL KOLOGY, PETER J. KROL, EDGAR          :
VELLOTTI,                                     :
                              Plaintiffs,     :
                                              :
        - against -                           :
                                              :
                                              :    07-CV-3940
                                              :     (Pauley, J)
                                              :     (Pitman, MJ)
MICHAEL F. DOYLE, as General Chairman, LOCAL  :
DIVISION 9, LOCOMOTIVE ENGINEERS,             :
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,       :
LOCAL DIVISION 9, LOCOMOTIVE ENGINEER         :
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,       :
and MTA METRO-NORTH RAILROAD,                 :
                                              :
                              Defendants.     :
-----------------------------------------------------------------------x


# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)


BROACH & STULBERG, LLP
Attorneys for Plaintiffs
One Penn Plaza, Suite 2016
New York, New York 10119


By: Ira Cure, Esq.

## TABLE OF CONTENTS

Statement of the Case .............................................. 2

Facts        ................................................. 2

POINT I
      PLAINTIFFS HAVE PLEAD A CAUSE OF ACTION
      SUFFICIENT TO DEFEAT A RULE 12(b)(6) MOTION
      EVEN UNDER THE MORE STRINGENT PLEADING
      STANDARDS OF BELL ATL CORP. v. TWOMBLEY;
      BELL ATL CORP. v. TWOMBLEY DID NOT DISTURB
      THE POLICIES UNDERLYING DUTY OF FAIR
      REPRESENTATION CASES ............................... 7

POINT II
      PLAINTIFFS' ACTION IS TIMELY, AND DID NOT ACRUE
      UNTIL MAY 1, 2007 LESS THAN ONE MONTH PRIOR TO
      THE FILING OF THE SUMMONS AND COMPLAINT IN
      THIS ACTION ............................................. 8

POINT III
      THE COMPLAINT STATES A CLAIM THAT ACRE
      VIOLATED ITS DUTY OF FAIR REPRESENTATION ........ 11

     A.     The Improper Negotiation Of The Change In The
           Way Engineers Were Paid ........................... 11

     B.     ACRE's Failure To Represent The Plaintiffs ............. 14

     C.     Defendants Raise Questions Not Appropriate
           To a Motion To Dismiss ............................... 15

POINT IV
      THE 1993 AGREEMENT BETWEEN METRO-NORTH
      AND ITS UNION CONSTITUTES A COLLECTIVE
      BARGAINING AGREEMENT METRO-NORTH IS
      LIABLE FOR ITS BREACH ............................... 16

CONCLUSION ................................................. 17

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Airline Pilots Association v. O'Neill 499 US 65,77 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Antongorgi v. Bovene 2007 WL 2126096 ** 1 (EDNY 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Barton Brands, Ltd. v. NLRB 529 F.2d 793, 800 (7th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . 13

Bell ATL Corp. v. Twombley _____ US _____ 127 S CT 1955 (2007) . . . . . . . . . . . . . . . . . . 7, 8

Bennett v. Local Union No. 66, Glass Worker International Union 958 F2d 1429, 1435 (8th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Breininger v. Shut Metal Workers International Association Local Union No. 6, 493 U.S. 67, 80 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conley v. Gibson 355 U.S. 41, 46 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cruz v. Local Union No. 3, IBEW 34 F3d 1148 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 14

Czosek v. O'Mara 397 US 25, 27 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

Del Costello v. Int'l. Brotherhood of Teamsters, 462 U.S. 151 (1983) . . . . . . . . . . . . . . . . . . . . 8

Demchik v. General Motors Corp., 821 Fed. 102, 105 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 9

Douglas v. New York City Off Track Betting Corp. 193 F 3d, 130, 138 (2nd Cir. 1999) . . . . . . . 8

Eatz v. DME Unit of Local Union No. 3 of Inter. Broth. of Elec. Worker 794 F.2d 29, 34 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,12

Flanigan v. Int'l. B'hd. Of Teamsters, 942 F.2d 824, 827 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . .9

Kavowras v. The New York Times Co. 328 F 3d. 50, 54 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . 11

King v. New York Telephone, 785 F.2d 31 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lewis v. Tuscan Farms 25 F3d 1138 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

Lewis v. Whelan, 99 F 3d 542 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Metz v. Tootsie Roll Industry, Inc., 715 F, 2d 299, 304 (7th Cir. 1983) cert. den. 464 U.S. 1090

(1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

NLRB v. Local 282, Int'l Bhd of Teamsters 740 F 2d 141, 147 (2nd Cir. 1984) . . . . . . . . . . . . 14

Rakistraw v. United Airlines 981 F. 2nd 1524, 1535 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . .13

Ramey v. District 141, International Association of Machinist 378 F. 3d 269 (2nd Cir. 2004) . . 12

Robesky  v. Quantas Empire Airways, Ltd. 573 F2d 1082, 1090 (9th Cir. 1978) . . . . . . . . . . . . .14

Spellacy v. Airline Pilots Ass'n Int'l 156 F3d 120, 126 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . .15

Teamster Local Union No. 42, NLRB 852 F. 2d 608, 611 (1st Cir. 1987) . . . . . . . . . . . . . . . . . 13

Telford v. Peabody Coal 533 F2d 95 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 14

Vaca v. Sipes 386 US 171, 190 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

**FEDERAL STATUTES**

Railway Labor Act, 45 USC §151 et seq.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2,3

**FEDERAL RULES**

Fed. R. Civ. P. Rule 8(a)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1,7,8

UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

JOHN L. CRUISE, JR., BRIAN CONRAD,          :
KENNETH J. DIBBLE, MATTHEW A. EIRICH,   :
MICHAEL KOLOGY, PETER J. KROL, EDGAR    :
VELLOTTI,                                     :
                          Plaintiffs,        :
                                     :

         - against -                  :
                                     :
                                   :      07-CV-3940
                                   :      (Pauley, J)
                                   :      (Pitman, MJ)
                                   :
MICHAEL F. DOYLE, as General Chairman, LOCAL  :
DIVISION 9, LOCOMOTIVE ENGINEERS,        :
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,  :
LOCAL DIVISION 9, LOCOMOTIVE ENGINEER    :
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,  :
and MTA METRO-NORTH RAILROAD,        :
                                   :
                    Defendants.      :

------------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiffs John L. Cruise, Jr., Brian Conrad, Kenneth J. Dibble, Matthew A. Eirich,

Michael Kology, Peter J. Krol, and Edgar Vellotti hereby submit the memorandum of law in

opposition to Defendant Michael F. Doyle, as General Chairman of the Local Division 9,

Locomotive Engineers, Association of Commuter Rail Employees ("Doyle") and Local Division

9, Locomotive Engineers Association of Commuter Rail Employees ("ACRE") (collectively

"ACRE" or "Union") and the MTA Metro-North Railroad's (Metro-North) motion to dismiss

made pursuant to the Rule 12(b)(6) of the Federal Rules of Civil Procedures.

## STATEMENT OF THE CASE

This action was commenced on May 21, 2007 by the filing of the summons and complaint. This action is a hybrid breach of the duty of fair representation case brought pursuant to the Railway Labor Act, 45 USC §151 et seq. by seven Locomotion Engineers against their union and employer. The Plaintiffs allege that ACRE acted in concert with Metro-North and conspired to discriminate against them in their terms and conditions of employment for arbitrary and illegal reasons.

Defendants now jointly move to dismiss the complaint on the grounds that the Plaintiffs' action is barred by the applicable statute of limitation, that the Plaintiffs failed to allege that ACRE breached its duty of fair representation, and that the Plaintiffs failed to allege that Metro-North breached the collective bargaining agreement between ACRE and Metro-North.

Plaintiffs will demonstrate that this action is in fact timely, that they adequately plead both that ACRE breached its duty of fair representation and that Metro-North has breached its obligation under the relevant collective bargaining agreements.[1]

## FACTS[2]

Each of the Plaintiffs is employed by Metro-North as a locomotive engineer. (Compl. ¶¶ 2-8, 13), and each of the Plaintiffs is a member of ACRE. Id. ACRE is a labor union, and is the

---

[1] To the extent that the Court determines that the Plaintiffs have not adequately plead any element of either Defendants breach, facts and documents are now in Plaintiffs' possession which will permit Plaintiffs to amplify their pleading.

[2] The facts are largely derived from the complaint (Declaration of Ira Cure Exhibit 1) with the exception of certain documents that will be used to rebut allegations and arguments contained in the defendants' motion. Because this is a motion to dismiss the allegations of the complaint are deemed to be true.

2

representative designated by employees employed as Locomotive Engineers by Metro-North to act for said employees. (Compl. ¶ 10). Metro-North is a "carrier" as defined by the Railway Labor Act, 45 USC § 151 (First). Metro-North is an operating agency of the Metropolitan Transportation Authority, which provides commuter rail service. (Compl. ¶ 11).

Each of the Plaintiffs became a Locomotive Engineer during the period 2002-2003. (Compl. ¶ 14) by transferring from another classification at Metro-North. Prior to becoming Locomotive Engineers, each of the Plaintiffs have been employed by Metro-North in a different job classification. (Compl. ¶ 16).

Metro-North has a practice of increasing the wages of its employees upon their anniversary in their job classification. This is memorialized in an agreement entered into between ACRE's predecessor, the Brotherhood of Locomotive Engineers ("BLE") and Metro-North in 1993. (See Declaration of Ira Cure ¶ Exhibits E and F, Compl. ¶ 17)[3].

This agreement governs seniority protection for Metro-North employees transferring from one classification to another, it is assumed that there are other agreements which set forth Metro-North's obligation to honor an employee's new seniority date. ACRE itself describes the system in place as follows:

> For many years payroll took the position anyone who transferred into train service from another craft established a new anniversary date for purposes of establishing pay increases under rule 3. For example: if an employee hired out as a coach cleaner in September of 2003 and transferred into train services, [Locomotive Engineers] in May 2005, the company would use the trains service date of May for future pay increases under Rule 3. This on most occasions kept employees in

---

[3]Upon information and belief an identical agreement was reached between Metro-North and other unions representing Metro-North employees. Plaintiffs learned of the arrangement, through the testimony of Michael Doyle at an internal union proceeding. (Decl. Ira Cure para. 7 Exhibits 5 and 6).

3

the progression rate longer than the intended period of five years.
(See Declaration of Ira Cure, para. 6 Exhibit "4" ).

As a result when workers were promoted into the Locomotive Engineer classification -

one of the most highly skilled and paid job classifications - they would receive a new anniversary

date reflecting their new status. This would have the effect in most cases of delaying the annual

wage increase by many months. (Compl. ¶ 18).

For the Locomotive Engineers class entering service on July 28, 2003, including Plaintiffs

Cruise, Krol and Vellotti, (Compl. ¶ 16a), Metro-North had the following job postings:

Rate of Pay
The full rate of pay is $31.95/hour. The wage progression scale is as follows:
70→75→80→85→90→100%.

The rate for employees transferring into this craft will be determined by the following:
1.    The employee's hourly rate of pay in the Locomotive Engineer's position will be
      the hourly step-rate of pay of the Locomotive Engineer position that most closely
      approximate the hourly step-rate of pay of the organizing position (current
      position).
2.    If the current position's hourly rate of pay falls between steps of the Locomotive
      Engineer's position, the employee will receive the higher step-rate. If the
      Locomotive Engineer's position has a lower maximum (100%) hourly rate of pay
      than the employee's current position, the highest hourly rate the employee will
      receive as a Locomotive Engineer is the 100% rate of the Locomotive Engineer
      position.
(Compl. ¶ 18).

In addition, Metro-North notified each Locomotive Engineer who changed classification

that he or she would have a new seniority date as well. The Metro-North job posting stated:

Seniority

Once accepted into the training program, an employee of any other craft or class
may continue to hold his/her seniority, subject to applicable agreements of that
craft or class, upon successful completion of the training program as Locomotive
Engineer, such employee must relinquish seniority in all other crafts before being
placed on the Locomotive Engineer's seniority roster, represented by ACRE.

4

Locomotive Engineers starting on the same date will be ranked on the ACRE
seniority roster in the order of their company service.
(Compl. ¶ 19, emphasis in the original).

In September 2006, as a result of the publication of the ACRE newsletter, the Plaintiffs

learned for the first time that a group of Locomotive Engineers appointed in 2004 going forward

and having less experience in the Locomotive Engineer classification than Plaintiffs were

permitted to keep their original anniversary date for purpose of salary and wage increases.

(Compl. ¶ 20). (Declaration of Ira Cure para. 6, Exhibit 4). This fundamental shift was

negotiated in 2004, but never divulged to ACRE members. (Compl. ¶¶ 21, 22).

Under the ACRE constitution, collective bargaining agreements are required to be

ratified. (Declaration of Ira Cure, Ex. 7).

Although plaintiffs were similarly situated with members of the Class of 2004, as a result

of the surreptitious arrangements, members of the Class of 2004 were frequently earning more

money than Plaintiffs. Plaintiffs have trained members of the Class of 2004. (Compl. ¶ 22).

Upon learning of the agreement, throughout the fall of 2006, Plaintiffs contacted Defendant

Doyle and other ACRE officers to protest the fact that members of the Class of 2004 were being

given an enhanced benefit. (Compl. ¶ 24). Defendant Doyle repeatedly reassured the Plaintiffs

that they would have their seniority date adjusted. Indeed, on several occasions, he assured

individual Plaintiffs that they would receive an immediate salary adjustment and in, at least one

case, Defendant Doyle promised to secure retroactive pay. (Compl. ¶ 25).

Under the ACRE constitution, each member is guaranteed the right to be "fully informed

about the processing of any grievance or other union action that directly affect the individual

member." "(Declaration of Ira Cure, Ex. 7). When the ACRE leadership failed to resolve the

5

Plaintiffs' grievance, ten members of the Class of 2002 and 2003 including all of the plaintiffs filed a grievance on November 9, 2006. (Decl. of Ira Cure Exhibit 10). The grievance was received by ACRE on November 16, 2006. (Declaration of Ira Cure Exhibit 4).[4]

In December 2006, Defendant Doyle informed Plaintiff Cruise that the issues raised by the Plaintiffs would be taken up by ACRE's General Committee. (Compl. ¶ 26).

As of the filing of the complaint, ACRE's General Committee has not contacted the Plaintiffs concerning the issue of their appropriate seniority dates or salary adjustments. (Compl. ¶ 27).

Defendant Doyle and other ACRE officers have instead engaged in a pattern and practice of harassing plaintiffs including calling their families and threatening their employment and taking steps to distract plaintiffs during periods where they are operating their trains. (Compl. ¶28).

On April 7, 2007, counsel for the Plaintiffs pursuant to Article X of the By-laws of the Association of Commuter Rail Employees, Local Division 9, Locomotive Engineers filed an appeal regarding Defendant ACRE's failure to process the Plaintiffs' grievances concerning their appropriate seniority dates and their appropriate rates of pay. (Compl. ¶ 29). There was no official response from ACRE or its officers to this letter. (Compl. ¶ 30).

However on May 1, 2007, counsel for ACRE, informed Plaintiffs' counsel that certain Plaintiffs could expect to have adjustments to their salaries accelerated. (Compl. ¶ 31). These adjustments were in fact imposed, but made without the approval or consent of the

---

[4]Under the Collective Bargaining Agreement claims for compensation must be presented within 60 days by either the individual or his representative. That provision is not pertinent to the instant action.

6

Plaintiffs, and fall far short of the adjustments Plaintiffs are entitled to.  (Compl. ¶ 32).

Under the ACRE constitution:

Members of the Association of Commuter Rail Employees grant complete authority to
ACRE to act in their behalf in the handling of any and all grievances against their employer.[5]
No member or officer shall resort to the civil courts for redress of any grievance until all
avenues provided by their Local Division Bylaws and this Constitution have been exhausted.
(Declaration of Ira Cure, Ex. 7).

Upon the receipt of the letter from counsel which stated that their grievances were

resolved, Plaintiffs were free to commence this action, and did so within one month of the receipt

of the letter from ACRE's counsel.[6]


## POINT I

**PLAINTIFFS HAVE PLEAD A CAUSE OF ACTION
SUFFICIENT TO DEFEAT A RULE 12(b)(6) MOTION
EVEN UNDER THE MORE STRINGENT PLEADING
STANDARDS OF BELL ATL CORP. v. TWOMBLEY;
BELL ATL CORP. v. TWOMBLEY DID NOT DISTURB
THE POLICIES UNDERLYING DUTY OF FAIR
REPRESENTATION CASES**

On the day the complaint in the instant case was filed the Supreme Court in Bell ATL

Corp. v. Twombley _____ US _____ 127 S CT 1955 (2007), enhanced the pleading requirements

under Section 8 (a) (2) of the Federal Rules of Civil Procedure.  In Twombley, the court retreated

from its holding in Conley v. Gibson "that a complaint shall not be dismissed unless it appears

---

[5]Thus even if the Plaintiffs want to pursue a grievance against Metro-North they were
prevented from doing so.

[6]It is interesting to note that upon service of the complaint, the Defendants, pursuant to
Judge Pauley's rules, wrote and requested permission to move to dismiss the complaint.  One of
the grounds underlying their request was Plaintiffs' failure to exhaust administrative remedies.
Defendants have abandoned this line of attack.

7

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." Yet, even under this new pleading standard, "when considering a motion to

dismiss pursuant to Rule 12(b)(6) the court must accept all factual allegations as true and draw

all reasonable inference in the non-moving party's favor." Antongorgi v. Bovene 2007 WL

2126096 ** 1 (EDNY 2007) citing Douglas v. New York City Off Track Betting Corp. 193 F 3d,

130, 138 (2nd Cir. 1999).  In addition, documents may be considered upon which the plaintiff

relied when drafting the complaint. Id.

      As will be demonstrated below, the Plaintiffs have plead a cause of action for breach of

the duty of fair representation, and have gone well beyond the "formulaic recitation of the

elements of a cause of action." Bell ATL 127 5 Ex. at 1965.

      Moreover, although Conley v. Gibson supra was a case concerning the breach of the duty

of fair representation, plaintiffs contend that the policies underlying the holding in Conley remain

are distinguishable from Bell ATL Corp. supra which was an anti-trust case.  Courts in the

breach of the duty of fair representation context have consistently construed complaints so as to

avoid dismissal.  Eatz v. DME Unit of Local Union No. 3 of International Brotherhood of

Electrical Workers 794 F 2d 29, 34 (2d Cir 1985), citing Czosek v. O'Mara 397 US 25, 27

(1970).

**POINT II**

**PLAINTIFFS' ACTION IS TIMELY, AND DID NOT ACCRUE
UNTIL MAY 1, 2007 LESS THAN ONE MONTH PRIOR TO THE
FILING OF THE SUMMONS AND COMPLAINT IN THIS ACTION**

With the Supreme Court's decision in Del Costello v. Int'l. Brotherhood of Teamsters,

8

462 U.S. 151 (1983) it was firmly established that an employee bringing a hybrid duty of fair representation claim against his employer and union must do so within six months of the claim arising. However, the crucial question is at what point does the claim arise.

The claim clearly arises when the plaintiff knew or should have known that the union had breached its duty of fair representation, Flanigan v. Int'l. B'hd. Of Teamsters, 942 F.2d 824, 827 (2<sup>d</sup> Cir. 1991). Yet, the short limitations period could be tolled if the breach of the Union's duty is concealed from the plaintiff. Thus in Demchik v. General Motors Corp., 821 Fed. 102, 105 (2<sup>d</sup> Cir. 1987) the Court tolled the statute of limitations because the Union's failure to timely move the grievance from Step 2 to Step 3 was not discovered for two years. In King v. New York Telephone, 785 F.2d 31 (2d Cir. 1986), the Court held that questions of fact precluded granting summary judgment to a union in a hybrid duty of fair representation case because, several issues remained concerning when the employee learned that the union was not going to take the case to arbitration.

At some point an employee must come to an awareness that his union will not process his grievance. See, e.g., Metz v. Tootsie Roll Industry, Inc., 715 F, 2d 299, 304 (7th Cir. 1983) cert. den. 464 U.S. 1090 (1984) ("At some point prior to the six months statutory period, the appellant should have realized that the Union was taking no action on her behalf.") But that is not what happened in the case at bar. As plead in the complaint, when Plaintiffs learned of the arrangement made between ACRE and Metro North two years after the event, they immediately went to their Union, and were given assurance that adjustments would be made (Compl. ¶25).

Having received no satisfaction, and tired of Defendant Doyle's empty promises, the Plaintiffs wrote a formal grievance. (Declaration. of Ira Cure, ¶ Exhibit J). This triggered an

9

angry response from Defendant Doyle and other ACRE representatives which included the harassment of Plaintiffs and their families. Such acts of reprisal constitute a breach of the duty of fair representation. See also <u>Telford</u> v. <u>Peabody Coal</u> 533 F2d 95 (5th Cir. 1976).

Then in December 2006, Defendant Doyle informed Plaintiffs that their grievances would be taken up by the ACRE General Committee; so at this point, the Union told the Plaintiffs that it was still processing their grievance. Thus the statute of limitation could not possibly have begun to run.

However, after Defendant Doyle's communication with the Plaintiffs about the ACRE General Committee, there was silence. As a result, Plaintiffs' counsel on April 7, 2006, appealed, pursuant to the ACRE Constitution, ACRE's failure to process the grievance. Again there was no word from ACRE.

Finally, on May 1, 2007 ACRE's counsel in a letter to the Union's counsel, stated that the grievance had been resolved. Clearly it was at this point, when the Plaintiffs had a final response, that the statute of limitations began to run.

The Defendants' argument that the statute of limitations began on September 30, 2007 is sophistry. Once the Plaintiffs learned of their grievance they had an obligation through the grievance procedure to convince both their Union and employer to correct their problem. Indeed, under the ACRE Constitution, they were precluded from bringing an action in Court until they exhausted their rights to appeal under the ACRE Constitution. The Plaintiffs, in fact did this, and it culminated in the May 1, 2007 letter to Plaintiffs' counsel. Accordingly, there is no way the Plaintiffs could have commenced an action until May of 2007. Therefore the filing of the summons and complaint on May 21, 2007 was timely.

10

## POINT III

### THE COMPLAINT STATES A CLAIM
### THAT ACRE VIOLATED ITS DUTY
### OF FAIR REPRESENTATION

The Supreme Court has established that,

> a breach of the statutory duty of fair representation occurs ... when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith.

Kavowras v. The New York Times Co. 328 F 3d. 50, 54 (2nd Cir. 2003) quoting Vaca v. Sipes 386 US 171, 190 (1967).

The duty of fair representation arises in both the context of contract administration and contract negotiation. Airline Pilots Association v. O'Neill 499 US 65,77 (1991). The standards under both types of duty of fair representation cases are essentially the same. The O'Neill Court doubted "that a bright line could be drawn between contract administration and contract negotiation." Id.

The case at bar contains elements of both contract negotiation and contract administration cases. The Plaintiffs allege that the first breach arose when Defendant ACRE and Defendant Metro-North surreptitiously negotiated the manner in which the wage progression for the class of 2004 would be calculated. The second breach occurred when the Plaintiffs attempted to resolve the issue through the contractual grievance procedure and the ACRE constitutional framework but were improperly denied assistance by ACRE and its officers.

A.    **The Improper Negotiation Of The Change In The Way Engineers Were Paid.**

The Second Circuit has recognized that "Collective bargaining is a continuing

11

process. Among other things it involves day to day adjustments in the contract and other working rules, resolution of new problems not covered by existing agreements, and the protection of employee rights already secured by contract. The <u>bargaining representative can no more unfairly discriminate</u> in carrying out these functions then it can in negotiating a collective agreement. <u>Eatz v. DME Unit of Local Union No. 3 of Inter. Broth. of Elec. Worker</u> 794 F.2d 29, 34 (2d Cir. 1986) citing <u>Conley v. Gibson</u> 355 U.S. 41, 46 (1957). (Emphasis supplied).

The <u>Eatz</u> case is directly on point. In <u>Eatz,</u> the union together with the employer negotiated a series of collective bargaining agreements which continually discriminated in favor of one group of employees over another regarding the terms and conditions of employment <u>Id.</u> at 31. The District Court had dismissed the complaint, and the Second Circuit reversed and remanded holding that on the record before it, there were sufficient allegations that the defendant had made "irrelevant and invidious" distinctions among groups of employees. <u>Id.</u> citing <u>Conley v. Gibson</u> 355 US at 46.

The case of <u>Lewis v. Tuscan Farms</u> 25 F3d 1138 (2nd Cir. 1994) involved a union that together with an employer, surreptitiously negotiated an agreement which favored the seniority rights of one group of employees over another. The <u>Lewis</u> court found that the union breached its duty of fair representation when it made "a secret agreement intended to affect only certain workers." <u>Id.</u> at 1143 citing <u>Bennett v. Local Union No. 66, Glass Worker International Union</u> 958 F2d 1429, 1435 (8th Cir. 1992). In addition the <u>Lewis</u> Court found additional evidence of the Union's breach because there was no compliance with a Union's by-law provision requiring "ratification prior to any modification of the collective bargaining agreement." <u>Id.</u> at 1143.

In yet another Second Circuit case, the court upheld a jury verdict finding that the Union and Employer had agreed to improperly "strip" certain workers of their seniority. <u>Ramey v.</u>

12

District 141, International Association of Machinist 378 F. 3d 269 (2ⁿᵈ Cir. 2004). The Court
reasoned that "A union may not, without a legitimate purpose take action favoring some of its
members at the expense of others." Id. at 277 quoting Teamster Local Union No. 42, NLRB 852
F. 2d 608, 611 (1ˢᵗ Cir. 1987) (citation omitted), Barton Brands, Ltd. v. NLRB 529 F.2d 793, 800
(7ᵗʰ Cir. 1976). See also Rakistraw v. United Airlines 981 F. 2ⁿᵈ 1524, 1535 (7ᵗʰ Cir. 1992) ("a
union may not juggle the seniority roster for no reason other than to advance one group of
employees over another.")

It is clear from even the limited record in the case at bar, that seniority is a crucial aspect
of the terms and conditions of employment for Locomotive Engineers at Metro-North. The
salary of each worker is determined by where his or her seniority lies in his or her classification.
As the side agreement makes clear, Metro-North and a number of its Unions have agreed to a
policy governing the retention of seniority where a worker changes classifications. (See Dec. of
Ira Cure Exhibits E and F).

The complaint alleges that the Union and Metro-North, without informing the ACRE
membership agreed to change this central aspect of the employment relationship without
informing any of the members of ACRE, (except presumably those who benefitted from the
change) for two years.

ACRE officers by engaging in these negotiations, ignored, ACRE's obligations under the
ACRE constitution. Under the Member Bill of Rights in the ACRE constitution each member is
entitled to:

    a.      A copy of the contract and all letters of understanding covering the member;
    b.      Inspect and copy any letter of understanding covering the member";
    c.      Full information about the progress of any grievance or other union action that

13

          directly affect the individual member;

d.      Vote by secret ballot in all elections and binding agreement with management. (Cure Declaration Ex. G).

None of these provisions were complied with nor have defendants come forward with any defenses of their actions for ignoring ACRE's constitution.

As in <u>Lewis</u> supra, Courts will find a breach of the duty of fair representation where there has been no compliance with the constitution or by-laws of the Union.

**B.**      <u>**ACRE's Failure To Represent The Plaintiffs.**</u>

When the Plaintiffs learned that the Class of 2004 received more favorable treatment than they did, they contacted ACRE's General Chair Michael Doyle. Mr. Doyle gave the Plaintiffs repeated assurances that their grievance could be adjusted, but neither was resolved. This led Plaintiff Cruise to file a written grievance, in November 2006. (Decl. Of Ira Cure ¶ I). This resulted in a series of threats and harassments directed at the Plaintiffs and their families. Compl. ¶ 28. Which are themselves evidence of the breach of the duty of fair representation. <u>Telford</u> v. <u>Peabody Coal</u> 533 F2d 952, 955, 6th Cir 1976).

It was not until, Plaintiffs were forced to retain counsel, and file an appeal pursuant to ACRE's constitution that they received any response at all to their grievances - however inadequate.

A case that has a similar pattern is <u>Cruz v. Local Union No. 3, IBEW</u> 34 F3d 1148 (2nd Cir. 1994). <u>Cruz</u> also involved a seniority dispute for a group of employees. The aggrieved workers complained to their union, but these union representatives took no action to investigate the workers' complaints. The Court reaffirmed its holding that even "acts of omission" may constitute a breach of the duty of fair representation. <u>Cruz</u> 34 F 3d at 1153, citing <u>NLRB v. Local</u>

14

282, Int'l Bhd of Teamsters 740 F 2d 141, 147 (2nd Cir. 1984); Robesky v. Quantas Empire

Airways, Ltd. 573 F2d 1082, 1090 (9th Cir. 1978).

The Cruz Court went on to state that the evidence supported the jury's finding that the

Union "failed, arbitrarily to pursue the plaintiffs' grievance." Not only have Plaintiffs alleged

similar facts in the case at bar, but have alleged that by pursuing their grievances, they

engendered outright hostility from the Union officers who were supposed to be representing

them. See also Eatz 794 F2d at 34. ("The bargaining representative can no more unfairly

discriminate in carrying out these functions than it can in negotiating a collective agreement.")

**C.    Defendants Raise Questions Not Appropriate To A Motion To Dismiss.**

The Defendants argue that there could be no breach of the duty of fair representation,

because the surreptitious agreement was made for rational considerations.

In the pre-discovery stage of this proceeding, the Defendants are asking the Court to make

findings wholly at odds with the standards governing Rule 12(b)(6). Defendants assert that the

negotiated changes had the intent to "benefit all employees." Defendants' brief at page 10.

Defendants also state that Plaintiffs "have not and can not allege any facts to prove fraud,

dishonesty, or other intentionally misleading conduct." Id. citing Spellacy v. Airline Pilots Ass'n

Int'l 156 F3d 120, 126 (2nd Cir. 1998).

On the contrary, that is precisely what the Plaintiffs have plead. Despite the clear

provision of the ACRE Constitution's Bill of Rights, the agreement reached between ACRE and

Metro-North was not disclosed for two years. If ACRE was so convinced that the arrangement

was so beneficial to its members, one would think that the agreement would have been disclosed

at a much earlier point. At this stage, it is unclear if there are any other arrangements made

15

between ACRE and Metro-North, but it seems possible that ACRE officers may have made some promises in return for the change in the seniority system, which have still not been disclosed to the ACRE bargaining unit.  See e.g <u>Eatz</u> 794 F2d at 34.  ("When an action involves a Union's duty of fair representation, the Supreme Court advises lower Courts to construe complaints so as to avoid dismissals, and to give plaintiffs the opportunity to file supplemental pleadings unless it appears beyond doubt that a good cause of action can not be stated") citing <u>Czoskek v. O'Mara</u> 397 US 25, 27 (1970).

The defendants' mere assertion that they have acted in a responsible rational way does not make it true.  Plaintiffs should be permitted to test defendants on these issues.

### POINT IV

### THE 1993 AGREEMENT BETWEEN METRO-NORTH AND ITS UNION CONSTITUTES A COLLECTIVE BARGAINING AGREEMENT; METRO-NORTH IS LIABLE FOR ITS BREACH.

Metro-North argues that, the action should be dismissed against Metro-North because the Plaintiffs failed to allege that Metro-North breached the collective bargaining agreement.  In fact the complaint alleges that Metro-North violated "its long established practice of assigning seniority dates to mechanics of the Locomotive Engineers classification." (Compl. par. 36).  This practice was in actuality memorialized in an agreement as long ago as 1993, which ACRE General Chair Doyle disclosed at an internal union hearing (Declaration of Ira Cure, Exhibits 5 and 6).  Accordingly, despite the assertions of Metro-North, this agreement was violated in conjunction with ACRE.

In <u>Lewis v. Whelan</u>, 99 F 3d 542 (2d Cir. 1996) the Court held that an employer that

16

participated in a Union's, "duplicity" could in fact be jointly and severally liable with a union for a breach of the duty of fair representation.  At this point in the proceeding there is no evidence that, Metro-North even took steps to publicize the agreement benefiting the Class of 2004. Metro-North has not demonstrated why it departed from a long standing practice regarding seniority memorialized in numerous documents.  Therefore, plaintiffs should be permitted to proceed in this action against Metro-North. [7]

## CONCLUSION

**FOR THE FOREGOING REASONS THE DEFENDANTS**
**MOTION TO DISMISS SHOULD BE DENIED.**

Dated: December 3, 2007

Respectfully Submitted,
Broach & Stulberg, LLP
Attorneys for Plaintiff

By:  _____

Ira Cure (IC 7121)
One Penn Plaza, Suite 2016
New York, New York 10119
(212) 268-1000

---

[7]Actions for breach of the Duty of Fair Representation, may be prosecuted against Unions in the absence of the employer.  Breininger v. Shut Metal Workers International Association Local Union No. 6, 493 U.S. 67, 80 (1989); Lewis v. Tuscan Dairy Farms 25 F 3d 1138, 1145.