**3**

MEMORANDUM OF UNDERSTANDING

BETWEEN

METRO-NORTH COMMUTER RAILROAD

And

BROTHERHOOD OF LOCOMOTIVE ENGINEERS


The parties hereby agree to the following amendments and changes to the Collective Bargaining Agreement for the period January 1, 1999, through December 31, 2002.

This Memorandum of Understanding is subject to ratification by the membership of the Brotherhood of Locomotive Engineers (BLE) and final approval by the Metropolitan Transportation Authority Board of Directors.

THIS AGREEMENT is made this 1st day of January, 1999, by and between the Metro-North Commuter Railroad ("Metro-North") and the employees represented by the Brotherhood of Locomotive Engineers ("BLE").

## ARTICLE I – GENERAL WAGE INCREASES

## SECTION 1 – FIRST GENERAL WAGE INCREASE

Effective January 1, 1999, all rates of pay irrespective of the method of payment (hourly, daily, etc.), in effect on December 31, 1998 shall be increased by two (2) percent.

## SECTION 2 – SECOND GENERAL WAGE INCREASE

Effective January 1, 2000, all rates of pay irrespective of the method of payment (hourly, daily, etc.) in effect on December 31, 1999 shall be increased by three (3) percent.

## SECTION 3 – THIRD GENERAL WAGE INCREASE

Effective January 1, 2001, all rates of pay irrespective of the method of payment (hourly, daily, etc.) in effect on December 31, 2000 shall be increased by three (3) percent.

## SECTION 4 – FOURTH GENERAL WAGE INCREASE

Effective January 1, 2002, all rates of pay irrespective of the method of payment (hourly, daily, etc.) in effect on December 31, 2001 shall be increased by three (3) percent.

## SECTION 5 – ELIGIBILITY FOR WAGE INCREASES

The January 1, 1999 retroactive payment shall be granted only to current employees for service performed in 1999, and on a prorated basis for employees who, during 1999: 1) retired; 2) died; 3) resigned while having a vested right

1

## ARTICLE VI– HEALTH INSURANCE OPT-OUT INCENTIVE PROGRAM

Metro-North will offer participation in the Opt-Out Incentive Program, commencing April 1, 1999, to eligible employees on the same terms and conditions as offered to non-represented employees. However, eligible employees will receive seventy-five (75) percent of the current incentive payment.

Thereafter, participation in the Opt-Out Incentive program shall be offered on the same terms and conditions as it is provided to non-represented employees, as it may be amended, to active employees covered by this agreement.

## ARTICLE VII– DENTAL BENEFITS

Effective January 1, 2001, Metro-North shall provide to active members dental benefits at the same level of benefit as provided to non-represented active Metro-North employees.

Should the active non-represented employee benefit levels or coverage for dental benefits substantially change in the future, either Metro-North or the BLE may re-open negotiations on the impact of that change. If the parties cannot mutually agree to resolve the dispute within ninety (90) days, the issue of the mitigation of the impact of the substantial change will be submitted to binding arbitration.

## ARTICLE VII – HEARING AIDS

As soon as practicable Metro-North shall provide to all active members hearing aid coverage.

3

**IN WITNESS WHEREOF** the parties hereto sign this Agreement at New York, New York the day and year first above written.

**FOR THE BROTHERHOOD LOCOMOTIVE ENGINEERS**

**FOR METRO-NORTH OF COMMUTER RAILROAD**

_____
/s/MICHAEL F. DOYLE
General Chairman

_____
/s/RAYMOND BURNEY
Director, Labor Relations

5

January 15, 1999


Mr. Michael Doyle
General Chairman – BLE
R.R. #3
Skeet Club Road
Durham, CT  06422

Re:  **Movement of Equipment in Metro-North's Shops
     and Yards**

Dear Sir:

In order to resolve the multitude of outstanding issues and to
clearly define the parameters of permissible equipment
moves and equipment moves that may generate a valid time
claim or arbitrary payment, the following is hereby agreed to:

1.  <u>Intermediate Drop Off and Pick Up of Equipment</u>

    Metro-North may assign Engineers on a deadhead
    equipment move to pick up and/or drop off additional
    cars at intermediate locations without any additional
    payment.  These moves will not require switching but
    will require the coupling or uncoupling of the
    equipment on the same track.

2.  <u>North White Plains, Brewster and Stamford
    Maintenance Facilities</u>

    At the Stamford Maintenance Facility, the North White
    Plains Maintenance Facility and the Brewster
    Maintenance Facility, Metro-North may use Engineers
    in Passenger Service to bring equipment to the repair
    facility, move equipment in or out of the repair facility

**Movement of Equipment.....**
Mr. Michael Doyle
January 15, 1999
Page 3

This Agreement regarding the use of Trackmobiles will not
be used to reduce the number of regularly assigned switch
crews currently working on Metro-North.

For Metro-North:                    For BLE:


_____         _____
/s/Raymond Burney                   /s/Michael Doyle
Director - Labor Relations          General Chairman – BLE

assignment due to a known vacancy. He is entitled to a Rule 14 emergency payment of two (2) hours at time and one half in addition to any continuous time payments he may be eligible for if he works beyond eight (8) hours.

b)  An engineer completes his bulletined assignment and has worked at least eight (8) hours. He is assigned to perform work that is not part of his bulletined assignment due to an unknown vacancy. He is entitled to a Rule 14 emergency payment of two (2) hours at time and one half in addition to any continuous overtime he may earn.

c)  An engineer completes his bulletined assignment and has worked at least eight (8) hours. He is assigned to perform work that is not part of his bulletined assignment due to a known vacancy. He is entitled to be paid for a second tour of duty.

An unknown vacancy is defined as a vacancy that the Carrier has less than three (3) hours notice to fill. For the purposes of this Agreement, the Engineer completes his bulletined assignment when his last train arrives at his final off duty location.

4)  Engineers in non-passenger assignments who are pressed into revenue service because of an emergency are entitled to a 14(b) payment.

These changes do not circumvent the Rules governing extra list calling procedures.


For Metro-North:          For BLE:


_____        _____
/s/Raymond Burney              /s/Michael Doyle
Director - Labor Relations     General Chairman - BLE

**REVISED 1/14/99**

However, if that engineer is required to go to Crestwood (a recognized turnaround point) he will be entitled to Rule 14(b) compensation.

Question #3.   If I am required to make additional station stops or my assigned train designation is changed enroute, but the scheduled route of my train does not change, am I entitled to compensation under Rule 14(b)?

Answer #3.    No.

Question #4.   If I am required to do yard switching with the cars of my inbound consist in order to yard my train am I entitled to compensation under Rule 14(b)?

Answer #4.    No.

Question #5.   If I am required to do yard switching on other than my inbound consist, in an emergency situation as defined by the Agreement, am I entitled to compensation under Rule 14(b)?

Answer #5.    Yes.   However, it is understood that at the Stamford Maintenance Facility, the North White Plains Maintenance Facility and the Brewster Maintenance Facility, Metro-North may use Passenger Engineers to bring equipment to the repair facility, move equipment in or out of the repair facility and to move equipment released by the repair facility workforce for the purpose of adding the equipment to any outbound consist.

Passenger employees used in this capacity will receive an arbitrary payment of one (1) hour's pay at the time and one half rate for up to one (1) hour of work.

Question #6.   If I am required to operate a train, in an emergency situation as defined by the Agreement, which would return me to my off-duty location prior to my

January 15, 1999


Mr. Michael Doyle
General Chairman - BLE
R.R. #3
Skeet Club Road
Durham, CT  06422

Re: **Operation of Burro Crane by the Maintenance of Way Department**

Dear Sir:

This will confirm Metro-North's long standing practice and your concurrence that the operation of a Burro Crane (or other similar on-track equipment) by an employee in the Maintenance of Way Department with a single car attached is not a violation of any provision of the Metro-North/BLE Collective Bargaining Agreement.

Any claim or grievance currently on file will be withdrawn by the BLE and the Metro-North file will be closed out.

Very truly yours,


/s/Raymond Burney
Director - Labor Relations


I CONCUR:

_____
/s/Michael Doyle, BLE General Chairman

**4**



# NEWS BY THE ACRE

**A Publication for the Members of the Association of Commuter Rail Employees**

## Collective Bargaining

Under the Railway Labor Act (RLA), labor contracts remain in effect until they are amended by the mutual consent of both labor and management. As most of you are already aware, the four year agreement that was negotiated to cover the round of bargaining that began on January 1, 2003 becomes eligible for amending on December 31, 2006. Either party that wishes to make amendments to the existing contract must follow the procedures spelled out in the RLA. The first step in the process of amending an agreement begins with the serving of notices under section six of the RLA. For our purposes, these notices are requests for specific changes to the current agreement ACRE has with MTA/Metro-North. ACRE began this process with the serving of section six notices on September 13, 2006. (See page two for ACRE's common issues served as general section six notices)

**The Railway Labor Act. Page 12.......**

"Moving the people who move the world" —ACRE

### Annual Dinner Dance see details back cover...

### Inside:

**Security and Safety page 3.**
**Signalman's Assault Bill page 4.............................**
**Anti-ACRE Bill page 5.........**
**Service Agreement page 6..**
**Looking Forward page 7......**
**Pension Corner page 8........**
**NNRIT page 9.......................**
**Union History page 10.........**
**Pay Rates Resolved for Craft Transfers page 14......**
**Power Directors page 15.....**
**Signalmen's News page 16.**
**Grand Central page 17........**
**Celebrity Central page 18...**

# The Railway Labor Act

**Continued from page 13.............................................**

## Self Help

This next step is self explanatory. "Self help" offers both sides the opportunity to do what they feel necessary to advance their cause. Labor has the right to withhold its services in the form of a legal strike while management could implement any of the contract terms contained in any of their previous proposals.

Even though the RLA was a positive step for labor, it is not without its flaws. It often breeds frustration for those who are anxious to achieve quick results. However, in achieving its mandate to prevent interruptions in interstate commerce it has been a smashing success. Since 1926, of 176 major disputes that have led to the creation of Presidential Emergency Boards only 36 have led to work stoppages. While not perfect, it still offers mechanisms for dispute resolution that protects the interests of management and the rights of labor.

For more information on the Railway Labor Act see ACRE's Q & A at http://www.goacre.org/ or at the National Mediation Board's website http://www.nmb.gov/    •

# Progression rates of pay for craft transfers resolved by General Committee

For many years payroll took the position anyone who transferred into train service from another craft established a new anniversary date for purposes of establishing pay increases under rule 3. For example: if an employee hired out as a coach cleaner in September of 2003 and transferred into train service in May 2005, the company would use the train service date of May for future pay increases under Rule 3. This on most occasions kept employees in the progression rate longer than the intended period of five years.

**As a result of ongoing discussions with labor relations it was agreed that;**

If you worked for Metro-North in another craft, and transferred into train service at less than 100%, your next pay increase under the progression rate (after transfer) should take place based on your initial date of hire with Metro-North. For example: if you hired out in another craft during September 2003, and transferred into train service in May 2005, your anniversary date remains September, 2003. Therefore, on the date you transfer, May 2005 your pay rate will be adjusted to reflect the train service rate, then in September and every September thereafter your rate will be increased in accordance with Rule 3.

This is a major improvement over the prior interpretation for craft transfers. General Chairman Bottalico thanks ACRE Division 9 General Chairman Michael Doyle, and all ACRE local chairmen for their due diligence in resolving this issue for all our craft transfers. If you are a craft transfer and need help with this issue please call your local chairman, at the union office, 212-599-5856.    •

14

**5**

BOARD OF APPEALS HEARING
ACRE LOCAL DIVISION 9
------------------------



420 Lexington Avenue
June 12, 2007
11:13 a.m.


BEFORE:

JOHN McBRIDE, Chairman
GLENN SCANLON
STEVE ZUMPANO
TOM POTTHAST
RAMON FIGUEROA, Alternate



PRESENT:

PETER J. KROL
KENNY DIBBLE
MICHAEL KOLOGY
JOHN CRUISE, JR.
JOE LINDENBERG
MIKE DOYLE, General Chairman
MIKE EIRICH
JOHN POTTHAST
TOM COOPER

1               PROCEEDINGS

2               MR. T. POTTHAST:  I have a

3   June 5th, that's the only one I have.

4               MR. T. POTTHAST:  None of us have

5   it.  We have a June 5th.

6               CHAIRMAN McBRIDE:  The hour's up,

7   so we're going to take ten minutes.

8               (Recess taken.)

9               CHAIRMAN McBRIDE:  It's 12:23.

10  We're going to start off with the General Chair

11  Mike Doyle.  He's going to have rebuttal, then

12  he'll state his case.

13              MR. DOYLE:  Good afternoon.  Let me

14  go through to the best of my recollection

15  everything that's transpired here.  I'll try to

16  make it as short and sweet as possible.

17              When I first became the general

18  chairman, prior to my becoming the general

19  chairman in 1992 the Brotherhood of Locomotive

20  Engineers who at that time represented the

21  Collective Bargaining Agreement in a collective

22  bargaining round in exchange for a 3 percent

23  contribution into a Vanguard account had an

24  agreement that people entering engine service

25  will start at 70 percent rate of engineer's pay.

PROCEEDINGS

1

2  Under the entry rates they would progress from

3  after 12 months of service from 70 percent to

4  75, after another 12 months of service to 80,

5  after another 12 months of service to 85, after

6  another 12 months of service to 90, and after

7  another 12 months of service to 100.

8             That was done somewhere around

9  1988, if memory serves me correct.  I became the

10  General Chairman of the Brotherhood of

11  Locomotive Engineers of Metro North in 1992.

12  Subsequent to me becoming the general chairman,

13  I attended employee forums around the property

14  that were conducted by Donald Nelson, former

15  president of Metro North.

16             At a number of those forums, myself

17  in addition to many other employees spoke up

18  about the fact that many people who sought

19  promotion were in essence being afforded

20  promotion into a new craft, but their pay was

21  being reduced because in their former craft,

22  their rate of pay was greater than, in the case

23  of engineers, the 70 percent rate of engineers

24  pay.  Those meetings had an impact upon former

25  President Nelson because he contacted labor

1                    PROCEEDINGS

2    relations and instructed labor relations to try

3    to work out some remedy to this issue with the

4    union.

5              So on September 13th, 1993, which I

6    hope you have a copy of this correspondence --

7              CHAIRMAN McBRIDE:   September 15th.

8    Okay, okay, it was human resources stamped

9    the 15th.

10             MR. DOYLE:   I wrote a letter to

11   Raymond Burney with an attached copy of an

12   August 30th, 1993 letter to me.  And in that

13   letter it basically, without going through the

14   whole thing, it afforded people the right that

15   their seniority would be protected in the event

16   that in a change of craft transfer they failed

17   to complete the training program, they could

18   revert back into their craft with their

19   seniority unimpaired.

20             It also afforded people an

21   opportunity that when they went into engine

22   service, in our particular case, that they would

23   not lose pay.  If their rate of pay at the time

24   or at any time was less than 70 percent, they

25   would come in at the 70 percent rate of pay.  If

1              PROCEEDINGS

2   their rate of pay fell between 70 percent and 75

3   percent, they would come in at 75 percent.  They

4   will not have a financial loss by being promoted

5   into the craft of engineers.

6              So I signed an agreement that was

7   in effect from September 15th, 1993 until May

8   of -- I'm sorry, until 2004.  Over the course of

9   those intervening years, between September of

10  1993 and 2004, on occasion we would have a

11  transferee who was coming into engine service,

12  they would come into engine service, let's just

13  say hypothetically the engine service class was

14  starting on June 1st.  You would have somebody

15  who was coming into engine service and they

16  would be coming in at 70 percent let's say.  But

17  on June 5th, in their former craft, they were

18  scheduled for a step rate increase.

19             So on an individual basis, myself

20  and Anthony Bottalico, the general chairman of

21  the conductors, would go to labor relations and

22  we would say --

23             CHAIRMAN McBRIDE:  Did you say

24  individual?  On an individual basis?

25             MR. DOYLE:  On an individual basis.

1               PROCEEDINGS

2    We would go to labor relations, and Chino may be

3    familiar with this because he used to be in the

4    training center so he was probably up there when

5    we used to talk to some of the classes, we would

6    say to labor relations, look, this guy was due

7    for a step rate increase in his former craft in

8    four days, five days, a week, however long.  If

9    he had gotten that step rate increase that he

10   was waiting almost 12 months to receive, he

11   would have gotten himself above the 70 percent

12   engineer's rate.  And therefore, he would have

13   started at 75 percent.  Because he didn't get

14   that step rate increase, you might only be

15   bumping him up a nickel or a quarter or 50

16   cents.  But if it had been five days later when

17   he transferred, he would have already been up

18   above the 70 percent, he would have been bumped

19   up to 75 percent.  That was a big difference.

20             So on an individual basis, in each

21   class during those -- I don't know if we started

22   in '93, but sometime prior to 2004, we would go

23   in and we would handle those people on an

24   individual basis.

25             In 2004, sometime, if memory serves

**6**

**Ⓜ️ Metro-North Commuter Railroad**
Metropolitan Transportation Authority

August 30, 1993

Mr. Michael F. Doyle
General Chairman — BLE
R. R. 3
Skeet Club Road
Durham, CT  06422

Dear Sir:

Metro-North, in its continuing effort to establish and maintain a positive and progressive work environment, is interested in modifying the collective bargaining agreement provisions that limit an employee's ability to take advantage of potential advancement opportunities. Our approximately 4,900 employees hold a variety of different positions that vary significantly in scope of responsibility and rate of pay. During the numerous forums and discussions that have been held throughout our property over the past few years, it has become evident that our employees perceive numerous impediments in the current craft transfer process. Metro-North employees have continually requested that the craft transfer process be amended to remove the seniority and wage restrictions that currently exist.

Therefore, in the best interest of Metro-North, our employees, and the Labor Organizations that represent them, and in order to provide an employment atmosphere more conducive to advancement, Metro-North proposes that all collective bargaining agreement provisions, past practices and policies that apply to craft transfers be modified by the following provisions:

1.    <u>Limited Seniority Protection</u>

All employees who apply for internal craft transfer and are accepted as final candidates by Metro-North for vacancies in a new craft shall have their originating craft seniority protected in the following manner:

A)    Employees who are accepted by Metro-North to transfer to a different craft shall have their originating craft seniority protected for the entire length of the training period in their new craft.    Additionally, these employees shall have their originating craft seniority protected for a

| Members of the Board | Peter E. Stangl | Lilyan H. Affinito | Barbara J. Fife | Lucius J. Riccio | Donald N. Nelson |
|---|---|---|---|---|---|
| | Chairman and | Bernard B. Beal | Sally Hernandez-Pinero | Joan Spence | President |
| | Chief Executive Officer | E. Virgil Conway | Herbert J. Libert | Edward A. Vrooman | |
| | Daniel T. Scannell | Warren S. Dolny | Prema Mathai-Davis | Alfred E. Werner | |
| | First Vice Chairman | Barry L. Feinstein | Nell Novesky | | |

30 day probationary/qualifying period. This probationary/qualifying period shall begin when the employee is deemed fully qualified by Metro-North and is assigned to a regular (or extra) position in their new craft.

B)  During either the training period or the probationary/qualifying period, the employee may not voluntarily elect to return to his/her originating craft. However, should it become evident that the employee will not successfully complete the training program, or will not qualify for the new craft position, the employee may return to his/her former craft.

C)  Employees who do not successfully complete training or fail to qualify for the new craft position shall return to their originating craft with their full seniority intact. However, for the initial flow back to the originating craft, the employee will be required to return to either 1) any vacancy or 2) exercise seniority over the most junior person at the facility, location or headquarters. Thereafter, the returning employee will enjoy the full exercise of seniority.

2.  <u>Wage Rate</u>

The wage rate of all employees who are accepted as final candidates by Metro-North for vacancies in a new craft shall have their new wage rate determined by the following parameters:

A)  The employee's hourly rate of pay and the current percentage step rate in the originating craft position shall be the factors that determine the employees' hourly rate of pay in his/her new position. The employees' rate of pay in the new position will be the hourly step rate of pay of the new position that most closely approximates the hourly step rate of pay of the originating position.

    Example:  An employee currently holding a coach cleaner position at the 100% rate of pay, ($15.02/hr) is accepted to transfer to a shop craft electrician position. This employee's new rate of pay as an electrician will be $15.21/hr (85% step rate).

B)  If the employee is transferring to a position with a higher hourly rate of pay, and his/her current position hourly rate of pay falls between the step

rates of the new position, the employee will receive the higher step rate in the position. If the employee is transferring to a position with a lower hourly rate of pay, the maximum hourly rate of pay the employee will receive in the new position is the 100% rate.

If you are in agreement with implementing these changes, please indicate your agreement by signing below. Metro-North requests that your response be returned promptly so that these changes can be implemented by October 1, 1993.

Very truly yours,

Raymond Burney
Director - Labor Relations

I Agree:

General Chairman - BLE

cc:  All General Chairmen

0070-RB.ko

**Ⓜ** *Metro-North Commuter Railroad*
Metropolitan Transportation Authority

---

*November 5, 1993*

Mr. Mike Doyle
General Chairman - BLE
R.R. #3
Skeet Club Road
Durham, CT  06422

Re:    Craft Transfer Agreement

Dear Mr. Doyle:

This is in response to your letter of October 20, 1993, regarding the rate of pay for employees transferring from a position represented by the UTU to an Engineer Trainee position.

I refer you to the letter agreement dated August 30, 1993, signed by yourself. This letter specifically says in Section 2, Para. a, that the basis for determining the step rate to which the employee moves is the hourly rate of pay of the position the employee currently holds. Therefore, if at the time of transfer, an employee is working as a Trainman, it is the hourly rate of pay this employee receives as a Trainman that determines the most appropriate step rate in the wage progression for his/her Engineer Trainee position. This is true even if the employee is a qualified conductor.

The intent of this agreement is to allow employees to transfer to other positions without suffering a loss in their hourly compensation. Your suggestion to credit the employee with the highest rate they were technically qualified for provides a windfall for the employee who by his/her own choice in the exercise of seniority does not hold the highest position for which they are qualified.

I trust that this explanation clarifies the intent of the agreement and I will therefore consider this matter closed.

Very truly yours,

Raymond Burney
Director - Labor Relations

---

| Members of the Board | Peter E. Stangl | Lilyan H. Affinito | Barbara J. Fife | Lucius J. Riccio | Donald N. Nelson |
|---|---|---|---|---|---|
| 0195-RB.jc | Chairman and Chief Executive Officer | Bernard B. Beal | Sally Hernandez-Pinero | Joan Spence | President |
| | Daniel T. Scannell | E. Virgil Conway | Herbert J. Libert | Edward A. Vrooman | |
| | First Vice Chairman | Warren S. Dolny | Prema Mathai-Davis | Alfred E. Werner | |
| | | Barry L. Feinstein | Neil Novesky | | |

# Memorandum

 **Metro-North Railroad**

Date    *February 21, 1995*

To    *Harry Franz*

From    *Ray Burney*

Re    **_BLE Craft Transfers_**

*During the most recent round of negotiations, the BLE raised an issue regarding the application of the wage progression protection Metro-North agreed to with various crafts in 1993. Specifically, the question was raised regarding two former train service employees, Steven Donnelly ((111440) and Robert Butcher (111159) who were qualified conductors but were working as assistant conductors just prior to transfering into the apprentice engineer program. Having transferred as a conductor would have raised them 5% in determining the closest wage step in the BLE Agreement.*

*We have agreed with the BLE that the two individuals will have their wage step modified, effective the day after full and final ratification of the BLE agreement (January 27, 1995). No retroactive adjustment before that date is allowed.*

*This resolution is not precedent setting but as a practical matter, most qualified conductors in the future will likely hold such assignments prior to transfering to engineer training to avoid this pitfall.*

*Please notify my department after the adjustment is made in these two cases.*

AJP/scc



# Brotherhood of Locomotive Engineers

**GENERAL COMMITTEE OF ADJUSTMENT**
**METRO-NORTH COMMUTER RAILROAD**
114R Skeet Club Road, Durham, CT 06422



**MICHAEL F. DOYLE**
General Chairman
Phone: 203/349-1884
Fax: 203/349-1168

CERTIFIED MAIL NO. Z 028 932 876

September 13, 1993

Mr. Raymond Burney
Director of Labor Relations
Metro-North Commuter Railroad
347 Madison Avenue
New York, NY 10017

Dear Mr. Burney,

Enclosed is a signed copy of the correspondence related to "limited seniority protection" and "wage rates" for Metro-North employees transferring from one position to another. It is understood that this agreement is an addition to any other protection we currently enjoy. If you do not concur with this please notify me in writing. If you do not respond before October 1, 1993, we will accept that this understanding does not abrogate any other agreements relating to transferring into the craft of Locomotive Engineers.

Sincerely yours,

Michael F. Doyle
General Chairman

cc:  Richard Engel - Vice General Chairman
     Ronald DeAndrus - Local Chairman, Div. 77
     Michael Lynch - Local Chairman, Div. 145
     Edward Marcink - Local Chairman, Div. 589
     John Sullivan - Local Chairman, Div. 783



HUMAN RESOURCES
LABOR RELATIONS

SEP 15 1993

METRO-NORTH

Printed in U.S.A.    AFFILIATED WITH A.F.L.-C.I.O. AND C.L.C.    *Serving Since 1863*

**7**