



# CONSTITUTION

*Instituted March 1, 2000*

(2)

# Preamble

"We, the employees of commuter railroads providing service in the public

sector, are establishing this Association in order to achieve objectives which

are paramount to our individual and collective interests, and to pursue unity of

action in all things necessary to advance our members' welfare

To this end, we do hereby ordain this Constitution"

# Members Bill of Rights

## Each member of the Association of Commuter Rail Employees shall have the right to:

- Information about what is being voted on

- A copy of the contract and all letters of understanding covering the member

- Inspect and copy any letter of understanding agreed to by the Association of Commuter Rail Employees

- Inspect minutes and financial records and obtain copies of minutes at a reasonable cost

- Fully informed about the progress of any grievance or other union action that directly affects the individual member

- Initiate Constitutional and Bylaw amendments and recall of officers

- Vote by secret ballot in all elections and binding agreements with management

# ARTICLE I
## Name and Location

This organization shall be known as The Association of Commuter Rail Employees. Its headquarters shall be located in Manhattan, New York.

# ARTICLE II
## Purpose

The Association of Commuter Rail Employees has been established to provide employees an organization that both recognizes and affords representational autonomy to distinct crafts while pursuing unity of action to achieve goals common to all.

# ARTICLE III
## Objectives

To secure full and complete rights for all employees who are eligible for membership.

To advance the economic and social well being of the membership, and to promote the improvement of conditions in the employment of the membership.

To encourage mutual understanding and support in obtaining our objectives through cooperation with our membership, the carrier and the riding public we all serve.

# ARTICLE IV
## Membership

All persons are eligible for membership who is employed by a commuter railroad.

No person shall be denied membership on the basis of sex, race, and national origin, religious or political beliefs.

No person shall be denied or excluded from our organization because of the exercise of their right to freedom of speech.

To gain membership an applicant must fill out an application for membership to the appropriate Local Division of ACRE. The applicant, when accepted, will receive a membership card, a copy of ACRE's Constitution, and be entitled to all the benefits of membership.

A member is in good standing when they are current with their dues. All members must pay dues in accordance with Local Division Bylaws.

A member shall automatically be dropped from the rolls of this organization upon being two (2) months in arrears in the payment of their dues. Reinstatement cannot begin until said member becomes current with their dues.

1

Every member shall uphold the Constitution of ACRE and their Local Division Bylaws. No member shall initiate or institute policies or actions that would be detrimental to any or all members of ACRE. Members found guilty of the above listed charges may be disciplined up to and including expulsion.

# ARTICLE V
## Government

Authority to represent member interests shall be delegated to the Local Divisions and the Executive Board, which shall constitute this Union's official governing units.

### Section 1: The Local Divisions:

Each Local Division will be chartered to represent the distinct interests and needs of each recognized craft within The Association of Commuter Rail Employees.

Each Local Division shall maintain an account large enough to cover any expenses incurred by the Local Division, including funding of the Executive Board, through a dues assessment placed on members of the Local Division under their administration in accordance with Local Division Bylaws.

Unless specifically excluded or delegated to the Executive Board, Local Divisions shall have the power to carry on all the business affairs of their respective memberships.

Each Local Division shall adopt Bylaws in addition to and in conformance with, the Constitution of the Association of Commuter Rail Employees and the Office of Labor-Management Standards of the Department of Labor.

Local Division Bylaws must be approved by the Executive Board and filed with the Executive Board Secretary/Treasurer.

Each Local Division shall have the authority to elect their own officers, establish committees and boards as necessary, establish procedures for voting, establish provisions to fill vacant offices, set their own dues structures, establish procedures for disbursing funds, set the time and place of regular monthly meetings and determine salaries of Local Division Officers and Committee members within their Bylaws.

Local Divisions shall work towards the resolution of contractual and non-contractual disputes in the workplace, maintain records of grievances and their dispositions, be responsible for the processing of grievances beyond the immediate work location, and make decisions regarding disputes to be taken to arbitration or other prescribed remedy in accordance with Local Division Bylaws.

Local Divisions shall have jurisdiction over their own financial management and be responsible for their own administration in accordance with Local Division Bylaws.

Collective Bargaining Agreements must be ratified by referendum ballot conducted among those members working under the jurisdiction of the agreement in accordance with Local Division Bylaws.

Local Division Bylaws shall establish a Board of Appeals to arbitrate disputes within Local Divisions.

Local Division Bylaws shall establish an Election Committee to conduct and supervise all elections and referenda of the Local Division.

No Local Division can be merged with another Local Division without the majority vote, held by referendum ballot, of each Local Division involved in the merger.

## Section 2: The Executive Board:

The Executive Board shall serve as the official legislative and general governing body of the organization.

The Executive Board shall be comprised of a General Chairman from each of the Local Divisions, the Executive Legislative Director, and the Executive Board Secretary/Treasurer. Only the General Chairmen shall be voting members of the Executive Board. Issues coming before the Executive Board will require unanimous consent of the voting members of the Executive Board. Any issue not receiving unanimous consent shall be considered deadlocked and will be presented to the general membership for a vote in accordance with Article VII Section 2 and Local Division Bylaws upon motion of two (2) voting members of the Executive Board.

At the first meeting of the Executive Board, the General Chairmen shall elect a Director of the Executive Board (DEB). The DEB will serve at the direction of the Executive Board and remain subject to recall by a majority vote of the Executive Board. The Director of the Executive Board shall serve a term of three (3) years. If a Director of the Executive Board is unable to complete their term or no longer holds office, the Executive Board will elect a new DEB to fill the vacancy for the duration of the term.

The Executive Board will elect an Executive Board Secretary/Treasurer (EBST), from among the incumbent Treasurers of the Local Divisions of ACRE. The Executive Board Secretary/Treasurer shall serve for a term of three (3) years.

The Executive Board will arrange for bonding of the Director of the Executive Board and the Executive Board Secretary/Treasurer from Executive Board funds. The Executive Board will also arrange for bonding of all Local Division Officers who are authorized to handle funds. The cost of bonding shall be borne by the Local Divisions.

The Executive Board will arrange for a yearly audit of the Executive Board and Local Division accounts. The cost of the audits shall be borne by the Executive Board.

The Executive Board shall meet monthly, or at the call of the Director of the Executive Board, or by a majority of it's members, for the purpose of initiating, overseeing, or revising the program of the organization and to conduct other business of the organization that is within it's authority.

The Executive Board shall maintain sufficient funds to cover all known and/or anticipated expenses incurred by the Executive Board through a per capita dues assessment placed on the members of Local Divisions under their administration. Funds collected by Local Divisions for the operation of the Executive Board will be deposited in the Executive Board account on a monthly basis.

The Executive Board shall establish and prepare an annual budget in the month prior to the beginning of the fiscal year, which shall be established by the

3

Executive Board. The Executive Board may employ sufficient personnel and such other assistance as necessary to properly conduct the business affairs of ACRE.

The Executive Board shall be empowered to make contracts and incur liabilities including the purchase of services, office space, equipment and real property, to hire persons deemed necessary for the conduct of business, and to otherwise engage in financial transactions to the extent permitted by applicable law or statute.

The Executive Board shall be responsible for providing office space for Local Divisions under the jurisdiction of ACRE.

The Executive Board shall be notified timely of election results and or appointments made by each Local Division's Election Committee for filing with the Executive Board Secretary/Treasurer.

The Executive Board shall be responsible for adherence to and enforcement of the Constitution.

The Executive Board may take any necessary action to deal with situations not covered by this Constitution to protect the interests of the members under its jurisdiction.

The Executive Board shall issue regular reports to the Trustees, make available the minutes of meetings and present an annual report to the membership of all Local Divisions.

The Executive Board shall establish a Legislative Committee that will be comprised of the Legislative Representatives of each Local Division, as established and elected in accordance with the Bylaws of the Local Divisions. The Legislative Committee shall be responsible for monitoring and proposing government legislation that may affect the membership.

The Executive Board may establish special committees as necessary.

The Executive Board shall have exclusive authority to grant Local Division Charters. As of June 1, 2000, a new Charter must have a minimum of fifty (50) members to be considered for an independent Local Division. Crafts representing less than fifty (50) members may be considered for admittance in to an existing Local Division.

Voting members of the Executive Board will receive no pay, stipends or other remuneration from the Executive Board for serving on the Executive Board. Executive Board members will be reimbursed for receipted expenses and lost wages incurred in the performance of their duties.

## Section 3: Director of the Executive Board:

The duties of the Director of the Executive Board shall be to chair meetings of the Executive Board and exercise general supervision over it's affairs and interests. The Director of the Executive Board will serve as spokesman for the Executive Board and be responsible for the enforcement of policy. The Director of the Executive Board will be authorized to co-sign financial instruments.

Unless otherwise specified, the Director of the Executive Board may only act on matters agreed to be of common interest to all Local Divisions represented and only at the direction of the Executive Board.

The Director of the Executive Board will receive no pay, stipends or other remuneration from the Executive Board for serving on the Executive Board.

4

The Director of the Executive Board will be reimbursed for receipted expenses and lost wages incurred in the performance of their duties.

## Section 4: Executive Board Secretary/Treasurer:

The Executive Board Secretary/Treasurer will receive, record and deposit all monies in the name of the Executive Board, be authorized to co-sign financial instruments, disburse funds according to the instructions of the Executive Board, and maintain a written record of the minutes of meetings. The Executive Board Secretary/Treasurer will not vote on the Executive Board.

The Executive Board Secretary/Treasurer will serve at the discretion of the Executive Board. The Executive Board Secretary/Treasurer will receive four (4) days pay per month at the highest prevailing rate represented by ACRE.

## Section 5: Executive Legislative Director:

The Executive Legislative Director will be elected by secret ballot of the members of the Legislative Committee to serve as Chairman of the Legislative Committee. If a candidate cannot be agreed upon, the Local Divisions will conduct a secret mail referendum election of the general membership handled in accordance with Article VII Section 2 and the Local Division Bylaws.

The Executive Legislative Director will have no vote on the Executive Board. The Executive Legislative Director shall handle all legislative matters referred to them by the Legislative Committee and the Executive Board.

The Executive Legislative Director will be responsible for the preparation of the Legislative quarterly reports to be distributed to the Executive Board. Compensation for the Executive Legislative Representative will be determined by the Executive Board.

## ARTICLE VI
### Officers of Local Divisions

## Section 1: Officers:

Every Local Division shall elect a General Chairman, a President, a Vice President, a Secretary/Treasurer, two (2) trustees, a three (3) member Board of Appeals and a Legislative Representative.

Local Divisions shall hold regularly scheduled elections for all union officers and committee members as required by law. Local Divisions may create additional officers and positions deemed necessary for the operation of the Local Division and as required under the Local Division Bylaws.

## Section 2: Duties
**The General Chairman shall:**

5

- Serve as the Executive Board member of the Local Division, have the authority to conduct contract negotiations with the Carrier, settle grievances pertaining to the interpretation of agreements including, but not limited to, rules, contractual agreements, working conditions, disciplines and pay rates
- The General Chairman shall furnish a yearly report describing their activities to the membership under their jurisdiction

**The President shall:**
- Be the presiding officer at all meetings of the membership and the Local Division, and shall be responsible for the ongoing administration of the Local Division
- Be a member of all standing and special Local Committees, with the exception of the Election Committee and appoint standing and special committees including the Election Committee
- Oversee and supervise all employees of the Local Division. Receive, report and respond to all correspondence of the Local Division
- Along with the Local Division Treasurer, is a financial officer of the Local Division, empowered to co-sign financial instruments and make regular and usual disbursements of Local Division funds
- Make an annual report to the Local Division membership of all activities, decisions and potential events that affect the membership of the Local Division
- Delegate the responsibilities of the office except where otherwise prohibited by the Constitution

**The Vice President shall:**
- Assume the duties of the President in the event of absence, recall, illness or death of the President
- Oversee and assist the President in the fulfillment of their duties
- Perform other duties as delegated by the President
- Co-sign financial instruments in the absence of the President

**The Secretary/ Treasurer shall:**
- Maintain the financial and non-financial files and records of their respective Local Division including a roster showing the name, address and employment status of each member of the respective Local Division
- Be custodian of the charter of the Local Division
- Record and keep accurate minutes of meetings of the membership
- Assist the President in handling correspondence of the Local Division as well as any duties delegated by the President
- Be a standing member of the Election committee, oversee it's work, and receive, certify and file it's reports
- Perform the duties of the office as required by the Labor- Management Reporting and Disclosure Act

6

- Shall be required to submit an annual copy of Form LM-2 or LM-3 to the Executive Board before April 1st of each year
- Receive, record, deposit and disburse Local Division funds as prescribed by the ACRE Constitution and Local Division Bylaws
- Issue membership cards and notes of delinquency
- Along with the Local Division President, be a financial officer of the Local Division, empowered to co-sign financial instruments and make regular and usual disbursements of Local Division funds
- Prepare and submit all financial reports as required under Federal, State and Local law as well as ACRE Constitutional requirements
- Perform the duties of the office as required by the Labor-Management Reporting and Disclosure act
- Assist the President of the Local Division as well as performing duties delegated by the President

**The Trustees shall:**

- Represent the financial interests of the members and monitor the activities of the Local Division and the Executive Board

**The Board of Appeals shall:**

- Consider and determine all appeals submitted under the provisions of this Constitution and Local Division Bylaws

**The Legislative Representative shall:**

- Coordinate and monitor Legislative efforts directed toward the enactment, enforcement and improvement of regulations and laws that concern the health, safety and general welfare of the membership

## ARTICLE VII
### Elections

**Section 1:**

To be eligible for office a member must be in good standing of the Local Division and ACRE.

All general and special elections of the Local Division must be conducted in such a manner as to insure secrecy and integrity of the ballot and maintain recommended time frames as established by and conducted in accordance with the regulations established for elections by the Office of Labor-Management Standards.

Officers of Local Division shall be elected by secret ballot. These procedures, including the posting of election notification as well as any pertinent election material shall be clearly described in the Local Division Bylaws. Vacant offices shall be filled in accordance with Local Division Bylaws.

A recall election of any Local Division Officer for unwillingness or inability to perform the duties and responsibilities of their office, or for violation of any provision in this Constitution or Local Division Bylaws, may be initiated by a petition stating

7

specific charges and signed by no less than 35% of the active membership in good standing.

The recall petition shall be presented to the acting President of the Local Division at a regular or special meeting of the membership. In the event the recall is for the current President of the Local Division, the petition shall be presented to the Vice-President of the Local Division. The President or Vice-President must present the petition to the Election Committee within five (5) days of receipt of petition.

The Election Committee shall determine the validity of the signatures on the petition and if held valid, a secret mail referendum recall vote will be held within thirty (30) days of the presentation of said petition in accordance with Article VII Section 2 of this Constitution and Local Division Bylaws. A majority vote of the members in good standing in favor of recall shall constitute recall. Vacant offices shall be filled in accordance with Local Division Bylaws.

A candidate may challenge the results of any election. Such challenge must be made within five (5) days of the posting of election results. The challenge must be presented in writing to the Local Division President or Vice-President, and must state the specific charges. The President of the Local Division, or if the election for Local Division President is challenged, the Vice-President, shall convene the Board of Appeals of the Local Division to investigate the dispute. The investigation will proceed in a timely manner not to exceed ten (10) days. The decision of the Board of Appeals will result in either a new election for the specific office challenged, or dismissal of the complaint.

In Local Divisions representing more than one (1) craft, the Local Division Election Committee will provide a separate ballot for each eligible member voting in their craft for Local Division Officers.

Upon completion of all elections, a copy of the exact return with the total number of votes cast for each candidate must be forwarded to the DEB within thirty (30) days. The Local Division Secretary will maintain all election records and materials for a minimum of one (1) year.

## Section 2:

A secret ballot will be required for all elections and referendums sent to the general membership.

# ARTICLE VIII
## Finances and Revenues

Members shall make dues payments established by Local Division Bylaws to their Local Division Treasurer for disbursement according to Local Division Bylaws. Funding for the Executive Board will be on a per capita basis from Local Division revenues in the amount of:

$20 per member per month to the General Fund

These funds will be deposited in the Executive Board's General Fund and cover expenses and other expenditures under the Executive Board's direction. Dues for Local Division expenditures will be set through Local Division Bylaws.

8

These funds will cover salaries, expenses and other expenditures of the Local Divisions.

All Association of Commuter Rail Employees dues are due and payable on or before the first day of the month for which they apply and are delinquent after the 20th day of the same month. Executive Board dues must be remitted to the Executive Board Secretary/Treasurer (EBST) by the 1st day of the next succeeding month and are delinquent 10 days thereafter.

## ARTICLE IX
### Rules of Order

Robert's Rules of Order, Revised shall govern this organization and all of its subordinate bodies in all not covered by this Constitution or the Local Division Bylaws of this organization.

## ARTICLE X
### Amendments

Any member of a Local Division may present a proposed amendment to the Constitution in writing at a Local Division meeting. The proposed amendment will be read at two (2) successive regular meetings, and voted on at the 2nd regular meeting.

If approved, by a two-thirds (2/3) majority vote of members present at the 2nd regular meeting, the proposed amendment will be sent to the Executive Board. The Executive Board will then forward it to all Local Divisions to be read at two (2) successive regular meetings, and voted on at the 2nd regular meeting. The proposed amendment must be approved by a two-thirds (2/3) majority vote of members present at the Local Divisions meeting.

If all Local Divisions approve the proposed amendment, it shall be implemented in to the Constitution.

If the proposed amendment is approved by a two-thirds (2/3) majority of all Local Divisions, but fails to receive unanimous approval, a mail referendum ballot will be sent to the general membership of the Association of Commuter Rail Employees. A two thirds (2/3) majority of the returned ballots will be required for passage and implementation of an amendment.

## ARTICLE XI
### Miscellaneous

Members of the Association of Commuter Rail Employees grant complete authority to ACRE to act in their behalf in the handling of any and all grievances against their employer.

No member or officer shall resort to the civil courts for redress of any grievance until all avenues provided by their Local Division Bylaws and this Constitution have been exhausted.

9

All Collective Bargaining Agreements will require member ratification. Ratification of Collective Bargaining Agreements will be conducted by the Local Division Election Committee through a mail referendum of the membership under the contract's jurisdiction. A majority vote of ballots cast will be required for ratification

At the first meeting of the Local Division, Local Division Bylaws will be instituted, Local Division Officers will be elected, and Local Division dues will be established by a majority vote of members in attendance.

## ARTICLE XII
### Saving Clause

The Director of the Executive Board, with approval of the Executive Board, may take such actions as may be deemed necessary to meet situations not covered in the Constitution in order to protect the interest of the membership of the Association of Commuter Rail Employees.

If any portion of this Constitution is found to be in violation of a Federal, State or Local law, such law shall supercede that portion of the Constitution, but only to the extent and within the limits of the law, and provided that any change shall not affect the validity of the remaining portions of this Constitution.

## ARTICLE XIV
### Political Action Committees

The Executive Board will have the authority to establish and manage Political Action Committees (PACs) with voluntary member contributions.

## ARTICLE XV
### Affiliations

The Executive Board may initiate proposals for affiliation with any other Labor Organization. Proposed affiliations including application to the AFL-CIO must go to the general membership for approval through a referendum vote in accordance with Article VII Section 2 and Local Division Bylaws. A two thirds (2/3) majority of ballots cast shall constitute passage of the proposed affiliation.

## ARTICLE XVI
### Authorizing Strikes

Any member of the Executive Board requesting strike authorization shall call for the Director of the Executive Board to poll the Executive Board members. Strike authorization will be granted if passed by a two thirds (2/3) majority vote of the Executive Board.

10

## INSTALLATION OATH

*Installing Officer:*

"Do you pledge to honestly and faithfully fulfill the tasks that be before you to the best of your ability within the framework of the Constitution and the Local Division Bylaws of the Association of Commuter Rail Employees"?

*Elected Officer:*

"I do"

*President or Installing Officer:*

"By the authority vested in me as _____ of Local Division _____ of the Association of Commuter Rail Employees, I now have the high honor and privilege of installing you who have been duly elected to serve as _____."

11

**8**



*Local Division 9*
*Locomotive Engineers*

# BYLAWS

**APRIL 10, 2000**
(Revised 11/16/01)

# ARTICLE I
## Name and Location

This Local Division (LD) shall be known as Association of Commuter Rail Employees (ACRE) Local Division 9. The regular meeting of ACRE Local Division 9 will be held, subject to room availability, at 11:00 A.M. on the second Monday of each month at the Vanderbilt YMCA located at 224 E. 47th St. NYC.

# ARTICLE II
## Abbreviations

The words Local Division may be eliminated and just the title used, such as; Local Division President may be referred to as President, Local Division Secretary/Treasurer may be referred to as Secretary/Treasurer, etc.

# ARTICLE III
## Amendments

Any member of the Local Division may present a proposed amendment to the Local Division 9 Bylaws in writing at a Local Division meeting.

These bylaws shall not be amended unless such changes are submitted in writing and read at two successive regular meetings and adopted by a two-thirds (2/3) majority vote of the members present at the second meeting. Any changes will then become effective immediately.

# ARTICLE IV
## Rules of Order

**SECTION 1: Quorum:**

Five (5) members in good standing shall constitute a quorum for the transaction of business

**SECTION 2: Special Meetings:**

The President may call special meetings and the purpose thereof must be stated. The President shall call a special meeting, upon receipt of written request of ten (10) members in good standing, stating the purpose for which the meeting is requested. In the absence of the President, the Vice President or Secretary/Treasurer shall call the meeting. Reasonable notice of special meetings shall be given to all members and no business shall be transacted except that for which a special meeting is called.

1

*Amended 9/18/00*

**SECTION 3: Voting Privileges of President:**

The President may speak on any subject before the Local Division but will not vote except, in case of a tie vote, the President shall cast the deciding vote, with the exception of elections.

# ARTICLE V

## Government

Local Division 9 shall elect Local Division Officers and General Committee Officers. The President, assisted by the other Local Division Officers will run the daily affairs of the Local Division. The General Chairman assisted by the Local Chairmen will run the General Committee. The Local Division Officers and General Committee Officers shall be subject to the orders of the membership.

# ARTICLE VI

## Officers of Local Division 9

**Section 1: Officers:**

The following Offices will be elected as set forth in Article VII, Constitution and Article VII of the Bylaws:

## LOCAL DIVISION OFFICERS

- President
- Vice-President
- Secretary/Treasurer
- Alternate Secretary/Treasurer
- Legislative Representative
- Alternate Legislative Representative
- Executive Board Trustees (2)
- Local Division Trustees (2)
- Board of Appeals (4)
- Alternate Member Board of Appeals (1)
- Guide

## GENERAL COMMITTEE OFFICERS

- General Chairman
- Local Chairman Grand Central Terminal
- Local Chairman Harlem Division
- Local Chairman Hudson Division
- Local Chairman New Haven Division

2

*Amended 9/18/00*

# APPOINTED OFFICERS

The President will appoint the following Officers:

- Chaplain
- Elections (3)
- Board of Relief (3)
- Mentors (3)

If any appointed officer is negligent in performing their duties as a local representative, the President may declare the office vacant and appoint a successor at any regular or special meeting.

## Section 2: Duties of Officers:

**The General Chairman shall:**

- Serve as the Executive Board member of the Local Division, have the authority to conduct contract negotiations with the Carriers, settle grievances pertaining to the interpretation of agreements including, but not limited to, rules, contractual agreements, working conditions, disciplines and pay rates
- Furnish a yearly report describing their activities to the membership
- Authorize disbursement of General Committee funds

**The Vice-General Chairman shall:**

- Be selected by the General Chairman from among the elected members of the General Committee
- Serve at the discretion of the General Chairman
- Perform the duties of the General Chairman in their absence
- Assist the General Chairman in fulfilling the responsibilities of their office

**The Local Chairman shall:**

- Assist the General Chairman and Vice-General Chairman in fulfilling the responsibilities of their office
- Act as a liaison between management and members under their jurisdiction
- Resolve claims, disputes and grievances among members

**The President shall:**

- Be the presiding officer at all meetings of the membership and the Local Division, and shall be responsible for the ongoing administration of the Local Division
- Be a member of all standing and special Local Committees, with the exception of the Election Committee and appoint standing and special committees including the Election Committee

3

*Amended 9/18/00*

- Oversee and supervise all employees of the Local Division
- Receive, report and respond to all correspondence of the Local Division
- Along with the Secretary/Treasurer, is a financial officer of the Local Division, empowered to co-sign financial instruments and make regular and usual disbursements of Local Division funds
- Prepare an annual report to the Local Division membership of all activities, decisions and potential events that affect the membership of the Local Division
- Delegate the responsibilities of the office except where otherwise prohibited by the Constitution or these Bylaws

**The Vice President shall:**
- Assume the duties of the President in the event of absence, recall, illness or death of the President
- Oversee and assist the President in the fulfillment of their duties
- Perform other duties as delegated by the President
- Co-sign financial instruments in the absence of the President

**The Secretary/Treasurer shall:**
- Maintain the financial and non-financial files and records of the Local Division including a roster showing the name, address and employment status of each member of the Local Division
- Be custodian of the charter of the Local Division
- Record and keep accurate minutes of meetings of the membership
- Assist the President in handling correspondence of the Local Division as well as any duties designated by the President
- Be a standing member of the Election Committee, oversee its work, and receive, certify and file its reports
- Perform the duties of the office as required by the Labor-Management Reporting and Disclosure Act
- Be required to submit an annual copy of Form LM-2 or LM-3 to the Executive Board before April 1st of each year
- Receive, record, deposit and disburse Local Division funds as prescribed by the ACRE Constitution and Local Division Bylaws
- Issue membership cards and notes of delinquency
- Along with the President, is a financial officer of the Local Division, empowered to co-sign financial instruments and make regular and usual disbursements of Local Division funds
- Prepare and submit all financial reports as required under Federal, State and Local laws as well as ACRE Constitutional requirements
- Assist the President as well as performing duties delegated by the President

4

*Amended 9/18/00*

**The Alternate Secretary/Treasurer shall:**

- Assume the duties of the Secretary/Treasurer in the event of absence, recall, illness or death of the Secretary/Treasurer
- Oversee and assist the Secretary/Treasurer in the fulfillment of their duties
- Perform other duties as delegated by the President and Secretary/Treasurer
- Co-sign financial instruments in the absence of the Secretary/Treasurer

**The Executive Board of Trustees shall:**

- Represent the financial interests of the members and monitor the activities of the Executive Board

**The Local Division Board of Trustees shall:**

- Represent the financial interests of the members and monitor the activities of the Local Division
- Yearly, audit all Local Division 9 books in January for the previous calendar year, and report the results thereof to the Officers of Local Division 9 and the membership at the regular monthly meeting in February

**The Board of Appeals shall:**

- Consider and determine all appeals submitted under the provisions of the ACRE Constitution and these Bylaws

**The Alternate Member Board of Appeals shall:**

- Assume the duties of a member of the Board of Appeals in the event of an absence, recall, disqualification, illness or death of a member of the Board of Appeals
- Oversee and assist the Board of Appeals in the fulfillment of its duties
- Perform other duties as delegated by the Board of Appeals

**The Legislative Representative shall:**

- Coordinate and monitor Legislative efforts directed toward the enactment, enforcement and improvement of regulations and laws that concern the health, safety and general welfare of the membership

**The Alternate Legislative Representative shall:**

- Assume the duties of the Legislative Representative in the event of absence, recall, illness or death of the Legislative Representative
- Oversee and assist the Legislative Representative in the fulfillment of their duties

5

*Amended 9/18/00*

**The Guide shall:**
- Receive and conduct candidates, introduce and assist visitors and perform such other duties as delegated by the President

# ARTICLE VII
## ELECTION PROCEDURES

### Section 1:Nominations:

To be eligible for office an active member must be in good standing. Members may accept nomination for only one elected office.

After the initial election of officers, elections shall be triennial beginning in 2003, to be effective at the first regularly scheduled meeting in January, following those elections. Nominations shall be at the regular meeting in October and ballots shall be counted at the regular meeting in December.

Members not present when nominated shall be notified by the Secretary/Treasurer within five (5) days and may either accept or reject the nomination at that time. Nominations may be submitted in writing to the Secretary/Treasurer in the form of a Nominating Petition. When nominations are made by Nominating Petitions, at least five (5) members eligible to vote shall sign the petition. The Secretary/Treasurer shall read all Nominating Petitions at the nominating meeting.

### Section 2:Elections:

Only active members may vote, except those in official positions. Members holding official positions are allowed to vote for all officers of Local Division 9 with the exception of the General Committee.

Not less than fifteen (15) days prior to the date of elections, the Secretary/Treasurer shall deliver to each member a ballot together with two (2) envelopes. The ballot and return envelopes must also be accompanied by written notice of the time, date, place and purpose of the election. The smaller envelope shall be for the purpose of containing the voted ballot and should be sealed and placed within the larger envelope for return of the ballot. The larger envelope must contain space for the member's name and return address, must have first-class postage affixed thereto, and must contain the Local Division Number and address of a post office box, which must be rented for the election by the Secretary/Treasurer. The contents of the post office box must not be accessible to any officer or member until the ballots are picked up on the date of the election. If a post office box is not available, the Local Division will determine an alternative method of receiving, securing and delivery of the ballots.

Immediately prior to the election and following the date designated for the return of the ballots, the Secretary/Treasurer and President, or another member designated by the President, shall go to the post office and remove the envelopes containing the ballots from the post office box. They shall then be delivered intact to the meeting at which the election will be held.

*Amended 9/18/00*

It will be the privilege of any member of the Local Division, upon proper application to these officers, to accompany the Secretary/Treasurer and President (or their designated representative) to the post office for the purpose of observing this procedure.

When the election begins, the envelopes containing the smaller ballot envelopes will be opened by the Election Committee, at which time determination will be made as to the right of each member to vote on the various officers. The smaller envelopes containing the ballots may not be marked, but will be placed in stacks designating the status of the member voting the ballot.

Each candidate or representative may observe the work of the Election Committee by standing not closer than five (5) feet from the table at which the ballots are counted. These observers shall not interfere with the work of the Election Committee and must address any remarks pertaining to the counting of the ballots to the Secretary/Treasurer, who will convey such inquiries or remarks to the Election Committee. They shall be required to refrain from conversations except as herein provided.

The Election Committee shall make an exact return of the total number of votes cast for each person voted for and announce such return to the President, who shall thereupon declare the result, no unsealed ballot shall be counted unless the member voting it is present.

The candidate receiving the highest number of votes shall be declared elected. Should an equal number of votes have been cast for two (2) or more members for any office, the tie shall be decided by another election for that office, the tied members being the only candidates.

A copy of the exact return with the total number of votes cast for each candidate must be forwarded to the ACRE Executive Board.

## Section 3: Ballots:

The ballots and envelopes shall be sealed by the Election Committee and together with all other records pertaining to the election and will be held by the Secretary/Treasurer for at least one (1) year.

The ballots cannot be unsealed without first having submitted a resolution at a regular meeting at which time it must be stated why it is desired to have them opened. Said resolution will be read at two successive regular meetings and adopted by a two-thirds (2/3) majority vote of the members present at the second meeting, unless the Local Division is ordered to unseal the ballots by the ACRE Executive Board.

## Section 4: Vacancies:

In the event of a vacancy, the President will immediately appoint a member to fill the vacancy, with the exception of the General Committee, at which time the General Chairman will immediately appoint a member to fill the vacancy.

When such vacancy will be more than one (1) year from the date of the next elections, a membership vote will be required as provided for in Article VII of these Bylaws.

7

*Amended 9/18/00*

# ARTICLE VIII
## Finances and Revenues

### Section 1:Dues and Assessments:

Members receiving remuneration for any portion of a month shall be subject to full dues and assessments for that month.

Engineer Trainees, after the completion of thirty (30) days of training in the Engineers Training Program, will be allowed to join ACRE Local Division 9 and pay only Local Division dues ($42.00) until the completion of training.

Local Division 9 dues shall be eighty dollars ($80.00) per member per month to be distributed as follows:

- *$20.00 ACRE Executive Board*
- *$18.00 General Committee*
- *$42.00 Local Division*

Any motion to change the dues or assessments will be read at two successive regular meetings and voted on at the second meeting by secret ballot with a majority determination.

Payroll dues deduction will be mandatory for all Local Division members.

### Section 2:Salaries:
- General Chairman ten (10) days per month
- Local Chairmen four (4) days per month
- Secretary/Treasurer four (4) days per month
- President two (2) days per month
- Legislative Representative two (2) days per month

### Section 3:Disbursement of funds:

All Local Division funds shall be disbursed for the purpose of Local Division interests only.

Fixed monthly expenses such as, meeting hall rental, utilities and officers' salaries shall be considered as authorized each month until the Local Division takes action eliminating such authorization.

The Secretary/Treasurer shall reimburse all members for expenses incurred in the performance of their duties. No reimbursements shall be paid without receipts, cancelled checks or other supporting documentation and the authorization of President.

Any proposed expenses to be borne from Local Division funds that are not provided for in this section, shall be authorized by the President and Local Division action at a regular meeting.

8

*Amended 9/18/00*

## ARTIC]

### Charges ar        ls

A member of Local Division 9 may b(        )pended, removed from office, or expelled from the organization in the follow    g manner; Charges shall clearly specify the alleged offense(s) together with the article(s) of the Constitution and or those portions of these Bylaws, which it is alleged have been violated. Charges must be signed by the party preferring them and forwarded by certified mail to the Secretary/Treasurer.

A Local Division or General Committee Officer against whom charges have been preferred shall continue in office while under charges.

Local Division 9 will consider the charges at its first regular meeting following receipt by the Secretary/Treasurer unless charges are found to be completely lacking in substance or merit the Local Division will accept the charges and authorize a trial.

The members present at this meeting shall elect a Trial Board consisting of five (5) members of the Local Division. The Trial Board shall elect from its members a Chairman and a Secretary and proceed to try the case. Within three (3) days of their first meeting the Secretary of the Trial Board shall send to the accused by certified mail a copy of the charges and notice of the date, time, and place of trial. The date selected for the trial must permit not less than fifteen (15) days' advance notice to all parties involved in the trial. The trial shall be held within thirty (30) days from the meeting at which the charges were presented.

The Secretary of the Trial Board shall send by certified mail the same information relative to the trial to the party preferring the charges along with instructions to attend the trial for the purpose of submitting evidence and testimony in support of the charges.

The majority of the Trial Board shall constitute a quorum. In the absence of a quorum, no trial shall be held and the Trial Board will report the circumstances to the Local Division at its next meeting. If the Local Division elects to continue the trial, the Chairman of the Trial Board will then set another date for the trial and notify all parties involved of the time, place, and date of the rescheduled trial, which shall be held within thirty (30) days.

No member of a Trial Board shall be directly or indirectly involved as a party, witness, or otherwise in the conduct-giving rise to the charges preferred against the accused. In the event any of the members of a Trial Board are so involved they shall be disqualified to sit and the Local Division shall elect a substitute member.

The accused shall have the privilege of designating any party, except a party involved in the charges or proceedings, to act, as their representative or counsel in the trial proceedings.

*Amended 9/18/00*

The party preferring the charges shall act as prosecutor in the case either in person or through their counsel or representative. The prosecutor in the trial shall deliver to the Trial Board a list of the names of witnesses that they intend to call in support of the charges. The person prosecuting the case or their representative shall furnish a copy of this list to the accused.

For good cause any party may request a postponement of the date set for trial. Such request shall be addressed to the Chairman of the Trial Board and shall be subject to approval or rejection within the discretion of the members of the Trial Board. Such postponement shall not exceed thirty (30) days.

The Trial Board shall arrange for a transcript of the trial proceedings. A copy of the transcript shall be furnished to both parties in the case without cost. Both parties to the trial shall be given full opportunity to present any witnesses and all relevant evidence and exhibits which they deem necessary to a proper presentation of their case and shall be entitled to cross-examine witnesses of the other party.

Before giving testimony, any witnesses who are members of the Association of Commuter Rail Employees shall be required to make the following affirmation:

*"Do you solemnly affirm upon your honor as a member of the Association of Commuter Rail Employees that the evidence to be given by you in this case shall be the truth and nothing but the truth?"*

All persons shall be excluded from trial sessions except the members of the Trial Board, parties to the trial and their counsel or representatives, the witness who is testifying, and the reporter or person transcribing the testimony.

After all evidence has been presented and arguments made by all parties or their counsel, the Trial Board shall conclude the trial and, as soon as practicable, assemble in executive session for consideration of its decision.

The Trial Board shall render its decision in writing within fifteen (15) days following the date upon which the trial was concluded. If the accused is found guilty, the Trial Board shall fix the penalty to be assessed, which can be removal from office, suspension, expulsion from membership, reprimand or censure. Such decision shall contain a statement of the pertinent facts involved, the violations charged, and the penalty to be imposed if the verdict is one of guilt. Such decision and penalty shall be final and binding unless reversed or modified upon appeal as provided in Article X of these Bylaws.

The Trial Board shall forward copies of its decision by certified mail to the accused and the party preferring the charges. Copies shall also be mailed to the President, Secretary/Treasurer and the Executive Board.

If suspension, removal from office and/or expulsion from membership is the penalty, such suspension, removal and/or expulsion shall become effective on the date the Trial Board's decision is delivered to the accused by certified mail.

*Amended 9/18/00*

# ARTICLE X
## Appeals

A member of Local Division 9 may appeal any action or decision of the General Chairman (GC), Local Chairman (LC) or any Local Division Officer, provided the appeal is filed within sixty (60) days from the date the action or decision occurred. Such appeals shall be filed with the Secretary/Treasurer.

If a majority of members of the Board of Appeals finds that any member should not hear an appeal, the Alternate Member will substitute.

In all appeals as provided herein the party whose action or decision is being appealed shall be allowed sixty (60) days from the date the appeal is filed to reply to the appeal.

All appeals must be in writing, contain the pertinent facts involved, and set forth the basis of the appeal. The parties involved in an appeal shall exchange copies of the appeal and the reply thereto, and all related correspondence. Copies of decisions involving appeals will be furnished to all interested parties.

Any decisions of the Board of Appeals to overturn an action(s) or decision(s) must be by unanimous consent and will be final and binding.

# ARTICLE XI
## Membership

Any individual seeking membership must submit a completed application to the Secretary/Treasurer. Upon receipt of the application, the President shall instruct the Membership Committee to investigate the character and past standing of applicant. All applications must be read off at a regular meeting and voted on at the next regular meeting. If for any reason the membership committee finds fault or erroneous information provided on the application, the President must be notified before election.

Method of Voting:

**President-** "We are now prepared to hear the application of

_____

(Name of new applicant)

to become a member of ACRE Local Division 9."

A motion must be made, seconded and accepted by two-thirds (2/3) majority of members in attendance

The membership committee will then be instructed by the President to investigate the prospective applicant.

11

*Amended 9/18/00*

At the next regular meeting, the President shall ask for the report of the Membership Committee in regards to the prospective applicant. Barring any problems or unforeseen circumstances, the members shall vote on the applicant.

"We are now prepared to hear the application of

_____

(Name of new applicant)
to become a member of ACRE Local Division 9.
The Membership Committee shall now give its report."

Subsequent to the report of the Membership Committee, a vote shall be taken to accept the application. A motion must be made, seconded and accepted by two-thirds (2/3) majority of members in attendance.

12

*Amended 9/18/00*

## SUMMARY OF ACRE DIVISION 9 OFFICERS SALARIES & EXPENSES FOR 2004

neral Chairman                     10 days per month - $30,672 per year
cal Chairman (4 positions)          4 days per month - $12,269 per year
cretary / Treasurer                 4 days per month - $12,269 per year
esident                             2 days per month - $ 6,135 per year
gislative Representative            2 days per month - $ 6,135 per year

## ACTUAL SALARIES & EXPENSES FOR 2004

ke Doyle - General Chairman        Salary - $44,016    Expenses $4,931 - Total compensation $48,947
                                   (plus company salary) Exceeded approved salary by $18,275

n DeAndrus - Local Chairman        Salary - $20,180    Expenses $8,700 - Total compensation $28,880
                                   Exceeded approved salary by $16,611

ck Gunderman - Local Chairman      Salary - $18,984    Expenses $6,075 - Total compensation $25,059
                                   Exceeded approved salary by $12,790

m Cooper - Local Chairman          Salary - $16,049    Expenses $3,111 - Total compensation $19,160
                                   Exceeded approved salary by $6,891

n Potthast - Local Chairman        Salary - $17,555    Expenses $3,891 - Total compensation $21,446
                                   Exceeded approved salary by $9,177

ke McCarthy - President            Salary - $11,016    Expenses $128  - Total compensation $11,144
                                   Exceeded approved salary by $5,009

 Lindenburg - Secretary / Treasurer Salary - $16,222   Expenses $444 - Total compensation $16,666
                                   Exceeded approved salary by $4,397

n Gaines - Leg. Representative     Salary - $8,317     Exceeded approved salary by $2,202

te: ACRE Division 9 officers exceeded the Lodge approved salary structure by a combined total of $75,352. Mike
yle received the majority of his compensation from the MTA – no lost earnings yet managed to exceed the Lodge
roved salary by $18,275.

n DeAndrus marked off "Company Business" an average of 2 or 3 times a week – no lost earnings" yet exceeded his
dge approved salary by $16,611.

 members of Division 9, burdened with an immense overpayment of officers salaries, were the recipients of an $8
 month dues increase in late 2004. This increase was necessary to ensure that Division 9 officers would continue to
 overpaid in the manner that they have become accustomed.

**ion Business reimbursement to MTA:** Beginning in 2004, after the contract ratification, ACRE officers are
 mpensated by Metro North for lost earnings due to "union business" mark offs. This agreement was signed by ACRE
 hout notifying the members. ACRE is required to reimburse the MTA for all costs associated with this practice
 es).

 2004, Jack Gaines and Dick Gunderman probably averaged at least 1 union business mark off per week. Other
 ision 9 officers marked off union business, but not with the same frequency. Generally, the only accepted method
 a union officer to exceed the Lodge approved salary is to incur lost earnings. ACRE officers are not currently
 olved in a lost earnings situation.

ivision 9 does not indicate **any** reimbursement to the MTA for union business expenditures in its LM '2. Division 1 d the Executive Board's LM '2's do reflect at least a portion of the reimbursement to the MTA for "union business" ark offs by officers.

ote: The ACRE Executive Board LM '2 for 2004 indicates a repayment of a $9,000 loan from Division 9 for the curity deposit in the ACRE office. Division 9's LM '2 reflects an entry of a repayment of $6,000, with a balance of ,000 from the loan due to Division 9. Where is the $3,000 difference?

ote: The ACRE Executive Board LM '2 indicates accounts receivable of $39,520. $20,960 of this amount is owed by vision 1 to the Executive Board. Before receiving Division 9's LM '2, the possibility existed that the remaining 8,560 was due to the Executive Board from Division 9. This is not indicated in Division 9's LM '2. So, what entity organization could owe the Executive Board over $18,000? Is it possible that Division 9 does owe the balance of the ecutive Board's accounts receivable?

te: Division 9 has added two entries to the 2004 LM '2 that were not included in the 2003 LM '2. From cash eipts, item #53 "From members for disbursement on their behalf", $5,550. From cash disbursements, item #72, "On alf of individual members", $5,550. These two entries cancel each other out. This $5,550 figure was carried over m the end of the Executive Board's 2003 reporting year in the 2003 LM '2 under accounts receivable. No entry is ed for an amount of $5,550 in the Division 9 LM '2 for 2003 under accounts receivable. An entry under accounts eivable appears in the Executive Board's 2004 LM '2 for the start of reporting period 2004 in the amount of $5,550. previously stated, the same sum appears in Division 9's 2004 LM '2 under the entries listed before in this note. es anyone have an idea concerning the amount of $5,550 that has floated between the Executive Board and ision 9? What is the nature and purpose of these funds?

e: ACRE Local Division 9 reported it has no PAC fund on their LM '2' filed by the organization.

e: All entries for expenditures and income have been taken from the Labor Management reports, LM '2's, filed by RE with the U.S. Department of Labor. This report filed by Division 9 was supposed to be filed by 3/31/05. It was ived by the D.O.L. on 7/21/05.

# Bottalico Removed From MTA Board

The Association of Commuter Rail Employees, General Chairman, Tony Bottalico was removed from the MTA Board. Tony no longer holds labor's seat on the MTA Board. The position was filled by Mr. Norman Brown from the International Association of Machinists and Aerospace Workers. Norman brings an extensive list of qualifications and union experience to this position. The N.Y. State Senate confirmed his nomination. Congratulations to Norman Brown. The labor community looks forward to having Norman, his experience and valuable input servicing labor's agenda on the MTA Board.

This is a departure from the MTA dominated association officer who previously held labor's seat.

## SUMMARY OF ACRE DIVISION 9 OFFICERS SALARIES & EXPENSES FOR 2004

General Chairman
Local Chairman (4 positions)
Secretary / Treasurer
President
Legislative Representative

10 days per month - $30,672 per year
4 days per month - $12,269 per year
4 days per month - $12,269 per year
2 days per month - $ 6,135 per year
2 days per month - $ 6,135 per year

## ACTUAL SALARIES & EXPENSES FOR 2004

Mike Doyle - General Chairman
Salary - $44,016     Expenses $4,931 - Total compensation $48,947
(plus company salary) Exceeded approved salary by $18,275

Ron DeAndrus - Local Chairman
Salary - $20,180     Expenses $8,700 - Total compensation $28,880
Exceeded approved salary by $16,611

Dick Gunderman - Local Chairman
Salary - $18,984     Expenses $6,075 - Total compensation $25,059
Exceeded approved salary by $12,790

Tom Cooper - Local Chairman
Salary - $16,049     Expenses $3,111 - Total compensation $19,160
Exceeded approved salary by $6,891

John Potthast - Local Chairman
Salary - $17,555     Expenses $3,891 - Total compensation $21,446
Exceeded approved salary by $9,177

Mike McCarthy - President
Salary - $11,016     Expenses $128    - Total compensation $11,144
Exceeded approved salary by $5,009

Joe Lindenburg - Secretary / Treasurer
Salary - $16,222     Expenses $444 - Total compensation $16,666
Exceeded approved salary by $4,397

John Gaines - Leg. Representative
Salary - $8,317     Exceeded approved salary by $2,202

Note: ACRE Division 9 officers exceeded the Lodge approved salary structure by a combined total of $75,352. Mike Doyle received the majority of his compensation from the MTA – no lost earnings yet managed to exceed the Lodge approved salary by $18,275.

Ron DeAndrus marked off "Company Business" an average of 2 or 3 times a week – no lost earnings" yet exceeded his Lodge approved salary by $16,611.

The members of Division 9, burdened with an immense overpayment of officers salaries, were the recipients of an $8 per month dues increase in late 2004. This increase was necessary to ensure that Division 9 officers would continue to overpaid in the manner that they have become accustomed.

Union Business reimbursement to MTA: Beginning in 2004, after the contract ratification, ACRE officers are compensated by Metro North for lost earnings due to "union business" mark offs. This agreement was signed by ACRE without notifying the members. ACRE is required to reimburse the MTA for all costs associated with this practice (xes).

2004, Jack Gaines and Dick Gunderman probably averaged at least 1 union business mark off per week. Other Division 9 officers marked off union business, but not with the same frequency. Generally, the only accepted method a union officer to exceed the Lodge approved salary is to incur lost earnings. ACRE officers are not currently involved in a lost earnings situation.

Division 9 does not indicate **any** reimbursement to the MTA for union business expenditures in its LM '2. Division 1 and the Executive Board's LM '2's do reflect at least a portion of the reimbursement to the MTA for "union business" mark offs by officers.

Note: The ACRE Executive Board LM '2 for 2004 indicates a repayment of a $9,000 loan from Division 9 for the security deposit in the ACRE office. Division 9's LM '2 reflects an entry of a repayment of $6,000, with a balance of $3,000 from the loan due to Division 9. Where is the $3,000 difference?

Note: The ACRE Executive Board LM '2 indicates accounts receivable of $39,520. $20,960 of this amount is owed by Division 1 to the Executive Board. Before receiving Division 9's LM '2, the possibility existed that the remaining $18,560 was due to the Executive Board from Division 9. This is not indicated in Division 9's LM '2. So, what entity or organization could owe the Executive Board over $18,000? Is it possible that Division 9 does owe the balance of the Executive Board's accounts receivable?

Note: Division 9 has added two entries to the 2004 LM '2 that were not included in the 2003 LM '2. From cash receipts, item #53 "From members for disbursement on their behalf", $5,550. From cash disbursements, item #72, "On behalf of individual members", $5,550. These two entries cancel each other out. This $5,550 figure was carried over from the end of the Executive Board's 2003 reporting year in the 2003 LM '2 under accounts receivable. No entry is noted for an amount of $5,550 in the Division 9 LM '2 for 2003 under any category. An entry under accounts receivable appears in the Executive Board's 2004 LM '2 for the start of reporting period 2004 in the amount of $5,550. As previously stated, the same sum appears in Division 9's 2004 LM '2 under the entries listed before in this note. Does anyone have an idea concerning the amount of $5,550 that has floated between the Executive Board and Division 9? What is the nature and purpose of these funds?

Note: ACRE Local Division 9 reported it has no PAC fund on their LM '2' filed by the organization.

Note: All entries for expenditures and income have been taken from the Labor Management reports, LM '2's, filed by ACRE with the U.S. Department of Labor. This report filed by Division 9 was supposed to be filed by 3/31/05. It was received by the D.O.L. on 7/21/05.

Jack Gaines: The 10% Executive Legislative Director

- A new component in the LM'2's filed by ACRE with the U.S. Department of Labor is a section devoted to reporting how much time a union officer spends performing different union activities. The breakdown of Gaines' "union work" is: "Representational Activities **42%, Political Activities and Lobbying 10%**, general overhead **43%** and administration **5%**.

- The Executive Branch compensated Gaines more in 2005 than the International dues the Metro North BLE Local sent to the BLE International in 1999, the last full year of operation on this property.

- Gaines principal ACRE duties include Minister of Misinformation, attempting to justify Doyle and Bottalico's compensation package from the MTA, forwarding a juvenile response from ACRE to Senator Nick Spano's May 16, 2005 letter to MTA Chairman Peter Kalikow or taking credit for the passage for the Assault Bill in 2002 (TWU Local 100 performed the lobbying for the Bill's passage). In retrospect the 10% estimation of the time spent by Gaines on legislative issues is probably generous.

- During the Division 9 monthly meeting in 2005 Mike Doyle was asked by some members "What does Gaines do?" Doyle's response "What I tell him to do." Apparently, Doyle does not forward many requests for legislative activity.

Local 77

Report on ACRE Executive Board Finances for 2005

The Labor Management Reports (LM2's) for the ACRE Executive Board reveal an organization that is financially insecure.

At the end of the reporting year 2005, the ACRE Executive Board had a cash balance of $16,890.00, but also had outstanding liabilities totaling $18,308, for a deficit of $1,418.00.

Other than rent, the primary expenditures were compensation for officers. Jack Gaines, ACRE's Executive Legislative Director, received total compensation of $78,690.00. Gaines compensation was $29,426.00 for his salary and $49,264.00 for "disbursements for official business". Executive Board Treasurer Mark Amorello received total compensation of $50,909.00. Amorello's compensation was $21,180.00 for his salary and $29,729.00 for "disbursements for official business".

Amorello's salary structure is defined in the ACRE Constitution as "four days per month at the highest prevailing rate". This calculates out to approximately $12,637.00 per year. Amorello was overpaid $8,543.00 in salary plus expenses, bringing his total over compensation package to $38,272.00.

The Executive Legislative Director has no set salary structure in the ACRE Constitution. The ACRE Constitution was amended without the ACRE members' approval to include this provision "Compensation for the Executive Legislative Representative will be determined by the Executive Board".

The ACRE Constitution provides no salary structure for other officers or "employees".

Additional ACRE officers receiving compensation from the Executive Board include Vicki Flanagan $5,149.00, Mike Shaw $3,390.00, Paul Holland $1,977.00, Bob Felicetta $996.00, Ken Curry $750.00, Andy Steimle $675.00 and John Lee $232.00.

The Executive Board had cash receipts of $400,882.00 and total disbursements of $416,867.00 for an operating deficit of $15,985.00 for 2005.

All of this information provided was taken from the LM2's ACRE filed with the U.S. Department of Labor. LM2's are to be filed by March 31st, of each year. The Executive Board, Division 1 and Division 9 all requested an extension to June 30th. ACRE Local Division 9's reports are still not available. The entire LM2 reports for the ACRE Executive Board and Local Division 1 are available for your review at www.mtacre.com.

The officers of UTU Local Division 77

October 3, 2006

The Association of Commuter Rail Employees (ACRE) claims to support Eliot Spitzer for Governor.

When did ACRE officially alter the organizations attitude towards Eliot Spitzer's campaign for NY State Governor? Earlier this year, after Eliot Spitzer stated his platform for MTA and other public authority reform, several ACRE officers commented that ACRE members would "suffer" if Eliot Spitzer were elected Governor. These statements were made not of concern for the ACRE membership, but from fear that MTA reform would affect Bottalico and Doyle's MTA compensation package.

During the week of 9/25, Bottalico contacted some ACRE members residing in Yonkers in an attempt to convince them ACRE was going to endorse Eliot Spitzer for Governor at a function in Yonkers on 9/27, and that ACRE's endorsement would be welcomed by the Spitzer campaign. If the Spitzer campaign accepted an endorsement from ACRE, an announcement from the Spitzer campaign headquarters would have been circulated. Anyone can determine Eliot Spitzer's campaign appearances or endorse the candidate by e-mail to the Spitzer campaign website.

To fully comprehend ACRE's abrupt change of policy, events involving ACRE during the previous several weeks should be examined. On 9/14, the State Senate agreed with the N.Y. State AFL-CIO and other unions to remove Anthony Bottalico from the MTA Board. On 9/15, ACRE endorsed Jeanine Pirro, a Republican, for N.Y. State Attorney General. Jeanine Pirro's subsequent campaign troubles have been well documented. After Bottalico was notified he was losing his MTA Board position, numerous desperation offers from ACRE to retain Bottalico's MTA Board position were forwarded to the Speaker of the Senate, Joe Bruno's office. During these negotiation attempts, ACRE offered to endorse various Republican candidates for office. ACRE's offers were rejected and the N.Y. State Senate has already confirmed Bottalico's replacement.

ACRE's "support" for Eliot Spitzer is an insincere gesture. The organizations "endorsement" is transparent and desperate. Besides Jeanine Pirro, and it is probable she was unaware of ACRE's company union status, what candidate, when informed of ACRE's operation, would solicit or accept support from ACRE.

The officers of UTU Local 77