UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
JOHN L. CRUISE, JR., BRIAN CONRAD,                    :
KENNETH J. DIBBLE, MATTHEW A. EIRICH,                 :
MICHAEL KOLOGY, PETER J. KROL, EDGAR                  :
VELLOTTI,                                             :
                              Plaintiffs,             :
                                                      :
              - against -                             :
                                                      :
                                                      :    07-CV-3940
                                                      :    (Pauley, J)
                                                      :    (Pitman, MJ)
MICHAEL F. DOYLE, as General Chairman, LOCAL          :
DIVISION 9, LOCOMOTIVE ENGINEERS,                     :
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,               :
LOCAL DIVISION 9, LOCOMOTIVE ENGINEER                 :
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,               :
and MTA METRO-NORTH RAILROAD,                         :
                                                      :
                              Defendants.             :
-----------------------------------------------------------------------x

 

 

        Ira Cure, declares under the penalty of perjury.

1.      I am of counsel to the firm of Broach & Stulberg, LLP, attorneys for the above named

plaintiffs.

2.      I make this declaration in opposition to the joint motion of defendant Michael Doyle,

Chairman, Local Division 9, Locomotive Engineers, Association of Commuter Rail Employees

("ACRE"), and MTA Metro-North Railroad, ("Metro-North") to dismiss pursuant to Rule

12(b)(6) F.R.C.P.

3.      Annexed hereto as Exhibit 1 is the summons and complaint filed with the clerk of

the Court on May 21, 2007.

4.      Annexed hereto as Exhibit 2 is the Collective Bargaining Agreement between ACRE's predecessor Brotherhood of Locomotive Engineers and Metro-North for the period March 17, 1995 to December 31, 1998.

5.      Annexed hereto as Exhibit 3 is a memorandum of understanding between ACRE and Metro-North for the period July 1, 1999 to December 31, 2002. A memorandum of understanding for the periods January 1, 2003 through December 31, 2006 and for the periods January 1, 2007 through June 15, 2010 respectively are annexed to the Declaration of Vincent O'Hara at Exhibits 4 and 6

6.      Annexed hereto as Exhibit 4 are pages from "News by the ACRE" announcing that "Progression rates of pay for craft transfers were resolved by Gerard Committee".

7.      Annexed hereto as Exhibit 5 are pages 48 to 51, of a Board of Appeal hearing taken June 12, 2007. The testimony of ACRE chair Michael Doyle states that there is an agreement with Metro-North which governed the transfers of Metro-North workers from one classification to another. According to Mr. Doyle, the agreement was in effect from September 15, 1993 until May 2004.

8.      Annexed hereto as Exhibit 6 is the agreement which defendant Doyle entered into with Metro-North.

9.      Annexed hereto as Exhibit 7 is the Constitution of the Association of Commuter Rail Employees.

10.     Annexed hereto as Exhibit 8 are the Bylaws of the Association of Commuter Rail Employees Local Division 9, Locomotive Engineers.

11.     Annexed hereto as Exhibit 9 is the grievance filed by the Locomotive Engineers in November 2006. Annexed hereto as Exhibit 10 is a copy of the certified receipt.

12.     Annexed hereto as Exhibit 11 is the letter of Vincent O'Hara dated May 1, 2007.


Dated: December 3, 2007

Ira Cure

1

# United States District Court

SOUTHERN ——— **DISTRICT OF** ——— NEW YORK

JOHN L. CRUISE,JR., BRIAN CONRAD,
KENNETH DIBBLE,MATTHEW A. EIRICH,
MICHAEL KOLOGY,PETER KROL,EDGAR
VELLOTTI

    Plaintiffs,

  – against –

MICHAEL J. DOYLE, as General Chairman of
LOCAL DIVISION 9, LOCOMOTIVE ENGINEERS,
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,
LOCAL DIVISION 9, LOCOMOTIVE ENGINEER
ASSOCIATION OF COMMUTER RAIL EMPLOYEES.
and MTA METRO-NORTH RAILROAD

    Defendants.

TO: (Name and address of defendant)

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

# 07 CV 3940

*Judge Pauley*

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)



ACCEPTED ON BEHALF OF
METRO-NORTH

MAY 21 2007

*L Montonino*

an answer to the complaint which is herewith served upon you, within _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

## J. MICHAEL McMAHON

MAY 21 2007

CLERK

DATE

_Sayno_

(BY) DEPUTY CLERK

UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK

**07 CV 3940**

-----------------------------------------------------------------------x

JOHN L. CRUISE, JR., BRIAN CONRAD,
KENNETH J. DIBBLE, MATTHEW A. EIRICH,
MICHAEL KOLOGY, PETER J. KROL, EDGAR
VELLOTTI,

                              Plaintiffs,

            - against -

MICHAEL J. DOYLE, as General Chairman, LOCAL
DIVISION 9, LOCOMOTIVE ENGINEERS,
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,
LOCAL DIVISION 9, LOCOMOTIVE ENGINEER
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,
and MTA METRO-NORTH RAILROAD,

                         Defendants.

-----------------------------------------------------------------------x

**Judge Pauley**

COMPLAINT AND
DEMAND FOR JURY
TRIAL    MAY 2 1 2007

### INTRODUCTION

This is a hybrid breach of the duty of fair representation case brought pursuant to the

Railway Labor Act, 45 USC § 151 et seq. by seven Locomotive Engineers against their union

and employer. The Plaintiffs allege that their union acting in concert with their employer have

conspired to discriminate against them in their terms and conditions of employment for arbitrary

and illegal reasons.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction under the Railway Labor Act 45 USC § 151, et seq. and

pursuant to 28 USC § 1337. Because this action alleges a breach of the duty of fair

representation, it need not be submitted to an Adjustment Board pursuant to 45 USC § 153.

Venue is appropriate because all defendants reside in this district, 28 U.S.C. § 139 (a).

THE PARTIES

2.     Plaintiff John L. Cruise is employed by Defendant Metro-North Railroad ("Metro-North") as a Locomotive Engineer.  He is a member of Defendant Local Division 9, Locomotive Engineer Association of Commuter Rail Employees.  He resides at  P.O. Box 683, Dover Plains, New York 12522.

3.     Plaintiff Brian A. Conrad is employed by Defendant Metro-North Railroad ("Metro-North") as a Locomotive Engineer.  He is a member of Defendant Local Division 9, Locomotive Engineer Association of Commuter Rail Employees.  He resides at 5 North View Lane, Hopewell Junction, New York 12533.

4.     Plaintiff Kenneth J. Dibble is employed by Defendant Metro-North Railroad ("Metro-North") as a Locomotive Engineer.  He is a member of Defendant Local Division 9, Locomotive Engineer Association of Commuter Rail Employees.  He resides at 2 McCure Court, New Milford, CT 06776.

5.     Plaintiff Matthew A. Eirich is employed by Defendant Metro-North Railroad ("Metro-North") as a Locomotive Engineer.  He is a member of Defendant Local Division 9, Locomotive Engineer Association of Commuter Rail Employees.  He resides at P.O. Box 5335 Brookfield, CT 06804.

6.     Plaintiff Michael Kology is employed by Defendant Metro-North Railroad ("Metro-North") as a Locomotive Engineer.  He is a member of Defendant Local Division 9, Locomotive Engineer Association of Commuter Rail Employees.  He resides at 1500 RTE 9G, Lot #9, Hyde Park, New York 12538.

7.     Plaintiff Peter J. Krol is employed by Defendant Metro-North Railroad ("Metro-North") as a Locomotive Engineer.  He is a member of Defendant Local Division 9, Locomotive

Engineer Association of Commuter Rail Employees. He resides at 139 Fountain Street - Apt. A8, New Haven, CT 06515.

8.    Plaintiff Edgar Vellotti is employed by Defendant Metro-North Railroad ("Metro-North") as a Locomotive Engineer. He is a member of Defendant Local Division 9, Locomotive Engineer Association of Commuter Rail Employees. He resides at 1135 Hamilton Avenue, Waterbury, CT 06706.

9.    Defendant Michael Doyle is sued in his representational capacity as General Chairman Local Division 9, Locomotive Engineer, Association of Commuter Rail Employees.

10.    Local Division 9, Locomotive Engineer Associates of Commuter Rail Employees ("ACRE") is party to a collective bargaining agreement with defendant MTA Metro-North Railroad. ACRE is a representative designated by employees employed as Locomotive Engineers by Metro-North to act for said employees. ACRE's principal place of business is 420 Lexington Avenue, New York, New York.

11.    Defendant MTA Metro-North Railroad ("Metro-North") is an operating agency of the Metropolitan Transportation Authority, which provides commuter rail service. Metro-North is a "carrier" as defined by 45 USC § 151 (First). Metro-North's principal place of business is 347 Madison Avenue, New York, New York.

FACTS

12.    Defendant ACRE and Defendant Metro-North are parties to a collective bargaining agreement.

13.    Each of the Plaintiffs is employed by Defendant Metro-North in the classification of Locomotive Engineer.

14.    Each of the Plaintiffs became a Locomotive Engineer during the period 2002-2003.

15.    Each of the Plaintiffs is a member of ACRE.

16.    Each of the Plaintiffs had been employed by Metro-North in a different job classification prior to being hired as a Locomotive Engineer.

    (a)    Plaintiffs Cruise, Krol and Vellotti became part of the Locomotive Engineer Training Class dated July 28, 2003. Plaintiff Cruise's seniority date in his previous classification was November 20, 2000; Plaintiff Krol's seniority date in his previous classification was July 31, 2000; and Plaintiff Vellotti's seniority date in his previous classification was May 7, 2001.

    (b)    Plaintiffs Kology and Conrad became part of the Locomotive Engineer Training Class dated December 9, 2002.  Plaintiff Kology's seniority date in his previous classification was December 12, 1994.  Plaintiff Conrad's seniority date in his previous classification was July 6, 1998.

    (c)    Plaintiffs Dibble and Eirich became part of the Locomotive Engineer Class dated May 27, 2003.  Plaintiff Dibble's seniority date in his previous classification was February 7, 2000; Plaintiff Eirich's seniority date in his previous classification was July 17, 2000.

17.    It has been the practice of Metro-North to increase the wages of its employees upon their anniversary in their job classification.

18.    When workers are promoted into the Locomotive Engineer classification – one of the most highly skilled and paid job classifications – they would receive a new anniversary date reflecting their new status. This frequently would have the effect of delaying the annual wage increase for workers who changed job classifications for many months. Metro-North job postings set a wage progression for Locomotive Engineers.  For the class entering July 28, 2003

the job posting provided as follows:

Rate of Pay:
The full rate of pay is $31.95/hour. The wage progression scale is as follows:
70→75→80→85→90→100%.

The rate for employees transferring into this craft will be determined by the following:

1.    The employee's hourly rate of pay in the Locomotive Engineer's position will be the hourly step-rate of pay of the Locomotive Engineer position that most closely approximate the hourly step-rate of pay of the organizing position (current position).

2.    If the current position's hourly rate of pay falls between steps of the Locomotive Engineer's position, the employee will receive the higher step-rate. If the Locomotive Engineer's position has a lower maximum (100%) hourly rate of pay than the employee's current position, the highest hourly rate the employee will receive as a Locomotive Engineer is the 100% rate of the Locomotive Engineer position.

19.    In addition Metro-North provided that each Locomotive Engineer with a new seniority date. The Metro-North job posting provided:

Seniority

Once accepted into the training program, an employee of any other craft or class may continue to hold his/her seniority, subject to applicable agreements of that craft or class, upon successful completion of the training program as Locomotive Engineer, such employee must relinquish seniority in all other crafts before being placed on the Locomotive Engineer's seniority roster, represented by ACRE. Locomotive Engineers starting on the same date will be ranked on the ACRE seniority roster in the order of their company service.

20.    In September 2006, the Plaintiffs learned that a group of locomotive engineers appointed in 2004 and forward, and having less experience in the Locomotive Engineer classification than Plaintiffs were permitted to keep their original anniversary date for purposes of salary and wage increases.

21.    This change in the manner in which Metro-North provided wage increments to members of the Locomotive Engineer classification, came about as a result of surreptitious dealings

between Metro-North management and officers of ACRE. No other Locomotive Engineers who were still in the step rate process were permitted to keep their original anniversary dates.

22.    As a result of the surreptitious arrangements, members of the Class of 2004 were frequently earning more money than Plaintiffs. Plaintiffs had trained members of the Class of 2004.

23.    Plaintiffs did not learn of this change in seniority dates until September 2006.

24.    Throughout the fall of 2006, Plaintiffs contacted Defendant Doyle and other ACRE officers to protest the fact that members of the Class of 2004 were being given an enhanced benefit.

25.    Defendant Doyle repeatedly reassured the Plaintiffs that they would have their seniority date adjusted. Indeed, on several occasions, he assured individual Plaintiffs that they would receive an immediate salary adjustment and in, at least one case, Defendant Doyle promised to secure retroactive pay.

26.    In December 2006, Defendant Doyle informed Plaintiff Cruise that the issues raised by the Plaintiffs would be taken up by ACRE's General Committee.

27.    ACRE's General Committee has not contacted the Plaintiffs concerning the issue of their appropriate seniority dates or salary adjustments..

28.    Defendant Doyle and other ACRE officers have instead engaged in a pattern and practice of harassing plaintiffs including calling their families and threatening their employment, taking steps to distract plaintiffs during periods where they are operating their trains.

29.    On April 7, 2006, counsel for the Plaintiffs pursuant to Article X of the By-laws of the Association of Commuter Rail Employees, Local Division 9, Locomotive Engineers filed an appeal regarding Defendant ACRE's failure to process the Plaintiffs' grievances concerning their

appropriate seniority dates and their appropriate rates of pay.

30.    There was no official response from ACRE or its officers to this letter.

31.    Subsequently on May 1, 2007, counsel for ACRE, informed Plaintiffs' counsel that certain Plaintiffs could expect to have adjustments to their salaries accelerated.

32.    These adjustments were in fact imposed, but made without the approval or consent of the Plaintiffs, and fall far short of the adjustments Plaintiffs are entitled to.

33.    Plaintiffs in comparison to the Class of 2004, and subsequent classes continue to suffer in their terms and conditions of employment.

## AS AND FOR A FIRST CAUSE OF ACTION

34.    Plaintiffs repeat and reallege the allegations of paragraphs 1-33.

35.    Defendant ACRE in conjunction with Defendant Metro-North acted in concert to discriminate against Plaintiffs.

36.    Metro-North has violated its long-established practice of assigning seniority dates to members of the Locomotive Engineer classification, and has permitted the members of the Class of 2004 and subsequent classes to receive a benefit that was not offered to the Plaintiffs.

37.    Defendant ACRE has purposely discriminated against the Plaintiffs by assisting the members of Class of 2004 in keeping their former seniority dates and permitted the Class of 2004 and subsequent classes to receive accelerated salary increases to their detriment.

38.    Actions of Defendant ACRE were made for arbitrary and discriminatory reasons and constitute a breach of the duty of fair representation,

39.    Plaintiffs' salary progression should be accelerated in accordance with their previous classification dates, and they should be compensated for the delay in receiving the appropriate salary progression

39.    No previous application has been made for the relief requested herein.

WHEREFORE, Plaintiffs demand judgment and joint and several liability against defendants Metro-North and ACRE for:

A.    Back pay and benefit in an amount to be determined by the Court;

B.    An adjustment of their seniority dates to reflect the seniority dates of Plaintiffs' previous classification;

C.    All reasonable attorneys' fees and the cost of this action and,

D.    All such other and further relief that the Court may deem reasonable.

Dated: May 21, 2007

BROACH & STULBERG, LLP

By:_____
      Ira Cure (IC 7121)
      BROACH & STULBERG, LLP
      One Penn Plaza
      Suite 2016
      New York, New York 10119
      Tel. (212 ) 268-1000

39.    No previous application has been made for the relief requested herein.

WHEREFORE, Plaintiffs demand judgment and joint and several liability against

defendants Metro-North and ACRE for:

A.    Back pay and benefit in an amount to be determined by the Court;

B.    An adjustment of their seniority dates to reflect the seniority dates of Plaintiffs'

previous classification;

C.    All reasonable attorneys' fees and the cost of this action and,

D.    All such other and further relief that the Court may deem reasonable.

Dated: May 21, 2007

BROACH & STULBERG, LLP

By:_____
                Ira Cure (IC 7121)
                BROACH & STULBERG, LLP
                One Penn Plaza
                Suite 2016
                New York, New York 10119
                Tel. (212 ) 268-1000

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through their above-signed counsel, hereby demand, pursuant to Rule 38 (b) of

the Federal Rules of Civil Procedures, a trial by jury in the above-captioned action.

Dated: May 21, 2007

BROACH & STULBERG, LLP

By: _____

IRA CURE (IC 7121)
Attorneys for Plaintiffs
One Penn Plaza, Suite 2016
New York, New York 10119
(212) 268-1000

2

AGREEMENT BETWEEN

METRO-NORTH RAILROAD

AND

THE BROTHERHOOD OF
LOCOMOTIVE ENGINEERS

REPRESENTING

PASSENGER ENGINEERS

EFFECTIVE: JANUARY 1, 1995 – DECEMBER 31, 1998

BROTHERHOOD OF
LOCOMOTIVE ENGINEERS
TABLE OF CONTENTS

## RULE NO. – SUBJECT                                    PAGE

RULE 1 – SCOPE AND DEFINITIONS........................................1

RULE 2 – CLASSIFICATIONS AND BASIS OF PAY ...................1

RULE 3 – ENTRY RATES .....................................................3

RULE 4 – SENIORITY...........................................................4

RULE 5 – SENIORITY ROSTER ..............................................5

RULE 6 – BULLETINS AND ASSIGNMENTS ...............................5

RULE 7 – REDUCING AND INCREASING FORCES ...................9

RULE 8 – ANNULMENT OF ASSIGNMENTS.............................11

RULE 9 – GUARANTEED EXTRA BOARD ...............................12

RULE 10 – RELIEF DAY WORK ...........................................15

RULE 11 - DEADHEADING...................................................17

RULE 12 – DEFERRED STARTING TIME................................17

RULE 13 – LAYING OFF/REPORTING ...................................18

RULE 14 – CALLS .............................................................18

RULE 15 – CUTOFF UNDER HOURS OF SERVICE ................19

RULE 16 – EXPENSES AWAY FROM HOME ..........................20

RULE 17 – QUALIFYING AND EXAMINATIONS .......................20

RULE 18 – ATTENDING COURT OR CORONER'S INQUEST.....21

RULE 19 – BEREAVEMENT LEAVE .......................................22

RULE 20 – JURY DUTY.......................................................23

RULE 21 – SPECIAL BOARD OF ADJUSTMENT......................24

RULE 22 – PRESENTATION OF CLAIMS FOR COMPENSATION.......25

RULE 23 – DISCIPLINE AND INVESTIGATION .........................28

Metro-North/BLE CBA

# BROTHERHOOD OF
# LOCOMOTIVE ENGINEERS
# TABLE OF CONTENTS

## RULE NO. – SUBJECT                                          PAGE

RULE 24 – LEAVE OF ABSENCE ..........................................34

RULE 25 – COMPULSORY RETIREMENT ...............................35

RULE 26 – APPROVAL OF APPLICATION ..............................36

RULE 27 – PHYSICAL EXAMINATIONS ..................................36

RULE 28 – LOCKER FACILITIES ...........................................38

RULE 29 – VACATION ........................................................38

RULE 30 – HEALTH AND WELFARE BENEFITS .....................41

RULE 31 – UNION SHOP .....................................................43

RULE 32 – DUES DEDUCTION .............................................45

RULE 33 –  MEAL PERIOD...................................................47

RULE 34 – HOLIDAYS ........................................................48

RULE 35 – CHOICE HOLIDAY...............................................52

RULE 36 – PERSONAL LEAVE...............................................52

RULE 37 – CONFERENCES...................................................53

RULE 38 – SEVERABILITY ...................................................53

RULE 39 – ITEMIZED STATEMENT OF EARNINGS.................54

RULE 41 – STARTING TIMES ...............................................55

RULE 42 – EQUIPMENT ON ENGINES...................................56

RULE 43 – TRAINING PROGRAM .........................................56

RULE 44 – SICK LEAVE......................................................58

RULE 45 – WAGES ............................................................64

MORATORIUM ..................................................................64

# BROTHERHOOD OF
# LOCOMOTIVE ENGINEERS

## SUBJECT RULES INDEX

| SUBJECT | RULE NO. | PAGE |
|---|---|---|
| Annulment of Assignments | 8 | 11 |
| Approval of Application | 26 | 36 |
| Attending Court or Coroner's Inquest | 18 | 21 |
| Bereavement Leave. | 19 | 22 |
| Bulletins and Assignments | 6 | 5 |
| Calls | 14 | 18 |
| Choice Holiday | 35 | 52 |
| Classification and Basis of Pay | 2 | 1 |
| Compulsory Retirement | 25 | 35 |
| Conferences | 37 | 53 |
| Cut Off Under Hours of Service | 15 | 19 |
| Deadheading | 11 | 17 |
| Deferred Starting Time | 12 | 17 |
| Discipline and Investigation | 23 | 28 |
| Dues Deduction | 32 | 45 |
| Entry Rates | 3 | 3 |
| Equipment on Engines | 42 | 56 |
| Expenses Away From Home | 16 | 20 |
| Guaranteed Extra Board | 9 | 12 |
| Health and Welfare Benefits | 30 | 41 |
| Holidays | 34 | 48 |
| Itemized Statement of Earnings | 39 | 54 |
| Jury Duty | 20 | 23 |
| Laying Off/Reporting | 13 | 18 |
| Leave of Absence | 24 | 34 |
| Locker Facilities | 28 | 38 |
| Meal Period | 33 | 47 |
| Moratorium Clause | -- | 64 |
| Personal Leave | 36 | 52 |
| Physical Examinations | 27 | 36 |
| Presentation of Claims for Compensation | 22 | 25 |
| Promotion to Official Positions | 40 | 54 |
| Qualifying and Examinations | 17 | 20 |

Metro-North/BLE CBA

# BROTHERHOOD OF
# LOCOMOTIVE ENGINEERS

## SUBJECT RULES INDEX

| SUBJECT | RULE NO. | PAGE |
|---|---|---|
| Reducing and Increasing Forces | 7 | 9 |
| Relief Day Work | 10 | 15 |
| Scope and Definitions | 1 | 1 |
| Seniority | 4 | 4 |
| Seniority Roster | 5 | 5 |
| Severability | 38 | 54 |
| Sick Leave | 44 | 58 |
| Special Board of Adjustment | 21 | 24 |
| Starting Times | 41 | 55 |
| Training Program | 43 | 56 |
| Union Shop | 31 | 43 |
| Vacation | 29 | 38 |
| Wages | 45 | 64 |

| SUBJECT | | PAGE |
|---|---|---|
| Attachment "A" | Union Dues Deduction Authorization | 66 |
| Attachment "B" | Employee Deduction Authorization | 67 |
| Exhibit "A" | Joint Labor/Management Productivity Council | 68 |
| May 24, 1984 | Letter Re: BLE Rule 8 | 71 |
| September 19, 1984 | Letter of Agreement Re: Rule 44 Sick Leave | 72 |
| October 4, 1985 | Letter of Agreement Re: Deadheading Rule 11 | 75 |
| Attachment "C" | Agreed upon Highway Mileage | 77 |
| Attachment "D" | Off Track Vehicles | 78 |
| Appendix No. 1 | Cost Containment Measures | 79 |
| Appendix No. 2 | Defined Contribution Pension Plan | 80 |

# BROTHERHOOD OF
# LOCOMOTIVE ENGINEERS

## SUBJECT RULES INDEX

| SUBJECT | PAGE |
|---|---|
| December 1, 1988 Letter Re:  Release Time at Home Terminal | 81 |
| December 1, 1988 Letter Re:  Defined Contribution Pension Plan | 82 |
| December 1, 1988 Letter Re: $3.85 Meal Allowance | 83 |
| December 1, 1988 Letter Re:  Establishment of Grand Central Terminal Bunk Room Committee | 84 |
| June 21, 1989   Letter Re:  Return to Duty Medical Certificates/Rule 27 | 85 |
| November 14, 1994  Letter Re: Rule 7 | 86 |
| July 22, 1997   Letter Re: Resolution of Outstanding Issues | 87 |
| July 23, 1997   Letter Re: Movement of Equipment In and Around Certain Metro-North Maintenance Facilities | 90 |
| January 30, 1998  Letter of Agreement | 92 |
| February 25, 1998 Letter of Understanding Re: Rule 10(f) | 93 |

Metro-North/BLE CBA

## RULE 1 – SCOPE AND DEFINITIONS

a.  This Agreement will apply to the work or service of transporting passengers performed by the employees specified herein and governs the rates of pay, hours of service and working conditions of all such employees engaged in the operation of engines and any other motive power used in performing the work or services provided by Passenger Engineers and all other work generally recognized as the work of Passenger Engineers performed on main lines or branch lines, or within yard facilities, or in road, local or yard service.

It is understood that the duties and responsibilities of Passenger Engineers will not be assigned to others.  If a new type of locomotive or motive power is placed in service, Passenger Engineers will be instructed in the operation of the new type of locomotive power used to operate it.

b.  The MTA Metro-North Railroad Company (hereinafter "Metro-North") recognizes the General Committee of Adjustment of the Brotherhood of Locomotive Engineers, the assigned International Vice President, the General Chairman, and the Vice General Chairman of which are signatories hereto as bargaining representative of all Passenger Engineers employed by Metro-North.

c.  "Duly accredited representative" means the General Chairman, Local Chairman of the Brotherhood of Locomotive Engineers having jurisdiction or any elected or appointed officer of the Brotherhood of Locomotive Engineers designated by the General Chairman.

d.  "Crew Base" is a place where Passenger Engineers normally go on and off duty.

## RULE 2 – CLASSIFICATIONS AND BASIS OF PAY

a.  The rate of pay for all Passenger Engineers effective January 1, 1995, is $26.50 an hour.  The rate of pay for

Passenger Engineers effective January 1, 1996 is $27.16 an hour. The rate of pay for Passenger Engineers effective January 1, 1997 is $28.11 an hour. The rate of pay for Passenger Engineers effective January 1, 1998 is $28.67.

b. 1. Passenger Engineers will be paid for each trip or tour of duty at the straight-time rate for the first eight (8) hours on duty between the time they are required to report for duty until the time they are finally released on completion of service, and at the time and one-half rate for all time in excess of eight (8) hours on duty. Passenger Engineers may be released during the workday for a period of at least one (1) consecutive hour but not to exceed a total of four (4) consecutive hours, and will be compensated for such release time at a rate of one-half the straight-time rate. There shall be no swing time assignments on Saturdays, Sundays, or holidays, and no release time will be scheduled on assignments that are less than nine (9) hours or after 8:00 p.m. and before 6:00 a.m. The total time on duty less scheduled release time shall not be less than eight (8) hours.

Passenger Engineers paid forty (40) straight-time hours for time on duty in a work week will be paid at the time and one-half rate for all additional on duty time paid for in the work week. The number of paid hours accumulated during release time shall count towards the computation of weekly overtime for time on duty. The eight (8) hours paid at straight-time for time spent on Bereavement Leave (Rule 19), Jury Duty (Rule 20), one (1) Single Day Vacation per work week (Rule 29), Holidays (Rule 34 and 35), a Personal Leave day (Rule 36), or Guarantee Days and Hours of Service Payments, will count towards the calculation of the forty (40) hour work week requirement.

2. The term "work week" for regularly assigned and Extra List Passenger Engineers will mean a week beginning on the first day on which the assignment is bulletined to work.

3. If an employee moves off a holddown under Rule 7 to a regular job through displacement or bid, he is entitled to overtime compensation for all service performed over forty (40)

hours.    The employee is not eligible for any overtime compensation if he moves to another holddown.

c. Except as provided in Rule 14, regularly assigned Passenger Engineers, and Passenger Engineers assigned to an Extra Board will be paid a minimum of eight (8) hours for each tour of duty.

d. When pilots are required for engine service, they will come from the ranks of Passenger Engineers and will be paid the Passenger Engineer's rate of pay.

e. Except as provided in Rule 15, Passenger Engineers held at other than their home crew base will be paid for the actual time so held for the first eight (8) hours in any twenty-four (24) hour period.

f.    Employees reporting late because of interruption of service on Metro-North shall suffer no loss of pay, provided that the train used is scheduled to arrive at the crew base sufficiently in advance of their regularly scheduled reporting time.

g. Fully qualified locomotive engineers who maintain an unrestricted certification license shall receive twenty (20) minutes straight time pay with a minimum of eight dollars ($8.00) per shift worked.  Passenger Engineers will not receive a certification allowance for time not worked i.e., bereavement leave, sick leave, jury duty, holidays, personal leave, pay under the Hours of Service Law or vacation pay.   A certification allowance will be paid for guarantee days.  An Engineer who cannot exercise his/her seniority due to a medical restriction shall not be paid the allowance.

h. Employees shall be permitted once per schedule change to earn a sixth (or seventh) start after a voluntary change in assignment.

## RULE 3 – ENTRY RATES

a.  For the first twelve (12) calendar months of service,

under this Agreement, a Passenger Engineer (including an Apprentice Engineer) entering training on or after December 22, 1988 will be paid 70% of the basic hourly rate of pay for Passenger Engineers. For the second twelve (12) calendar months of service, such Passenger Engineers will be paid 75% of the basic hourly rate of pay for Passenger Engineers. For the third twelve (12) calendar months of service, such Passenger Engineers will be paid 80% of the basic hourly rate of pay for Passenger Engineers. For the fourth twelve (12) calendar months of service, such Passenger Engineers will be paid 85% of the basic hourly rate of pay. For the fifth twelve (12) calendar months of service such Passenger Engineers will be paid 90% of the basic hourly rate of pay. For the sixth twelve (12) calendar months of service and thereafter such Passenger Engineers will be paid 100% of the basic hourly rate of pay. Former engine service employees on another railroad will be given credit for their previous engine service employment.

### RULE 4 – SENIORITY

a. The Metro-North area of operations will constitute a single seniority district. The seniority ranking on Metro-North for Passenger Engineers transferring to Metro-North pursuant to Article I-III of the Implementing Agreement dated October 12, 1982, will be in accordance with the Order Selection List established pursuant to the Implementing Agreement.

b. The seniority ranking on Metro-North for Engineers on the "Supplemental Order Selection List" (engineers who bid for initial Metro-North positions, but were not awarded such a position) who later transfers to Metro-North will be in accordance with standing on the Supplemental Order Selection List. The ranking of all employees covered by this paragraph "b" will follow the ranking of all employees covered by paragraph "a".

c. Furloughed Conrail engineers who transfer to Metro-North pursuant to Article V of the Implementing Agreement will establish seniority on Metro-North as of the first

Metro-North/BLE CBA

day they perform service as Passenger Engineer for Metro-North.

d. Passenger Engineers other than those covered by paragraphs "a" and "b", who enter service in a classification covered by these work rules by transferring from another craft on Metro-North Property will establish seniority on the date they complete the Passenger Engineer Training Program, and will be placed on the roster in seniority order based on their prior Metro-North service. The ranking of all employees covered by this paragraph "c" and "d" will follow the ranking of all employees covered by paragraph "a" and "b".

RULE 5 – SENIORITY ROSTER

a. A roster showing seniority dates, promotion dates, and seniority standing will be posted in a conspicuous place at all crew bases for the information of Passenger Engineers, with copies to the General Chairman.

b. The roster will be revised and posted in April of each year and will be open to protest by the Passenger Engineer or his duly accredited representative for a period of sixty (60) calendar days from date of posting. Protests on seniority dates will be confined to names added or changes made since posting the previous rosters.

Upon an employee's presentation of proof of error, such error will be corrected. Passenger Engineers who are off on leave of absence, vacation, sickness, disability or suspension at the time the rosters are posted will be given sixty (60) calendar days from the date of their return to duty in which to protest. If no protest is made during this time, their seniority dates will be deemed correct.

RULE 6 – BULLETINS AND ASSIGNMENTS

a. New assignments, assignments subject to readvertisement, Extra Board assignments and vacancies will

be advertised every Monday. The advertising period will close 11:59 p.m. the following Wednesday, assignments will be awarded the following Friday, and will be made effective 12:01 a.m. the following Monday.

b. Vacancies caused by sickness, temporary disability, suspension or leave of absence, when it is known that the Passenger Engineer will be off for a period of thirty (30) or more days or when such Passenger Engineer will have been off duty for a period of thirty (30) days, will be advertised in accordance with paragraph "a" of this Rule.

c. For regular assigned service, the advertisement bulletin will show the crew base; reporting and relieving point; turnaround or layover point; days on which the assignment is scheduled to work; assigned reporting time; and train or crew numbers.

NOTE:    Unless otherwise agreed to by the duly accredited representative and the District Manager - Labor Relations, the reporting and the relieving point for any assignment will be the same point.

d. A Passenger Engineer who bids for and is awarded another assignment will not be permitted to bid for his former position until it has been filled and again advertised, unless the position has been materially changed. He will be permitted to exercise his seniority to his former assignment if he is displaced from the position to which he bid.

e. A Passenger Engineer who is occupying a regular assignment which is readvertised in accordance with the provisions of this Rule may elect to exercise his seniority to another assignment within forty-eight (48) hours after the effective date and time of the change causing the readvertisement. A Passenger Engineer who elects to remain on the assignment must bid for it if he desires to remain after the advertisement is closed and the assignment has been made. If he does not bid for it, and he is not assigned to any other job as the result of that advertisement, he will immediately

leave the assignment he has been holding, and will be allowed forty-eight (48) hours in which to exercise his seniority and may select any job held by a junior man, except the job he has been occupying and on which he did not bid.

f.   A Passenger Engineer returning to duty after being absent less than thirty (30) days by reason of sickness, vacation, temporary disability, suspension or leave of absence, will be permitted to exercise his seniority on an assignment advertised and filled during his absence, provided he exercises such right before he performs any service.  A Passenger Engineer absent because of a reason listed in this paragraph for a period of thirty (30) days or more, upon his return to duty, may exercise his seniority on any assignment or to an open assignment which is under advertisement on a holddown basis as specified in Rule 7(a).

g.   Regular assignments will be readvertised when any of the following permanent changes are made in such assignments:

1.   changing the crew base, layover or turnaround point;

2.   changing advertised starting time at the crew base or arrival time at the end of the assignment, one (1) hour or more;

3.   changing the assigned rest days.

4.   permanent changes to a train or trains in the assignment, including the elimination or addition of a train.

h.   Assignments will be made to Passenger Engineers in seniority order from written bids submitted to the officer of Metro-North designated in the advertisement notice prior to the close of an advertisement period.  Passenger Engineers will be given a receipt for bids submitted to the designated officer of Metro-North.

i.    When no bids are received for advertised assignments, the assignments will be filled by the junior Passenger Engineer working at the same crew base as the assignment that failed for bid.

j.    A force assignment will only be utilized to fill a vacancy on a regular assigned position when the junior employee in the crew base is holding a position on the extra list. It is understood and agreed that the "junior" employee subject to force assignment also includes an employee on any holddown (regular assignment or extra list) who is the unsuccessful bidder on that holddown.

1.    It is understood that Metro-North will not be obligated to force assign regularly assigned employees to vacant extra list positions that failed for bid.

2.    It is understood that assignments that fail for bid at East Bridgeport will be filled by force assignment as agreed to in this Rule, utilizing New Haven extra list employees or unsuccessful holddowners. The junior employee, in such a situation, is considered a regularly assigned employee for the duration of the force assignment and goes on and off duty at East Bridgeport.

k.    When an Extra Board is to be increased, the required number of Passenger Engineers may be added to the board during the advertisement and assignment period with the understanding that they are bidders for the board.

l.    A displaced Passenger Engineer is not to be considered displaced until the displacing Passenger Engineer physically covers the assignment for the first time.

m.    When regular runs are rearranged, the local representative of Metro-North and the duly accredited representative(s) having jurisdiction will arrange to meet for the purpose of grouping such runs consistent with seniority, with the understanding that Metro-North reserves the right to place a

Metro-North/BLE CBA

schedule to protect the service in effect when no agreement is reached.

n. A voluntary exercise of seniority will not entitle a Passenger Engineer to overtime except when daily overtime accrues after eight (8) hours on duty or overtime earned as a result of the "Stutz" calculation and as provided in Rule 2.h.

o. There will be at least two (2) picks and not more than three (3) per year. Assignment picks will be conducted concurrent with significant changes in train/service schedules. Not more than seven (7) months shall elapse between assignment picks.

p. Employees who are unable to work under the Hours of Service Act on the effective day of the pick will receive the normal earnings of their new assignment.

### RULE 7 – REDUCING AND INCREASING FORCES

a. In reducing forces, seniority will govern. Passenger Engineers affected by a reduction of force or abolishment of positions will be given forty-eight (48) hours advance notice. In the event that the notice of abolishment is contiguous with the affected employee's rest days, seventy-two (72) hours notice will be provided. A copy of such notice will be posted on bulletin boards, with a copy to the duly accredited representative. The Carrier will make a reasonable effort to contact the affected employee.

An employee must exercise his seniority rights against a junior employee at least three (3) hours in advance of the reporting time of that assignment.

Employees whose positions are abolished or employees who are displaced may exercise seniority to displace junior employees or to select an open position which is under advertisement ("holddown"). This holddown will be considered an "automatic" bid for that position. A displacement of an

employee on a "holddown" will similarly be considered an automatic bid by the displacing employee. If such employee is an unsuccessful bidder for that position he may, effective the Monday following the awards, holddown on another vacant position under advertisement or he may exercise displacement rights over a junior employee in the manner set forth herein. The provisions of this Agreement relating to the payment of overtime shall not apply to the service performed when moving to holddowns, nor to sixth or seventh starts that occur as a consequence of moving to holddowns.

Passenger Engineers whose positions are abolished may exercise their seniority rights to displace junior Passenger Engineers or to select an open position on a holddown basis within forty-eight (48) hours after the date of notification of abolishment. Passenger Engineers displaced may exercise their seniority in the same manner within forty-eight (48) hours of the date of notification of displacement. Passenger Engineers who are able to but fail to exercise their displacement rights within the prescribed time limit will revert to the Extra Board protecting the assignment. Passenger Engineers not possessing sufficient seniority to displace any Passenger Engineers will be placed in furlough status, or, if he transferred to Metro-North pursuant to Articles I-III of the October 12, 1982 Implementing Agreement, may return to Conrail in accordance with Article V of the Implementing Agreement.

Passenger Engineers exercising displacement rights under this Rule must meet all the qualifications required of the assignment to which they displace before being permitted to work. The Superintendent of Transportation and the General Chairman or designated representative shall agree to a qualifying schedule for Metro-North as soon as practicable.

b. Passenger Engineers will promptly notify Metro-North in writing of any change of name or address, and provide a copy to the duly accredited representative.

c. When forces are increased or vacancies occur, furloughed Passenger Engineers will be notified by certified mail

or telegram, sent to the last address given, with a copy provided to the duly accredited representative, and will be recalled to service in seniority order.   Qualified furloughed Passenger Engineers will have priority over new hires to fill vacancies in the Operating Department.

d.  Furloughed Passenger Engineers who fail to return to service within thirty (30) calendar days after being notified in accordance with paragraph "c" of this Rule will be considered as having resigned, unless they present sufficient proof to the General Chairman and Metro-North that circumstances beyond their control prevented their return.

### RULE 8 – ANNULMENT OF ASSIGNMENTS

a.  When it is known that the assignment of a regular assigned Passenger Engineer, except the Extra Board, is to be annulled for one (1) day or longer, the Passenger Engineer will be notified at least four (4) hours in advance of reporting time. When such an assignment is so annulled, the Passenger Engineer holding such an assignment may elect to remain on the assignment or to exercise his seniority to another assignment that has not been annulled.  If he elects to exercise his seniority to another assignment, he must do so within eight (8) hours following the completion of his last tour of duty prior to the effective date and time of the annulment, or when he is notified after the completion of his last tour of duty before the annulment within eight (8) hours of the notification.   The vacated assignment shall be readvertised.

b.  Advance notice before annulling assignments is not required under emergency conditions such as flood, snowstorm, hurricane, tornado, earthquake, fire, strike or derailment, provided that such conditions result in suspension of Metro-North's operation in whole or in part.  Such emergency annulments will be confined solely to those work locations directly affected by any suspension of operation.

Passenger Engineers who are affected by an emergency annulment and report for work without having been previously notified not to report, will receive two (2) hours' pay at the applicable rate of their positions. If Passenger Engineers work any portion of the day, they will be paid in accordance with Rule 2. Upon termination of the emergency conditions and restoration of the service, all positions and incumbents thereof will be restored to the status prevailing prior to the emergency.

### RULE 9 – GUARANTEED EXTRA BOARD

a. Extra Board assignments shall be for five (5) consecutive days with two (2) consecutive relief days. A Passenger Engineer assigned to an Extra Board who is available for service during the five (5) day period of his assignment or who does not lay off or miss a call during those five (5) days will be guaranteed a money equivalent of five (5) basic days pay. Metro-North will determine the location of and the number of Passenger Engineers assigned to an Extra Board.

b. Passenger Engineers assigned to an Extra Board will be called first in, first out, as registered on the Extra Board. Passenger Engineers assigned to an Extra Board must be qualified to work all assignments which the Extra Board protects.

c. Passenger Engineers assigned to an Extra Board must register on the Extra Board immediately upon release from duty at the relieving point in the crew base.

d. Passenger Engineers assigned to an Extra Board missing a call for an assignment for which they stand will be placed at the bottom of the Extra Board.

e. Passenger Engineers assigned to an Extra Board deadheading to their home crew base will not be marked up on the board until actual arrival at their relieving point in the home crew base.

Metro-North/BLE CBA

f.   Except in emergencies, Passenger Engineers assigned to an Extra Board will be called at least two (2) hours before the time required to report for service or deadhead.  If an employee is called less than two (2) hours before the reporting time of an assignment, this will be considered a short call and he need not accept the call.  If an employee does not accept a short call, he must remain available for a proper call of an assignment.

g.   Passenger Engineers assigned to an Extra Board will not be called to fill vacancies unless they have sufficient rest to complete the assignment under the Hours of Service law.

h.   Passenger Engineers assigned to an Extra Board who are not called in their turn will be paid four (4) hours and will retain their place on the Extra Board.

i.   When the Extra Board is exhausted, an assignment may be covered from the nearest Extra Board on the same line, (Hudson, Harlem or New Haven) before going to the Relief Day List which protects the assignment.  When the availability of deadhead trains make it impractical to cover an assignment from the nearest Extra Board, it may be covered from the Relief Day List which protects the assignment.  When the nearest Extra Boards on the same line are exhausted, the assignment will be covered from the Relief Day List which protects the assignment before going off the line.  The parties agree not to hold engineers in "reserve".

The "nearest crew base" is defined and limited as follows:

1.   New Haven Line

   A.   New Haven vacancy - call from Stamford

   B.   Stamford vacancy - call from New Haven

   C.   Danbury vacancy - call from Stamford

2.   Harlem Line

   A.  Brewster vacancy - call from North White Plains

   B.  North White Plains vacancy - call from G.C.T.

3.  Hudson Line

   A.  Poughkeepsie vacancy - call from Croton-Harmon

   B.  Croton-Harmon vacancy - call from G.C.T.

4.  G.C.T. vacancy - call from either Croton-Harmon, North White Plains and Stamford, depending on which line the assignment is destined for.

5.  GCT Yard vacancies - the GCT Extra List and then the GCT Relief Day List will be the proper order of call.

   j.    Each Monday, Metro-North will list the known vacation vacancies at each crew base for the following week.  Extra Board employees at the crew base may submit a vacation relief preference slip to cover such vacation assignments that are covered by the Extra Board on which the requesting employee is assigned.  The senior Extra Board employee submitting such preferences will cover the vacation assignment for the entire vacation period, assuming the rest days and all of the conditions of such assignment.    Upon completion of the Vacation Relief assignment, the employee covering that assignment will mark up on the Extra Board in accordance with this Rule and will resume the advertised work week and rest days of his Extra Board position.

   Employees who displace an Extra Board employee covering a Vacation Relief assignment must assume that assignment and cover it for the remainder of the vacation vacancy.   The displaced employee will exercise seniority in accordance with Rule 7.   When an employee who is on vacation is displaced, the Extra Board employee who is

covering the Vacation Relief assignment, if any, will mark up on the Extra Board in accordance with this Rule and will revert to the advertised work week and rest days of his Extra Board position.

k.  The provisions of this Agreement relating to the payment of overtime under Rule 2 or Rule 10 shall not apply to the service performed as a result of voluntarily moving to vacation relief assignments under Subsection j., nor to sixth or seventh starts that occur as a consequence of moving to such assignments.

## RULE 10 – RELIEF DAY WORK

a.  Regular Passenger Engineers who desire to work on the relief days of their assignments after the Guaranteed Extra Board at a location is exhausted shall so indicate in writing to the Crew Dispatcher at least forty-eight (48) hours prior to the commencement of the relief days of his assignment. There shall be a separate relief day list at any location where a Guaranteed Extra Board is established. A Passenger Engineer may work upon the Relief Day List at the location where his regular assignment starts and finishes. If there is no Relief Day List at that location, he may mark up on the Relief Day List at the nearest location where such a list is maintained. The Passenger Engineer will provide a copy of any such request to the BLE Local Chairman having jurisdiction.

b.  If two (2) or more Passenger Engineers request to mark upon a Relief Day List at the same time, seniority will establish the order of mark-up.

c.  A Passenger Engineer will be called from a Relief Day List when no Passenger Engineers on the Guaranteed Extra Board protecting the assignment are available. A Passenger Engineer called in accordance with this paragraph (c) must fulfill the assignment for which called. A Passenger Engineer, however, will not be given an assignment that will prevent him from covering his regular assignment the following day due to

lack of rest, but he will retain his relative standing on the Relief Day List.

d.  Calls from a Relief Day List shall be made in the same manner as a Guaranteed Extra Board, except that a Passenger Engineer who misses a call off a Relief Day List will be held off such list for the remainder of his rest days in that work week and then shall be marked up at the bottom of the list.

e.  Except when they are on assigned vacation or authorized to be absent from duty, Passenger Engineers who are marked up on a Relief Day List and miss two (2) successive calls shall have their names removed from the list.  They shall not be permitted to make written application again for a Relief Day List for thirty (30) days.

f.  Passenger Engineers who perform service on their regular relief days will be paid for time on duty at one and one-half times the regularly applicable rate, provided they have performed service on five (5) consecutive days prior to the inception of their relief days or, in the event of a change in assignments, provided they have performed service on five (5) consecutive days during the last work week of their former assignment.  An employee who works on his rest days after having his job abolished, or after being displaced, will be eligible for overtime if he performed service on five (5) consecutive days in the previous work week of his former assignment.  This applies regardless of whether the employee worked on the rest days of the previous work week's assignment.

A Local Chairman, as defined in Rule 1, who engages in local committee work during his work week shall be considered as having performed service during that time for purposes of this Rule.

g.  If a Passenger Engineer is compensated for reporting at the direction of Metro-North or for a holiday during the work week, such compensation will be considered a work day for purposes of being eligible for payment at the rate of time and one-half on relief days.  Passenger Engineers absent on