UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN L. CRUISE, JR., BRIAN CONRAD,
KENNETH J. DIBBLE, MATTHEW A. EIRICH,
MICHAEL KOLOGY, PETER J. KROL,
EDGAR VELLOTTI,

                Plaintiffs,

     - against -

MICHAEL J. DOYLE, as General Chairman, LOCAL
DIVISION 9, LOCOMOTIVE ENGINEERS,
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,
LOCAL DIVISION 9, LOCOMOTIVE ENGINEER
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,
and MTA METRO-NORTH RAILROAD,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07-CV-3940
(Pauley, J)
(Pitman, MJ)

 

**DEFENDANT ACRE'S MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)**

HOLM & O'HARA LLP
*Attorneys for Defendants*
*Michael F. Doyle, sued herein as*
*Michael J. Doyle, as General Chairman,*
*Local Division 9, Locomotive Engineers,*
*and Association of Commuter Rail*
*Employees*
3 West 35th Street, 9th Floor
New York, New York 10001
(212) 682-2280

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        THE LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS
        PURSUANT TO FED. R. CIV. P. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . .5

I.     PLAINTIFFS' FIRST AMENDED CAUSE OF ACTION WAS
       DISMISSED BY ORDER OF THE COURT AND IS BARRED
       BY THE STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . 5

II.    PLAINTIFF'S SECOND AMENDED CAUSE OF ACTION FAILS TO
       STATE A CLAIM FOR THE BREACH OF THE DUTY OF FAIR
       REPRESENTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       A.  PLAINTIFFS' Letter Was Not A Grievance . . . . . . . . . . . . . . . . . . . 8

       B.  ACRE Did Not Breach The Duty of Fair Representation . . . . . . . . . 10

           i.  ACRE's Actions Were Not Discriminatory . . . . . . . . . . . . . 11

          ii.  ACRE's Actions Did Not Constitute Bad Faith. . . . . . . . . . . 12

         iii.  ACRE's Actions Were Not Arbitrary. . . . . . . . . . . . . . . . . . 14

III.   PLAINTIFF'S THIRD AMENDED CAUSE OF ACTION FAILS TO
       STATE A CLAIM BECAUSE DEFENDANT ACRE DID NOT
       BREACH THE CONSTITUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TABLE OF AUTHORITIES

Pages

**U.S. SUPREME COURT CASES**

Air Line Pilots Ass'n Int'l. v. O'Neill,
499 U.S. 65 (1991)……………………………………………………………14,15

Bell Atl. Corp. v. Twombly,
___ U.S. ___, 127 S. Ct 1955 (2007)…………………………………………… 5

Del Costello v. Int'l Bhd. of Teamsters,
462 U.S. 151 (1983)…………………………………………………………… 6

Ford Motor Co. v. Huffman,
345 U.S. 330 (1953)……………………………………………………..…..12, 14, 15

Vaca v. Sipes,
386 U.S. 171 (1967)…………………………………………………….. 8, 9, 10

**U.S. CIRCUIT COURT OF APPEALS CASES**

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002)……………………………………………………2, 5

Cohen v. Flushing Hosp. & Med. Ctr.,
68 F.3d 64 (2d Cir. 1995)………………………………………………………7

Flanigan v. Int'l Bhd. of Teamsters,
942 F.2d 824 (2d Cir. 1991)……………………………………………………6

Gvozdenovic v. United Air Lines, Inc.,
933 F.2d 1100 (2d Cir. 1991)……………………………………………..…15

Haerum v. Air Line Pilots Ass'n,
892 F.2d 216 (2d Cir. 1989)……………………………………………..…..12

Legutko v. Local 816, Int'l Bhd. Of Teamsters,
853 F.2d 1046 (2d Cir. 1988)………………………………...………………7

Lewis v. Tuscan Dairy Farms, Inc.,
25 F.3d 1138 (2d Cir. 1994)………………………………...………………13

Santos v. District Council of New York City,
619 F.2d 963 (2d Cir. 1980)……………………………………………….7

Spellacy v. Airline Pilots Ass'n Int'l,
156 F.3d 120 (2d Cir. 1998)..............................................................12, 13, 14, 15

Welyczko v. U.S. Air, Inc.,
733 F.2d 239 (2d Cir. 1984)................................................................................6

**U.S. DISTRICT COURT CASES**

B.K. Solomon-Lufti v. New York City Dep't of Educ.,
2006 U.S. Dist. LEXIS 66685 (S.D.N.Y. 2006)..............................................16

D'Antonio v. MTA,
2008 U.S. Dist. 16726 (S.D.N.Y. 2008)......................................................5, 16

Harrison v. Harlem Hospital,
2007 U.S. Dist. LEXIS 71908 (S.D.N.Y. 2007)............................................. 2, 5

**FEDERAL STATUTES**

28 U.S.C. § 1337........................................................................................1

45 U.S.C. § 151 et seq.............................................................................1, 6

Labor Management Reporting Act § 301.......................................................6

National Labor Relations Act § 10(b)........................................................ 5, 6

FED. R. CIV. P. 12(b)(6) ...........................................................................1, 5

FED. R. CIV. P. 12(c) ..........................................................................1, 2, 5, 17

FED. R. CIV. P. 15(c)(2) ..............................................................................6

FED. R. CIV. P. 41(a) ..................................................................................1

## PRELIMINARY STATEMENT

Defendants Michael F. Doyle (sued herein as Michael J. Doyle), as General Chairman of the Local Division 9, Locomotive Engineers, Association of Commuter Rail Employees ("DOYLE") and Local Division 9, Locomotive Engineer Association of Commuter Rail Employees ("ACRE") (collectively "ACRE") respectfully submit this memorandum of law in support of their Motion for Judgment on the Pleadings pursuant to the Federal Rules of Civil Procedure Rule 12(c). See FED. R. CIV. P. 12(c).

Plaintiffs John L. Cruise, Jr., Brian Conrad, Kenneth J. Dibble, Matthew A. Eirich, Michael Kology, Peter J. Krol, and Edgar Vellotti (collectively "ORIGINAL PLAINTIFFS") brought this action against ACRE and METRO-NORTH pursuant to the Railway Labor Act ("R.L.A."), 45 U.S.C. § 151 et seq., by a Summons and Complaint filed on May 21, 2007. In their Complaint, the ORIGINAL PLAINTIFFS allege a hybrid breach of the duty of fair representation by ACRE and METRO-NORTH entitling them to the jurisdiction of this Court pursuant to the R.L.A., 45 U.S.C. § 151 et seq. and 28 U.S.C. § 1337. By Order of this Court granting Defendant ACRE and METRO-NORTH'S motion to dismiss pursuant to Rule 12(b)(6), the ORIGINAL PLAINTIFFS' Complaint was dismissed on January 9, 2008 as barred by the applicable statute of limitations. On January 22, 2008, the ORIGINAL PLAINTIFFS filed an Amended Complaint ("AMENDED COMPLAINT") against ACRE and METRO-NORTH alleging three (3) causes of action. By Stipulation and Court Order dated March 4, 2008, Plaintiff Kenneth Dibble voluntarily withdrew all of his claims against ACRE and METRO-NORTH pursuant to Federal Rule of Civil Procedure 41(a), leaving six (6) remaining individual Plaintiffs in this action (hereinafter "PLAINTIFFS").

Defendant ACRE is entitled to judgment in favor of ACRE pursuant to FED. R. CIV. P. 12(c) because: (1) PLAINTIFFS' First Cause of Action was previously dismissed by this Court and is time barred; (2) PLAINTIFFS' Second Cause of Action fails to state a claim for the breach of the duty of fair representation; and (3) PLAINTIFFS' Third Cause of Action fails to state a claim for a breach of the ACRE Constitution.  Therefore, Defendant ACRE now respectfully moves this Court for an order granting judgment in favor of ACRE and dismissing the AMENDED COMPLAINT in its entirety pursuant to FED. R. CIV. P. 12(c).

## STATEMENT OF FACTS

Each of the PLAINTIFFS is a member of ACRE, Local Division 9, and an employee of METRO-NORTH.  (O'Hara Declaration Exhibit A, First Amended Complaint ¶¶ 2–8.)  PLAINTIFFS' employment is governed by the Collective Bargaining Agreement between ACRE and METRO-NORTH ("CBA").  (O'Hara Decl. Exhibit B, CBA.)  (The CBA is amended by Memorandum of Understanding for the period 1/1/99 through 12/31/02, O'Hara Decl. Exhibit C, as amended by Memorandum of Understanding for the period 1/1/03 through 12/31/06, O'Hara Decl. Exhibit D, as amended by Memorandum of Understanding for the period 1/1/07 through 6/15/10, O'Hara Decl. Exhibit E) (The AMENDED COMPLAINT refers to the CBA in ¶ 12.  Therefore, the CBA is proper for consideration by this Court on Defendant's Motion for Judgment on the Pleadings.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see Harrison v. Harlem Hospital, 2007 U.S. Dist. LEXIS 71908, at *4 (S.D.N.Y. 2007).

Pursuant to the CBA, METRO-NORTH engineers received wages in a step rate progression for the first six (6) years of service.  (O'Hara Decl. Exhibit A, First Amended Complaint ¶ 18; O'Hara Decl. Exhibit B, CBA, Rule 3, at pp. 3–4.)  Rule 3 of the CBA provides that the step rate progression begins at seventy percent (70%) of the hourly rate of pay in year

one (1) and reaches one hundred percent (100%) of the hourly rate in year six (6), receiving a five-percent (5%) increase (5% of the applicable hourly rate of pay), every twelve (12) calendar months, for the first five (5) years, with a final increase of ten percent (10%) in the sixth (6th) year (from 90% to 100%).  (O'Hara Decl. Exhibit B, CBA, Rule 3, at pp. 3–4.)

When employees transfer into locomotive engine service from another craft, the employee's hourly rate of pay in engine service would be changed to the hourly step rate of pay that most closely approximates the hourly rate of pay they received in their former craft. (O'Hara Decl. Exhibit A, First Amended Complaint ¶ 18.)  Where the former craft's hourly rate of pay falls between two step rates in the step rate progression, the employee receives the next highest step rate above their former craft's hourly rate.  Id. at 18.

There are no rules in the CBA that govern how the step rate progression applies to craft transferees, nor which date will be used to begin the twelve (12) month period between each step rate wage increase.  (O'Hara Decl. Exhibit B, CBA.)  ACRE and METRO-NORTH'S custom and practice was to use the transferee's date of transfer into engine service for step rate increases under Rule 3 of the CBA.  Id. at Rule 3, at pp. 3–4.  For example, an employee hired on June 1, 2001 would receive a wage increase every twelve (12) months on June 1 of every calendar year (e.g. June 1, 2002).  If the employee transfers into engine service on April 20, 2003, the date used to begin the twelve (12) month step rate period changes from their date of hire (June 1) to their date of transfer into engine service (April 20).  If the employee did not transfer crafts, he would have received a wage increase on June 1, 2003.  However, after transferring into engine service, the employee would no longer be eligible for the increase on June 1, 2003, and would not receive an increase until his new date of transfer in engine service arrives on April 20, 2004 pursuant to Rule 3 of the CBA.  Id. at Rule 3, at pp. 3–4.

Consequently, "[t]his had the effect of frequently delaying the newly minted engineers' wage increases." (O'Hara Decl. Exhibit A, First Amended Complaint ¶ 20.)

Beginning in 2004, ACRE and METRO-NORTH changed this practice. Id. at ¶¶ 21-22. Using the prior example, after the change, the employee receives a wage increase on the anniversary of his date of hire (June 1), rather than his date of transfer into engine service (April 20) for purposes of the step rate wage progression. This change encouraged skilled workers to enter locomotive engine service and ensured that no employee would work longer than twelve (12) months without a step rate increase. This new change in practice applied prospectively to avoid the problems and costs associated with retroactive adjustments. The change began with the class of 2004 because that class had not received their first step rate increase at the time of the change in practice. See id. at ¶¶ 21-22.

Any METRO-NORTH engineer pursuing a "claim for compensation alleged to be due" must file a claim in accordance with Rule 22 of the CBA. (O'Hara Decl. Exhibit B, CBA, Rule 22, at pp. 25–28.) Rule 22 requires that a "claimant, or his representative" file a claim with a METRO-NORTH officer, by submitting two (2) timeslips, within sixty (60) days from the date of the alleged underpayment. Id. The PLAINTIFFS learned of the new practice in September and October 2006. (O'Hara Decl. Exhibit A, First Amended Complaint at ¶ 21.) Ten (10) individuals, including PLAINTIFFS, wrote a letter dated November 9, 2006 addressed to Mr. Doyle alleging discrimination and demanding retroactive pay ("PLAINTIFFS' letter"). See id. at ¶¶ 24–26. PLAINTIFFS do not allege that the letter was submitted to a METRO-NORTH officer or that any of the letter's ten (10) signatories submitted timeslips as required by Rule 22 of the CBA.

## ARGUMENT

## LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS

The standard applied to Rule 12(b)(6) motions is also used to decide a Motion for Judgment on the Pleadings under Rule 12(c). See D'Antonio v. MTA, 2008 U.S. Dist. LEXIS 16726 at *11 (S.D.N.Y. 2008) (applying Rule 12(b)(6) standard to grant in part defendant's 12(c) motion). Under Rule 12(b)(6), a complaint may be dismissed where it fails to plead sufficient facts to state a claim with "plausible grounds" for relief. Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct 1955 at 1965 (2007). Accepting all material facts in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor, the Court may consider any documents attached to the complaint, any documents alleged or referenced in the complaint, and any matters of judicial notice. See Chambers, 282 F.3d at 152-53; see also Harrison, 2007 U.S. Dist. LEXIS 71908 at *4.

## POINT I

## PLAINTIFFS' FIRST AMENDED CAUSE OF ACTION WAS DISMISSED BY ORDER OF THE COURT AND IS BARRED BY THE STATUTE OF LIMITATIONS

The PLAINTIFFS' First Amended Cause of Action alleges a hybrid breach of the duty of fair representation against ACRE and METRO-NORTH. (O'Hara Decl. Exhibit A, First Amended Complaint ¶¶ 52–58.) In September 2006, four (4) of the PLAINTIFFS learned that engineers in the class of 2004 and forward were permitted to keep their original date of hire as their anniversary date for purposes of the step-rate wage progression. The remaining two (2) PLAINTIFFS learned of this news in October 2006. See id. at ¶ 21. By letter dated November 9, 2006 to Mr. Doyle, PLAINTIFFS complained that engineers in the class of 2004 and forward were given more favorable treatment. See id. at ¶ 26.

5

The six (6) month statute of limitations applicable to Labor Management Reporting Act ("L.M.R.A.") Section 301 hybrid claims is applicable to the PLAINTIFFS' hybrid action brought pursuant to the R.L.A. See Del Costello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 171 (1983) (ruling that the National Labor Relations Act ("N.L.R.A.") § 10(b) six (6) month statute of limitations applied to hybrid § 301 claims); Welyczko v. U.S. Air, Inc., 733 F.2d 239, 240 (2d Cir. 1984) (analogizing L.M.R.A. hybrid § 301 claims to hybrid claims arising under the R.L.A.). The six (6) month period begins when "plaintiff knows or reasonably should know that the union has breached its duty of fair representation." Flanigan v. Int'l Bhd. of Teamsters, 942 F.2d 824 at 827 (2d Cir. 1991). In a hybrid action, actual or constructive knowledge of the breach is sufficient to trigger the limitations period. See id. at 828–29.

The statute of limitations began in September 2006 for four (4) of the PLAINTIFFS, and in October 2006 for the remaining two (2) PLAINTIFFS. Therefore, the PLAINTIFFS should have filed this hybrid action by March, or at the latest April 2007, to be considered timely. The AMENDED COMPLAINT was filed on May 21, 2007 and should be dismissed as barred by the statute of limitations. (O'Hara Decl. Exhibit F, Complaint.) See FED. R. CIV. P. Rule 15(c)(2) ("An amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading"). The AMENDED COMPLAINT fails to allege any new facts to cure the PLAINTIFFS' defect in timeliness of the action, and therefore, should be dismissed based on the rationale set forth in this Court's Order dated January 9, 2008 (as amended on January 11, 2008) dismissing the First Cause of Action in the original Complaint.

"In this circuit, it is well settled that 'the cause of action accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach [of the duty of fair representation] had occurred, even if some possibility of nonjudicial enforcement remained.'" Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 68 (2d Cir. 1995) quoting Santos v. District Council, 619 F.2d 963, 969 (2d Cir. 1980). The PLAINTIFFS' cause of action accrued when they knew or reasonably should have known of all material facts underlying their cause of action in September 2006, irrespective of any subsequent assurances given to PLAINTIFFS in October and November 2006. (O'Hara Decl. Exhibit A, First Amended Complaint ¶¶ 25, 30.)   In fact, PLAINTIFFS' allegations of facts occurring after November 9, 2006 (date of PLAINTIFFS' letter) reveal that ACRE'S response is unfavorable to the PLAINTIFFS and lend support to the conclusion that they became aware of all material facts in September 2006. See id. at ¶¶ 31–34, 36–42. PLAINTIFFS fail to allege any facts after November 9, 2006 which would support a contention that PLAINTIFFS believed ACRE was going to give them the relief demanded in PLAINTIFFS' letter. (O'Hara Decl. Exhibit A, First Amended Complaint ¶¶ 1–64.)

Moreover, PLAINTIFFS' failure to file a proper Rule 22 claim in accordance with the CBA precludes any equitable tolling of the statute of limitations. "A grieved employee cannot rely on a union's lack of response to informal correspondence to toll the statute of limitations when he has failed to invoke the formal grievance procedures available to him under a collective bargaining agreement." Cohen, 68 F.3d at 68 citing Legutko v. Local 816, Int'l Bhd. of Teamsters, 853 F.2d 1046, 1055 (2d Cir. 1988). Therefore, the AMENDED COMPLAINT must be dismissed as barred by the statute of limitations and the law of the case.

## POINT II

## PLAINTIFFS' SECOND AMENDED CAUSE OF ACTION FAILS TO STATE A CLAIM FOR THE BREACH OF THE DUTY OF FAIR REPRESENTATION

### A. PLAINTIFFS' Letter Was Not A Grievance

PLAINTIFFS allege that ACRE breached its duty of fair representation "by refusing to process the Plaintiffs' Grievance." (O'Hara Decl. Exhibit A, First Amended Complaint ¶ 60.) A "union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." Vaca v. Sipes, 386 U.S. 171, 191 (1967). The PLAINTIFFS' letter to Mr. Doyle was not a grievance. (O'Hara Decl. Exhibit G, ACRE Answer ¶ 26.) Since PLAINTIFFS sought and demanded wage adjustments, they were required to file a "Claim for Compensation" pursuant to Rule 22 of the CBA. (O'Hara Decl. Exhibit B, CBA, Rule 22, at pp. 25–28.)

Rule 22 of the CBA requires a claimant to present his "claim for compensation alleged to be due . . . No later than sixty (60) days from the date of the occurrence on which a claim is based . . . [and] *must submit two (2) timeslips alleging the claim* to the officer of Metro-North designated to receive timeslips." (O'Hara Decl. Exhibit B, CBA, Rule 22, at p. 25 (emphasis added).) Despite the fact that PLAINTIFFS' letter was timely written (within (60) days from their September 11, 2006 discovery that some engineers were permitted to keep their original date of hire), the PLAINTIFFS' letter otherwise fails to comply with the requirements set forth in Rule 22. It is undisputed that none of the ten (10) individual engineers who signed the PLAINTIFFS' letter submitted timeslips alleging their claim as required by Rule 22. Further, the ten (10) individual engineers mailed the PLAINTIFFS' letter to an individual not designated to receive Rule 22 claims – the ACRE General Chairman – rather than presenting the claim to the Metro-North officer who receives timeslips in accordance with Rule 22. (O'Hara Decl. Exhibit A, First Amended Complaint ¶ 26.) The PLAINTIFFS' letter was not a grievance and

8

Rule 22 cautions "[i]f not presented in the manner outlined in this paragraph, a claim will not be entertained or allowed. . . ."  (O'Hara Decl. Exhibit B, CBA, Rule 22, at p. 25.)

The *Vaca* standard finds a union in breach of their duty of fair representation if they fail to process a "*meritorious grievance*." Vaca, 386 U.S. at 191 (emphasis added).  A union's duty of fair representation arises only when presented with a grievance with merit.  Since the PLAINTIFFS' letter does not constitute a "meritorious grievance" within the meaning of *Vaca*, the union owed no duty to the PLAINTIFFS and there could be no breach of the duty of fair representation. Id. at 191.

Notwithstanding PLAINTIFFS' failure to file a proper Rule 22 claim pursuant to the CBA, ACRE acted in the absence of any duty, and reached a resolution for the ten (10) individuals that signed PLAINTIFFS' letter.  (O'Hara Decl. Exhibit A, First Amended Complaint ¶¶ 49-50.)  In December 2006, ACRE informed Plaintiff Cruise that the General Committee had considered the PLAINTIFFS' letter and that METRO-NORTH was not willing to give them the relief demanded in their letter.  Id. at ¶¶ 37, 39.  Even assuming *arguendo* that PLAINTIFFS' letter was a meritorious grievance, ACRE cannot be held to have processed PLAINTFFS' letter "in a perfunctory fashion" within the meaning of the *Vaca* standard.  See Vaca, 386 U.S. at 191.

Moreover, neither PLAINTIFFS' letter, nor the AMENDED COMPLAINT alleges a breach of the CBA.  (O'Hara Decl. Exhibit A, First Amended Complaint ¶¶ 1–64.)  PLAINTIFFS fail to allege a breach of any provision of the CBA which would form the basis for any alleged grievance.  However, assuming *arguendo* that PLAINTIFFS did allege a contractual violation of the CBA, ACRE processed and resolved the issues raised in PLAINTIFFS' letter.  (O'Hara Decl. Exhibit A, First Amended Complaint ¶¶ 49-50.)  PLAINTIFFS' "approval or

consent" to ACRE'S resolution is not required, and their dissatisfaction with the adjustments imposed is immaterial and has no legal significance on this Motion for Judgment on the Pleadings.  (O'Hara Decl. Exhibit A, First Amended Complaint ¶ 50.)

### B.  ACRE Did Not Breach The Duty of Fair Representation

PLAINTIFFS claim that ACRE and METRO-NORTH breached the duty of fair representation by treating them in a discriminatory manner resulting in employees with less seniority than PLAINTIFFS received higher wages than the PLAINTIFFS.  (O'Hara Decl. Exhibit A, First Amended Complaint ¶¶ 21–23.)  However, the CBA does not contain a provision entitling employees to receive wages based on their seniority status.  (O'Hara Decl. Exhibit B, CBA.)  A union breaches its duty of fair representation only when its conduct is "arbitrary, discriminatory, or in bad faith."  Vaca, 386 U.S. at 190.  ACRE enhanced the step rate progression system in 2004 with the purpose and intent to benefit all employees by ensuring they receive not only the appropriate step rate of pay to which they are entitled, but also to secure each employee a step rate increase within twelve (12) months.

The absence of a clear uniform linear correlation between an employee's seniority and their rate of pay is due to the language of the CBA and the inherent nature of the craft transfer process.  (O'Hara Decl. Exhibit B, CBA, Rules 3, 43, at pp. 3, 56.)  METRO-NORTH employees may change job classifications pursuant to the applicable collective bargaining agreements.  (See, e.g., id. at Rules 6-7, at pp. 5–11.)  When a METRO-NORTH employee changes crafts (e.g. a conductor becomes an engineer), the employee is often subject to corresponding changes in the scope and terms of employment because most job classifications compensate their employees at different hourly rates.  (Id. at Rules 6-7, at pp. 5–11.)

Under the current practice, an employee working in a highly paid craft, such as a conductor, would enter the step rate wage progression based on their hourly rate of pay.  A

senior conductor transferring into engine service will have his hourly rate of pay changed depending on where his former rate of pay fits into the step rate percentages of the hourly rate for locomotive engineers. (O'Hara Decl. Exhibit A, First Amended Complaint ¶ 18.) For example, if a senior conductor's hourly rate of pay falls between the eighty percent (80%) and eighty-five percent (85%) step rates for locomotive engineers, then the senior conductor becomes a first (1st) year locomotive engineer earning eighty-five percent (85%) of the hourly rate for engineers. Id. at ¶ 18. The step rate progression system is structured in this manner to encourage craft transfers and to protect transferring employees from suffering a wage loss upon craft transfer.

As highlighted by the preceding paragraph, it is possible for a senior conductor to transfer into engine service and earn more money as a first (1st) year engineer (with no prior engineer experience) than an engineer in a prior class, who worked in engine service for a longer period of time. Therefore, the PLAINTIFFS' allegations of earning less money than new transferee employees whom they "had trained" (Id. at ¶ 23) and new transferee employees "having less experience" (Id. at ¶ 21) is because of, and in full accordance with the terms of the CBA, and not a result of discriminatory treatment by ACRE and/or METRO-NORTH. (O'Hara Decl. Exhibit B, CBA, Rules 3 & 43, at pp. 3, 56.)

### i. ACRE'S Actions Were Not Discriminatory

Accepting as true "that Metro-North was improperly favoring one group of employees in the Class of 2004 and forward – to the detriment of the Plaintiffs and the other grievants," ACRE did not breach the duty of fair representation by making a prospective change. (O'Hara Decl. Exhibit A, First Amended Complaint ¶ 26.) All employees in all classes prior to 2004, like PLAINTIFFS, also did not benefit from the change in the practice because at the time of the change, in 2004, they completed or passed the first stage of the step rate wage progression.

By necessity, a union must differentiate among members in different contexts and "a showing that a union's action has disadvantaged a group of members, without more, does not establish a breach of the duty of fair representation." Haerum v. Air Line Pilots Ass'n, 892 F.2d 216, 221 (2d Cir. 1989). ACRE and METRO-NORTH'S decision to apply the change to the class of 2004 was based on the rationale that the members of the class of 2004, the year the change was effected, had not yet entered the step rate progression in their new craft of locomotive engineer. Therefore, the change could be applied to them without having to give PLAINTIFFS and prior classes retroactive pay adjustments for previous years.

This prudent decision was not a result of animus against PLAINTIFFS, but rather because PLAINTIFFS, and all classes prior to 2004, were not similarly situated to the class of 2004 with respect to the step rate progression. The AMENDED COMPLAINT underscores ACRE and METRO-NORTH'S consistent treatment of similarly situated employees by the allegation that "[n]o other Locomotive Engineers who were still in the step rate process were permitted to keep their original anniversary dates." (O'Hara Decl. Exhibit A, First Amended Complaint ¶ 22.) PLAINTIFFS cannot and do not allege that any ACRE members similarly situated to PLAINTIFFS were treated differently. Moreover, "[t]he duty of fair representation does *not* require that a union achieve absolute equality among members." Haerum, 892 F.2d at 221 (emphasis added), citing Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953).

### ii. ACRE'S Actions Did Not Constitute Bad Faith

For a union's actions to constitute "bad faith," the actions must be carried out with "improper intent, purpose or motive." See Spellacy v. Airline Pilots Ass'n Int'l, 156 F.3d 120, 126. There were inequitable results under the step rate wage progression system prior to 2004 which motivated ACRE to engage in discussions with METRO-NORTH regarding

implementing changes to the system that would eliminate delayed step rate increases. With the purpose and intent to benefit all employees by ensuring they receive not only the appropriate step rate of pay to which they are entitled, but also to secure each employee a step rate increase within twelve (12) months, ACRE enhanced the step rate progression system in 2004. METRO-NORTH and ACRE believed this change would eliminate the inequities and anomalies arising under the pre-2004 practice and allow engineers to earn more money within a shorter period of time.

PLAINTIFFS have not and cannot allege any facts to prove "fraud, dishonesty, [or] other intentionally misleading conduct." Spellacy, 156 F.3d at 126. Despite PLAINTIFFS' simple assertions that ACRE and METRO-NORTH'S actions were "surreptitious," (O'Hara Decl. Exhibit A, First Amended Complaint ¶¶ 23, 62), PLAINTIFFS do not allege any facts creating a valid claim that ACRE and METRO-NORTH engaged in secret agreements and/or misrepresentation. (O'Hara Decl. Exhibit A, First Amended Complaint ¶¶ 1–64.) The change in practice did not violate any contractual entitlement of METRO-NORTH engineers and PLAINTIFFS' discovery of the change in September 2006 did not prejudice their rights. The statute of limitations period to challenge ACRE'S actions began in September 2006 and thereafter, they hired an attorney to pursue their alleged claims against ACRE and METRO-NORTH. See "POINT I," supra, at p. 5 for discussion regarding statute of limitations. PLAINTIFFS do not allege new facts which they discovered after September 2006, showing any fraud, dishonesty or misleading conduct by ACRE or METRO-NORTH. Cf. Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138, 1143–44 (2d Cir. 1994) (holding union breached its duty of fair representation and acted in bad faith where the union entered a secret side agreement with employer that violated employee's contractual rights and where employees were misled to

believe their rights were preserved until the time to exercise their rights expired). ACRE acted honestly in the interest of its members and bargained in good faith with METRO-NORTH to ensure they received the quickest acceleration through their step rate progression to which they were entitled.

### iii. ACRE'S Actions Were Not Arbitrary

ACRE'S action regarding the change in practice was not arbitrary, but rather a reasoned decision given the facts and circumstances at the time the decision was made. ACRE and METRO-NORTH'S decision not to give retroactive adjustments for classes prior to 2004, which were still in their step rate progression, was based on cost and administrative efficiency. A union's actions will be considered arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." Air Line Pilots Ass'n Int'l. v. O'Neill, 499 U.S. 65, 67 (1991), quoting Ford, 345 U.S. at 338. Given the burden of retroactively adjusting step rate increases for all classes prior to 2004, which were still in the step rate progression, it was reasonable to make the change effective for 2004 and prospectively. Since "a union's reasoned decision to support the interest of one group of employees over the competing interests of another group does not constitute arbitrary conduct," ACRE did not breach its duty of fair representation to its members. Spellacy, 156 F.3d at 129.

Given the facts and circumstances surrounding ACRE and METRO-NORTH'S improvement to the step rate progression system, ACRE'S actions were well within a "wide range of reasonableness" and the result of circumspect, purposeful and supported rationales. See O'Neill, 499 U.S. at 67, quoting Ford, 345 U.S. at 338. The Second Circuit recognizes that "[j]udicial review of union action [ ] 'must be highly deferential, recognizing the wide latitude

that [unions] need for the effective performance of their bargaining responsibilities.'" <u>Spellacy</u>,

156 F.3d. at 126, <u>quoting Gvozdenovic v. United Air Lines, Inc.</u>, 933 F.2d 1100, 1106 (2d Cir.

1991) (citations omitted).  Accordingly, neither ACRE nor METRO-NORTH'S actions were

neither "arbitrary, discriminatory, or in bad faith" and the AMENDED COMPLAINT should be

dismissed for failure to allege ACRE'S breach of the duty of fair representation.

<u>POINT III</u>

**PLAINTIFFS' THIRD AMENDED CAUSE OF ACTION FAILS TO STATE A CLAIM
BECAUSE DEFENDANT ACRE DID NOT BREACH THE CONSTITUTION**

PLAINTIFFS allege that ACRE breached the Constitution by maintaining a

"surreptitious arrangement" with METRO-NORTH, and failing to inform the PLAINTIFFS of

union actions and of the status of their grievance.  (O'Hara Decl. Exhibit A, First Amended

Complaint ¶¶ 62–64.)  The ACRE Constitution sets forth the Members Bill of Rights, which

includes the right to "[b]e fully informed about the progress of any grievance or other union

action that directly affects the individual member."  (O'Hara Decl. Exhibit H, ACRE

Constitution, at p.1.)  Pursuant to the ACRE Constitution, PLAINTIFFS have a right to be

informed about grievances or union actions which "*directly affect[]*" them.  See <u>id.</u> at p. 1.

Notwithstanding the fact that PLAINTIFFS' letter was not a Rule 22 grievance, in

December 2006, ACRE informed PLAINTIFFS that the General Committee considered their

letter and decided that "Plaintiffs would not receive anything."  (O'Hara Decl. Exhibit A, First

Amended Complaint ¶¶ 37, 39.)  However, the 2004 change in policy *did not directly affect* the

PLAINTIFFS.  Accepting as true, PLAINTIFFS' allegation of ACRE "keeping the arrangement

secret," ACRE did not breach the Constitution, nor was there any duty to inform the unaffected

PLAINTIFFS of the new policy.  (O'Hara Decl. Exhibit A, First Amended Complaint ¶ 62.)

15

"A motion for judgment on the pleadings is appropriate where material facts are undisputed after court has considered the complaint, the answers and incorporated documents or materials, and a judgment is possible merely by considering the content of the pleadings." D'Antonio, 2008 U.S. Dist. LEXIS at *12 (internal quotations omitted), citing B.K. Solomon-Lufti v. New York City Dep't of Educ., 2006 U.S. Dist. LEXIS 66685 (S.D.N.Y. 2006) (citations omitted).  This Court should grant judgment in favor of Defendant ACRE because the PLAINTIFFS failed to plead sufficient facts to state a plausible claim for ACRE'S breach of the duty of fair representation and ACRE'S breach of the Constitution.

## CONCLUSION

For all of the foregoing reasons, Defendant ACRE respectfully requests that this motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) dismissing the AMENDED COMPLAINT be granted in its entirety, together with such other and further relief as the Court seems just and proper, including attorneys' fees for having to seek dismissal of the First Cause of Action which was previously dismissed by this Court.

Dated: New York, New York
       May 23, 2008

                                        Respectfully submitted,

                                        HOLM & O'HARA LLP
                                        *Attorneys for Defendants*
                                        *Michael F. Doyle, sued herein as Michael J.*
                                        *Doyle, as General Chairman, Local*
                                        *Division 9, Locomotive Engineers, and*
                                        *Association of Commuter Rail Employees*

                                        By: /s/ Vincent F. O'Hara
                                            Vincent F. O'Hara
                                            Marion M. Lim
                                            3 West 35th Street, 9th Floor
                                            New York, New York 10001
                                            (212) 682-2280

TO:    Louis D. Nikolaidis, Esq.
       LEWIS, CLIFTON & NIKOLAIDIS, P.C.
       *Attorneys for Plaintiffs*
       *John L. Cruise, Jr., Brian Conrad,*
       *Kenneth J. Dibble, Matthew A. Eirich,*
       *Peter J. Krol, and Edgar Vellotti*
       275 Seventh Avenue, Suite 2300
       New York, NY 10001

       Frank Rinaldi, Esq.
       RICHARD K. BERNARD,
       Vice President and General Counsel
       *Attorneys for Defendant MTA Metro-North*
       347 Madison Avenue
       New York, New York 10017
       (212) 340-2027