UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

JOHN L. CRUISE, JR., BRIAN CONRAD,
MATTHEW A. EIRICH, MICHAEL KOLOGY,
PETER J. KROL, EDGAR VELLOTTI,

                                Plaintiffs,          07-CV-3940
                                                (Pauley, J)

        -against-                          (Pitman, MJ)

MICHAEL F. DOYLE, as General Chairman, LOCAL
DIVISION 9, LOCOMOTIVE ENGINEERS,
ASSOCIATION OF COMMUTER RAIL EMPLOYEES,
LOCAL DIVISION 9, LOCOMOTIVE ENGINEER
ASSOCIATION OF COMMUTER RAIL EMPLOYEES
And MTA METRO-NORTH RAILROAD,

                                   Defendants.
_____x

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS FOR A JUDGMENT ON THE <u>PLEADINGS
DISMISSING PLAINTIFFS' AMENDED COMPLAINT</u>

                          Louie Nikolaidis, Esq.
                          LEWIS, CLIFTON & NIKOLAIDIS, P.C.
                          275 Seventh Avenue, Suite 2300
                          New York, New York 10001
                          (212) 419-1500
                          (212) 419-1510 – facsimile
                          *Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ...........................................................    ii

PRELIMINARY STATEMENT…………...............................................    1

STATEMENT OF FACTS ........................................................... .    3

ARGUMENT

       POINT ONE

       THE RULE 12(c) STANDARD….....................................................    6

       POINT TWO

       METRO-NORTH VIOLATED THE COLLECTIVE BARGAINING
       AGREEMENT AS MODIFIED BY THE 1993 SIDE LETTER
       AGREEMENT
       …………………….................................................................    6

       POINT THREE

       ACRE BREACHED ITS DUTY OF FAIR REPRESENTATION........    7

       POINT FOUR

       PLAINTIFFS' DUTY OF FAIR
       REPRESENTATION CLAIMS WERE TIMELY FILED……………..    12

       POINT FIVE

       ACRE BREACHED THE UNION'S CONSTITUTION………………..    15

       CONCLUSION ...............................................................................    16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                          <u>Page(s)</u>

*Airline Pilots Ass'n Int'l v. O'Neill,*
    499 U.S. 65 (1991)……………………………………..…………… 8

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)………………………………………………….. 11

*Bell Atl. Corp v. Twombly,*
    __ U.S. ___, 127 S.Ct. 1955 (2007)............................................................. 6

*Buttry v. Gen. Signal Corp.,*
    68 F.3d 1488 (2d Cir. 2000)………………………………………… 14

*Caputo v. Nat'l Assoc. of Letter Carriers,*
    730 F.Supp. 1221 (E.D.N.Y. 1990)……………………………………….. 11

*Clarke v. Communications Wokers of America,*
    318 F.Supp 2d 48 (E.D.N.Y. 2004)………………………………………… 11, 12

*Cohen v. Flushing Hosp. and Med. Ctr.,*
    68 F.3d 64 (2d Cir 1995)………………………………………………….. 12

*Conley v. Gibson*
    355 U.S. 41 (1957)………………………………………………….. 10

*Cooper v. Wyeth Ayerst Lederle,*
    106 F.Supp 2d 479 (S.D.N.Y. 2000)………………………………………… 13

*Cruz v. Local Union No. 3, IBEW,*
    34 F.3d 1148 (2d Cir. 1994)…………………………………………. 11

*DelCostello v. Int'l Bhd. Of Teamsters,*
    462 U.S. 151 (1983)………………………………………………….. 12

*Dutrisac v. Caterpillar Tractor Co.,*
    749 F.2d 1279 (9th Cir. 1983)………………………………………….. 11

*Eatz v. DME Unit of Local Union No. 3 of Int'l Bro. of Elec. Workers,*
    794 F.2d 29 (2d Cir. 1986)…………………………………………… 9, 10

*Gallo v. Prudential Services,*
    22 F.3d 1219 (2d Cir. 1994)……………………………………………… 10

*Ghartev v. St. John's Queens Hosp.,*
    869 F.2d 160 (2d Cir. 1989)……………………………………………………… 12

*Hernandez v. Coughlin,*
    18 F.3d 133, 136 (2d Cir.), <u>cert.</u>, <u>denied</u>, 513 U.S. 836 (1994)...................... 6, 10

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007)........................................................... 6

*James v. BLE,*
    302 F.3d 1139 (10th Cir. 2002)…………………………………………….. 15

*Kavowras v. New York Times, et al.,*
    328 F. 350 (2d Cir. 2003)…………………………………………………….. 13

*Leed Architectural Products, Inc. v. United Steelworkers of America, Local 6674,*
    916 F.2d 63 (2d Cir. 1990)............................................................ 7

*Lewis v. Tuscan Farms,*
    25 F.3d 1138 (2d Cir. 1994)……………………………………………. 8

*Marquez v. Screen Actors Guild,*
    525 U.S. 33 (1998)……………………………………………………… 8

*Rakestraw v. United Airlines,*
    981 F.2d 1524 (7th Cir. 1992)…………………………………………… 8

*Ramey v. District 141, International Association of Machinists,*
    378 F.3d 269 (2d Cir. 2004)…………………………………………….. 8

*Ruotolo v. City of New York,*
    514 F.3d 184 (2nd Cir. 2008)....................................................... 6

*Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,*
    748 F.2d 774 (2d Cir. 1984)....................................................... .. 6

*Shea v. McCarthy*
    953 F.2d 29 (2d Cir. 1992)…………………………………………….. 15

*Spellacy v. Airline Pilots Ass'n Int'l,*
    156 F.3d 120 (2d Cir. 1998)…………………………………………….. 8

*Wooddell v. IBEW, Local 71,*
    502 U.S. 93 (1991)…………………………………………………….. 15

The plaintiffs, John L. Cruise, Jr., Brian Conrad, Matthew A. Eirich, Michael Kology, Peter J. Krol, and Edgar Vellotti, submit this memorandum of law in opposition to defendants' motions to dismiss the complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The plaintiffs in this action are locomotive engineers employed by MTA Metro-North Railroad ("Metro-North"). They bring this hybrid duty of fair representation ("DFR")/breach of contract case, pursuant to the Railway Labor Act, 45 U.S.C. 151 et seq., against their union, Local Division 9, Locomotive Engineers, Association of Commuter Rail Employees ("ACRE" or "Union"), Michael F. Doyle, as General Chairman of the Union, and their employer, Metro-North. Plaintiffs allege that ACRE acted in concert with Metro-North to violate the collective bargaining agreement ("CBA") and that the Union breached its duty to fairly represent them for reasons that were arbitrary, discriminatory and in bad faith.

Plaintiffs allege two separate and distinct DFR breaches in the First Amended Complaint. First, plaintiffs allege that ACRE breached the DFR when it entered into a secret agreement with Metro-North to grant preferential treatment to those employees who transferred into the engineering craft after 2004. The second aspect of the DFR claim involves the Union's failure to pursue a contract grievance, i.e., that Metro-North breached its CBA, including the August 30, 1993 side letter agreement, by adjusting the seniority dates of some members but not adjusting the seniority dates of other members. O'Hare Dec. Ex. A, First Amended Complaint ¶ 20 (hereinafter "Compl. ¶__").

On November 9, 2006, plaintiffs filed a grievance alleging this breach of contract, but the Union did not process this grievance. Id. at ¶ 26. On December 11, 2006, Doyle announced at a Union membership meeting that the plaintiffs would not receive anything. Id. at ¶ 39. On May 21, 2007, plaintiffs filed this lawsuit – within six months of Doyle's announcement.

1

Plaintiffs also allege that ACRE breached the Union Constitution when it negotiated the secret deal, did not submit the deal to a membership referendum and did not inform plaintiffs of the status of their grievance.

Defendants moved to dismiss the complaint on the grounds that: (1) plaintiffs are time-barred by the six-month statute of limitations, and (2) plaintiffs failed to alleged sufficient facts to state a cause of action for (a) breach of the duty of fair representation, (b) breach of the ACRE Constitution, and (c) breach of the CBA between ACRE and Metro-North. None of these defenses has merit.

Because plaintiffs filed the complaint in this case on May 21, 2007, less than six months after the cause of action accrued, ACRE's motion to dismiss on statute of limitations grounds should be denied. Moreover, the facts alleged in the complaint plainly establish that ACRE breached its duty of fair representation and the Union Constitution, and Metro-North breached the CBA. Plaintiffs allege that ACRE (1) entered into a secret agreement with Metro-North to grant preferential treatment to engineers transferring into the craft after 2004 in violation of the existing CBA; (2) did not properly process the plaintiffs' grievance; and (3) violated the Union's Constitution by failing to inform plaintiffs of the status of their grievance and failing to submit the secret agreement to the membership for approval.

At a minimum, the defenses raised by ACRE on this motion – whether the November 9, 2006 letter constituted a "grievance" within the meaning of the CBA, whether the grievance was meritorious, whether the grievance complied with Rule 22 of the CBA, and whether the grievance was processed in a "perfunctory fashion" – are questions of fact that cannot be determined on a Rule 12(c) motion to dismiss.

2

## STATEMENT OF FACTS

ACRE is a labor union, and is the bargaining representative designated by Metro-North employees to represent locomotive engineers.  Compl. at ¶10.  Metro-North is an operating agency of the Metropolitan Transportation Authority which provides commuter rail service.  Id. at  ¶11.  Each of the plaintiffs is employed by Metro-North as a locomotive Engineer, and each is a member of ACRE.  Id. ¶¶ 2-8, 13.  Plaintiffs' employment is governed by CBAs between ACRE and Metro-North.  Id. at ¶12.  Rule 3 of the main CBA governs entry rates of pay, providing that "for the first twelve calendar months of service...a Passenger Engineer...will be paid 70% of the basic hourly rate of pay for Passenger Engineers," with the percentage increasing to 75%, 80%, 85% and 90% for the second, third, fourth and fifth "twelve calendar months of service," respectively.  O'Hara Dec. Ex. B.

During the period 2002-2003, plaintiffs became locomotive engineers by transferring into those positions from different job classifications at Metro-North.  Compl. ¶¶14, 16.  Although the main CBA is silent as to the date from which each twelve month period is measured, at the time that plaintiffs became engineers the issue was addressed in a written agreement, dated August 30, 1993, between ACRE's predecessor, the Brotherhood of Locomotive Engineers, and Metro-North.  Id. at ¶20.  The August 30, 1993 agreement required that employees appointed as locomotive engineers relinquish their seniority date in their former classification and receive a new seniority date in the engineer classification.  Id.  The change in seniority date frequently delayed the transferred engineers' wage increases.  Id.

In September 2006, four of the six plaintiffs learned that the class of 2004, and all subsequent classes of locomotive engineers, were permitted to keep their original anniversary date for purposes of salary and wage increases.  Compl. ¶ 21.  Two of the plaintiffs, Michael

3

Kology and Brian Conrad, did not learn of the change until late October 2006. Id. Permitting the class of 2004 and subsequent classes of engineers to keep their original anniversary date violated the CBA, including the August 30, 1993 side letter agreement, and allowed them to earn more money than plaintiffs, despite the fact that plaintiffs had more seniority than the class of 2004. Id. at ¶¶ 22-3. The decision permitting the class of 2004 to keep their original seniority date came about as a result of surreptitious dealings between Metro-North management and officers of ACRE. Id. at ¶ 22.

Throughout the fall of 2006, plaintiffs contacted Doyle and other ACRE officers to protest the fact that they were being denied the same seniority rights granted to members of the class of 2004 and subsequent classes. Compl. ¶ 24. When the plaintiffs confronted Doyle, he repeatedly reassured them that they would have their seniority dates adjusted. Indeed, on several occasions, he told individual plaintiffs that they would receive an immediate salary adjustment, and in at least one case, Doyle promised to secure retroactive pay. Id. at ¶25.

Because plaintiffs did not have their seniority adjusted as promised, on November 9, 2006, all of the plaintiffs and four other Engineers filed a grievance with the Union objecting to the fact that Metro-North was improperly favoring one group of employees – the class of 2004 and subsequent classes – to the detriment of the plaintiffs and other grievants. Id. at ¶ 26.

The grievance was filed pursuant to Rules 21 and 22 of the CBA. O'Hara Dec. Ex. B, pp. 24-28. Under Rule 21, grievances may be filed with a "Special Board of Adjustment" which is authorized to resolve disputes. Id. ¶ 28. Under Rule 22, "a claim for compensation may be made only by a claimant, *or on his behalf*, by his duly accredited representative." Id. at ¶27 (emphasis added). By submitting their claim to Doyle, their duly accredited representative, for

presentation to Metro-North, plaintiffs complied with the requirements of Rule 22.[1]  After Doyle
received the grievance, he continued to tell plaintiffs that he was working to resolve the matter.
On November 20, 2006, Doyle told Cruise that he had spoken to Audrey Stevens, Supervisor of
Metro-North's payroll department, and that he had advised Stevens to make the changes to
Cruise's wages.  Compl. ¶ 35.

On December 4, 2006, Doyle advised Cruise that the grievance was "now up [with] the
ACRE general committee."  Id. at ¶ 36.  Finally, on December 11, 2006, without having spoken
to the plaintiffs, Doyle announced at an ACRE membership meeting that the plaintiffs would not
receive anything.  Id. at ¶39.  On December 13, 2006, Stevens told Cruise:  "Mike Doyle says
your dates are not to be touched."  Id. at ¶40.

Whether or not ACRE ever filed plaintiffs' grievance, Metro-North never responded to it.
Compl. ¶38.  ACRE's general committee never contacted plaintiffs regarding the grievance.  Id.
at ¶43.  On April 7, 2007, counsel for plaintiffs filed an internal union appeal regarding ACRE's
failure to process plaintiffs' grievance concerning their seniority dates and rates of pay.  Id. at
¶47.  By letter dated May 1, 2007, ACRE's counsel advised plaintiffs' counsel, Ira Cure, that the
grievance had been resolved and that some adjustments to salaries were made for a number of
plaintiffs.  Id. at ¶¶49-51.  The adjustments fell far short of the adjustments to which plaintiffs
were entitled.  Accordingly, on May 21, 2007, plaintiffs filed this action.

---

[1]ACRE's contention that plaintiffs did not comply with the procedural requirements of Rule 22
by not submitting time slips, see ACRE's Memorandum at p. 8, makes little sense.  The dispute
in this case does not involve a "shorting" of an individual's pay that would require a review of
time slips, but rather an interpretation of the CBA and the August 1993 side letter agreement and
the alleged secret agreement to not apply the terms of the agreement to certain employees.  Time
slips are not relevant to this dispute.

**ARGUMENT**

**POINT I**

**THE RULE 12(c) STANDARD**

In considering a complaint for dismissal under Rule 12(c) "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert., denied, 513 U.S. 836 (1994). "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007). This "plausibility standard" is a flexible one, "obliging a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). However, the function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).

**POINT II**

**METRO-NORTH VIOLATED THE COLLECTIVE BARGAINING AGREEMENT AS MODIFIED BY THE 1993 SIDE LETTER AGREEMENT**

The collective bargaining agreement between Metro-North and ACRE, as modified by the August 30, 1993 side letter agreement, provides that upon an employee's completion of engineer training, the employee's seniority date changes from his/her initial date of hire to the date of the transfer. This change in seniority dates often resulted in a delay of annual step

increases for many months.  Prior to 2006, the CBA and the party's interpretation thereof has always applied equally to all employees transferring into the locomotive engineer craft.

Sometime prior to September 2006, ACRE and Metro-North secretly stopped enforcing the contract language for some employees (those who transferred in 2004 and thereafter), but continued to enforce the contract language for others (those who transferred before 2004).

Treating similarly situated employees in such an unequal manner violates the collective bargaining agreement.  For example, if the CBA established a $25 per hour rate of pay for engineers, but the employer paid some engineers $30 per hour, the unequal treatment of employees would constitute a breach of the CBA.  See Leed Architectural Products, Inc. v. United Steelworkers of America, Local 6674, 916 F.2d 63 (2d Cir. 1990) (Arbitrator did not exceed his authority in determining that employer violated the collective bargaining agreement by paying one employee in excess of wage rate provided by the agreement).  Plaintiffs have therefore alleged facts that may constitute a breach of contract.  Metro-North misconstrues the "agreement" which plaintiffs allege was violated.  It is not the secret decision not to enforce provisions of the CBA, but the CBA as modified by the 1993 side letter agreement that plaintiffs allege was violated.

## POINT III

## ACRE BREACHED ITS DUTY OF FAIR REPRESENTATION

A.     ACRE Breached the Duty of Fair Representation When it Surreptitiously
        Entered into an Agreement with Metro-North to Grant Preferential
        Treatment to Engineers Transferring into the Craft after 2004

ACRE breached its duty of fair representation when it entered into a secret arrangement with Metro-North to grant preferential treatment to employees transferring into the engineering craft after 2004.  The duty of fair representation requires that a union "serve the interests of all

members without hostility or discrimination toward any, [] exercise its discretion with complete good faith and honesty, and [] avoid arbitrary conduct." Airline Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 76-77 (1991). The duty of fair representation "applies to all union activity, including contract negotiations." Id. at 67. "A union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." Marquez v. Screen Actors Guild, 525 U.S. 33, 44 (1998). A union acts in bad faith when it acts with "improper intent, purpose, or motive." Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998).

A union also breaches the duty of fair representation when, without an objectively legitimate reason, it makes secret agreements with the employer to manipulate seniority to the benefit of only certain workers. Lewis v. Tuscan Farms, 25 F.3d 1138 (2d Cir. 1994) (union surreptitiously negotiated an agreement which favored the seniority rights of one group of employees over another); Ramey v. District 141, International Association of Machinists, 378 F.3d 269, 277 (2d Cir. 2004) (union's agreement with employer to "strip" workers of their seniority violated its duty of fair representation); Rakestraw v. United Airlines, 981 F.2d 1524, 1535 (7th Cir. 1992) ("A union may not juggle the seniority roster for no reason other than to advance one group of employees over another or punish a disfavored group").

In Lewis v. Tuscan Farms, the court held that the union's president violated the duty of fair representation by willfully concealing an oral agreement with the employer that if an acquisition of the plant was made, the company would not be required to dovetail seniority lists in contravention of a contractual requirement to do so. Lewis, 25 F.3d at 1142. Evidence of the union's breach of the duty in Lewis consisted, in part, of (a) its non-compliance with a union by-law requiring "ratification prior to any modification of the collective bargaining agreement," and

8

(b) its failure to present the aggrieved union members' demand for arbitration to the union's executive committee and membership in accordance with the usual union procedure.  Id. at 1143.

In the instant case, the Union acted in an almost identical fashion.  ACRE entered into a secret agreement with Metro-North to permit the class of 2004 and subsequent classes of engineers to retain their anniversary date, while earlier classes of engineers were forced to forfeit theirs.  No rationale was given for deviating from the accepted rule that senior employees should not be treated less favorably than junior employees.  Seniority is a central term and condition of employment for locomotive engineers at Metro-North as it directly impacts the salary that engineers receive.  Indeed, as a result of the secret agreement between ACRE and Metro-North, a number of employees from the class of 2004 began to earn more money than the plaintiffs.  ACRE entered into this agreement with Metro-North without informing the members.  When plaintiffs finally learned of the agreement, in September 2006, Doyle and other ACRE officers engaged in deception and promised them that the disparity between their treatment and the treatment of the post 2004 classes would be eliminated.

In Eatz v. DME Unit of Local Union No. 3 of Int'l. Bro. of Elec. Workers, 794 F.2d 29 (2d Cir. 1986), the court held that a union had violated the duty of fair representation when it negotiated a series of collective bargaining agreements that continually favored one group of employees over another regarding terms and conditions of employment.  Recognizing a union's duty to avoid "irrelevant and invidious" distinctions among groups of employees, the court stated:

> Collective bargaining is a continual process.  Among other things
> it involves day to day adjustments in the contract and other working
> rules, resolution of new problems no covered by existing agreements,
> and the protection of employee rights already secured by contract.  The

> bargaining representative can no more unfairly discriminate in carrying
> out these functions then it can in negotiating a collective agreement.

Id. at 34 citing Conley v. Gibson, 355 U.S. 41, 46 (1957). ACRE's breach of the duty of fair

representation in this case is even more egregious than the union's breach in Eatz. In Eatz, the

collective bargaining agreements were not negotiated clandestinely, as they were here.[2]

In its motion to dismiss, ACRE alleges that a variety of legitimate nondiscriminatory

reasons motivated the Union to give preferential treatment to employees who transferred into the

craft after 2004. These include the following:

- Classes prior to 2004 were not similarly situated to the class of 2004;
- ACRE was motivated by "inequitable results under the step rate wage progression system prior to 2004," not by animus;
- ACRE believed that the enhanced benefit for the class of 2004 forward would "eliminate the inequities and anomalies arising under the pre-2004 practice and allow engineers to earn more money within a shorter period of time;"
- ACRE acted with "the purpose and intent to benefit all employees;"
- ACRE and Metro-North's decision was based on "cost and administrative efficiency."

Def. Mem. at 12-14. However, none of these purported "reasons" for giving the class of 2004

preferential treatment over earlier classes of engineers is properly before the court on this Rule

12(c) motion. First, none of the "reasons" is supported by detailed facts in affidavit or

declaration form. Second, none of the "reasons" can be considered under Rule 12(c), because

"the court must accept the material facts alleged in the complaint as true and construe all

reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d

Cir.), cert., denied, 513 U.S. 836 (1994). Third, even on a summary judgment motion under

Rule 56.1, "a trial court must be cautious about granting summary judgment [] when intent is at

issue." Gallo v. Prudential Services, 22 F.3d 1219, 1224 (2d Cir. 1994). This is because

---

[2] Nor did, the level of animosity in Eatz rise to the level of what the plaintiffs endured in this case. In Eatz, unlike in this case, none of the plaintiffs were threatened, nor did their family members receive threatening telephone calls. Compl. ¶ 31-33.

"[c]redibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

B.    ACRE Breached its Duty of Fair Representation
       When it Failed to Process Plaintiffs' Grievance

When a Union takes no action to investigate a worker's complaint or to process a grievance, such conduct may be "arbitrary" and a breach of its duty of fair representation. Cruz v. Local Union No. 3, IBEW, 34 F.3d 1148, 1153 (2d Cir. 1994) ('acts of omission' may constitute a breach of the duty of fair representation); Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270, 1274 (9th Cir. 1983) (union's failure to process grievance might have been arbitrary); Caputo v. Nat'l Assoc. of Letter Carriers, 730 F.Supp. 1221 (E.D.N.Y. 1990) (union's failure to file the grievance may be properly characterized as arbitrary).

In Cruz, supra, the plaintiffs verbally complained to their union representatives regarding an employer's actions, but the union did not investigate the complaints or file a grievance on their behalf. The Second Circuit upheld the jury's finding that the union's failure to act was arbitrary and a breach of the union's duty of fair representation. The court stated:

> Arbitrary conduct amounting to a breach is not limited to
> intentional conduct by union officials but may include
> acts of omission which while not calculated to harm
> union members, may be so egregious, so far short
> of minimum standards of fairness to the employee and
> so unrelated to legitimate union interests as to be arbitrary.

34 F.3d at 1153. In Clarke v. Communications Workers of America, 318 F.Supp.2d 48 (E.D.N.Y. 2004), the court denied the defendant's motion for summary judgment where one plaintiff claimed that she had verbally informed her union representative of her grievance

concerning a 1992 recall, even though the union claimed that it was unaware of the 1992 recall until many months and perhaps years had passed.

In the case at bar, ACRE made little or no effort to determine whether plaintiffs' grievance had merit. In fact, there is no evidence that ACRE even submitted the grievance to Metro-North. The issue of "whether the union's alleged failure to process plaintiff's grievance constitutes an 'arbitrary' act is a question of fact, best preserved for trial." Clarke, supra, 318 F.Supp.2d at 60.

**POINT IV**

**PLAINTIFFS' DUTY OF FAIR
REPRESENTATION CLAIMS WERE TIMELY FILED**

A.    Plaintiffs' Contract Enforcement DFR Claim Was Timely Filed.

DFR claims are governed by a six-month statute of limitations. DelCostello v. Int'l. Bhd. of Teamsters, 462 U.S. 151, 169 (1983). A plaintiff's claim begins to accrue when she knew or should have known of the act by which the union allegedly breached its duty. Cohen v. Flushing Hosp. and Med. Ctr., 68 F.3d 64 (2d Cir 1995); see also Ghartev v. St. John's Queens Hosp., 869 F.2d 160, 165 (2d Cir. 1989) ("A breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains.")

In the instant case, plaintiffs allege that the Union breached its duty of fair representation both in negotiating a secret agreement to deny seniority rights to plaintiffs which were granted to others, and by failing to process plaintiffs' grievance for reasons that are arbitrary, discriminatory, and in bad faith. Plaintiffs' claims were filed well within the six-month limitations period because they accrued no earlier than December 11, 2006, when Doyle publicly stated, for the first time, that plaintiffs "would not receive anything." Compl. ¶ 39. Up until this point, there had been no definitive answer from the Union or from Metro-North as to the

outcome of their grievance.  Throughout the fall of 2006, Doyle repeatedly reassured the

plaintiffs that they would have their seniority dates adjusted and would receive back pay.

Indeed, on November 20, 2006, after plaintiffs filed the November 9, 2006 grievance, Doyle told

Cruise that he had spoken to Stevens and that he had advised her to make the changes to Cruise's

wages.  On December 4, 2006, Doyle advised Cruise that the grievance was being considered by

ACRE's general committee.

It was only on December 11, 2006, when Doyle told a Union membership meeting that

"[p]laintiffs would not receive anything" (Compl. ¶ 39), or December 13, 2006, when Cruise was

told by Metro-North official Audrey Stevens that "Mike Doyle says your dates are not to be

touched" (Compl. ¶ 40), that plaintiffs learned their grievance would not be processed.  Thus, the

earliest date for the accrual of plaintiffs' DFR cause of action is December 11, 2006 – when

Doyle first stated that plaintiffs' grievance would not be processed.

Moreover, because the ACRE Constitution precludes a member from bringing an action

in court until his internal appeal rights have been exhausted, had plaintiffs filed a complaint

before May 1, 2007, the complaint may well have been dismissed for failure to exhaust the

union's internal grievance procedure.  See Cooper v. Wyeth Ayerst Lederle, 106 F.Supp.2d 479,

499 (S.D.N.Y. 2000) ("It is well settled that a Union member cannot sue on a standard fair

representation claim brought under the NLRA, LMRA or LMRDA unless she first exhausts the

Union's internal grievance procedure").  Plaintiffs had not fully exhausted ACRE's internal

procedure until May 1, 2007 -- the date that ACRE's counsel advised plaintiffs that the

November 7, 2006 grievance had been resolved.

B.     Plaintiff's contract negotiation DFR was timely filed.

Defendants should be equitably estopped from raising a statute of limitations defense with respect to the contract negotiation DFR allegation.  See, e.g., Kavowras v. New York Times, et al., 328 F. 350 (2d Cir. 2003), Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 2000) ("A defendant may be equitably estopped from asserting the statute of limitations in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit").  Throughout the fall of 2006, Doyle repeatedly told plaintiffs that their seniority would be treated the same as post 2004 transfers, i.e., they would have their pay adjusted and they would receive back pay.  Even after the November 9, 2006 grievance was filed, on November 20, 2006, Doyle told Cruise that he had called the Metro-North payroll department and told them to make the changes to Cruise's wages.  On December 4, 2006, Doyle told plaintiffs that the grievance was before the ACRE general committee.

This is sufficient to establish equitable estoppel.  Up to December 4, 2006, Doyle made misrepresentations of fact to the plaintiffs, and the plaintiffs relied on those misrepresentations.  Buttry, supra.  In their brief, defendants argue that plaintiffs failed "to allege any facts after November 9, 2006 which would support a contention that plaintiffs believed ACRE was going to give them the relief demanded in plaintiffs' letter."  Def. Mem. at p. 7.  However, this assertion is belied by the fact that Doyle told Cruise on November 20, 2006, that he had instructed Metro-North's payroll department to make changes to Cruise's wages, and further, that he told Cruise on December 4, 2006 that the grievance was under review with ACRE's general committee.  By reason of their own misrepresentations, defendants should be equitably estopped from raising the statute of limitations defense with respect to plaintiffs' contract negotiation DFR claim.

## POINT V

## ACRE BREACHED THE UNION'S CONSTITUTION

ACRE's secret agreement with Metro-North violated ACRE's obligations to its members

under the ACRE Constitution.  Under the Constitution's "Member Bill of Rights" each  member

has a right to:

a)    A copy of the contract and all letters of understanding
        covering the member;

b)    Inspect and copy any letter of understanding covering
        the member;

c)    Full information about the progress of any grievance or
        other union action that directly affect[s] the individual member;

d)    Vote by secret ballot in all elections and binding agreements
        with management.

O'Hara Dec., Ex. H.

None of these provisions were complied with, nor have defendants provided any

justification for their actions.  Non-compliance with a union's constitution or bylaws constitutes

a breach of contract.  Federal courts have jurisdiction of claims alleging the breach of a union's

constitution.  Wooddell v. IBEW, Local 71, 502 U.S. 93 (1991) (members may sue both their

union and union officials for violation of union constitution); Shea v. McCarthy, 953 F.2d 29, 32

(2d Cir. 1992), James v. BLE, 302 F.3d 1139, 1146 (10th Cir. 2002)  ("It is well settled that the

relationship existing between a trade union and its members is contractual and that the

constitution…constitute[s] a binding contract…").

ACRE argues that it did not violate the Union Constitution because the Constitution only

requires that members be given "information about...union action that directly affect[s] the

individual member," and that the agreement with Metro-North did not "directly affect the

plaintiffs,"  Def. Mem. at 15.  This is factually incorrect.  Plaintiffs allege that "[a]s a result of

the surreptitious arrangements, members of the Class of 2004 and forward were frequently

earning more money than Plaintiffs." Compl. ¶ 23. Plaintiffs were thus directly impacted by the Union action – they received lower wages than they would have received had they been treated the same as the post 2004 classes.

Furthermore, it is uncontested that the Union (1) failed to provide plaintiffs with the secret agreement between ACRE and Metro-North and (2) failed to afford plaintiffs and other members a right to "vote by secret ballot…[on] binding agreements with management" (the secret deal for post 2004 classes of engineers). These actions and omissions constitute violations of the Constitution, and are actionable in this court.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss should be denied.

Dated: June 27, 2008
      New York, New York

                     LEWIS, CLIFTON & NIKOLAIDIS, P.C.

                     *s/ Louie Nikolaidis*

                     Louie Nikolaidis (LN5979)
                     275 Seventh Avenue, Suite 2300
                     New York, New York 10001
                     (212) 419-1500
                     (212) 419-1510 - facsimile